No. 2015-2088

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

APPLE INC., a California corporation,

*Plaintiff-Appellee*,

*v.*

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, REUTERS AMERICA, LLC, INTERNATIONAL BUSINESS MACHINES CORPORATION, RESEARCH IN MOTION CORPORATION, RESEARCH IN MOTION, LTD.,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of California in case no. 11-CV-1846, Judge Lucy H. Koh.

## PLAINTIFF-APPELLEE APPLE INC.'S
## MOTION FOR SUMMARY AFFIRMANCE

HAROLD J. MCELHINNY
RACHEL KREVANS
ERIK J. OLSON
NATHAN B. SABRI
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000

MARK D. SELWYN
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
(650) 858-6000

WILLIAM F. LEE
MARK C. FLEMING
LAUREN B. FLETCHER
SARAH R. FRAZIER
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 663-6000

September 30, 2015

*Counsel for Plaintiff-Appellee Apple Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF RELATED CASES ..................................................... 1

INTRODUCTION ...................................................................................... 2

PROCEDURAL BACKGROUND .......................................................... 3

ARGUMENT .............................................................................................. 8

    A.    This Court's Mandate Clearly Required The District Court To "Immediate[ly] Ent[er]" Partial Final Judgment. ................ 10

    B.    Samsung Identifies No Plausible Reason Why The District Court Was Not Required to Follow This Court's Express Instruction To Enter Partial Final Judgment. ........................ 14

    C.    Regardless Of The Merits of Samsung's Position, Samsung Raised The Issue Too Late. ................................................. 16

CONCLUSION ........................................................................................... 19

CERTIFICATE OF INTEREST

DECLARATION OF WILLIAM F. LEE

PROPOSED ORDER

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Apple Inc. v. Samsung Electronics Co.*,
786 F.3d 983 (Fed. Cir. 2015) ...................................................................passim

*ArcelorMittal France v. AK Steel Corp.*,
786 F.3d 885 (Fed. Cir. 2015) ...........................................................................14

*Barnes v. United States*,
678 F.2d 10 (3d Cir. 1982) ................................................................................12

*Briggs v. Pennsylvania Railroad Co.*,
334 U.S. 304 (1948)...........................................................................................10

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
576 F.3d 1348 (Fed. Cir. 2009) .........................................................................10

*Carter v. United States*,
333 F.3d 791 (7th Cir. 2003) .............................................................................13

*Dempsey v. United States*,
32 F.3d 1490 (11th Cir. 1994) ...........................................................................13

*Fadhl v. City and County of San Francisco*,
804 F.2d 1097 (9th Cir. 1986) ...........................................................................13

*Gould, Inc. v. United States*,
67 F.3d 925 (Fed. Cir. 1995) .......................................................................14, 17

*Greenlaw v. United States*,
554 U.S. 237 (2008)...........................................................................................15

*In re Roberts*,
846 F.2d 1360 (Fed. Cir. 1988) .........................................................................10

*International Rectifier Corp. v. IXYS Corp.*,
515 F.3d 1353 (Fed. Cir. 2008) .........................................................................16

*Jalapeno Property Management, LLC v. Dukas*,
265 F.3d 506 (6th Cir. 2001) .............................................................................13

*Joshua v. United States*,
  17 F.3d 378 (Fed. Cir. 1994) ...............................................................8

*King Instrument Corp. v. Otari Corp.*,
  814 F.2d 1560 (Fed. Cir. 1987) ...................................................passim

*Sears, Roebuck & Co. v. Mackey*,
  351 U.S. 427 (1956)............................................................................16

*Taylor v. United States Patent & Trademark Office*,
  385 F. App'x 980 (Fed. Cir. 2010) ....................................................17

*TecSec, Inc. v. International Business Machines Corp.*,
  731 F.3d 1336 (Fed. Cir. 2013) .........................................................11

*United States v. Shotwell Manufacturing Co.*,
  355 U.S. 233 (1957)............................................................................10

*Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*,
  546 U.S. 394 (2006)............................................................................14

## STATUTES AND RULES

28 U.S.C. § 2106.................................................................6, 10, 15

35 U.S.C. § 289...........................................................................4

Fed. Cir. R. 31(c) ...................................................................9, 19

Fed. Cir. R. 36........................................................................9, 19

Fed. R. App. P. 41(b) .......................................................9, 17, 19

## DOCKETED CASES

*Versata Computer Industry Solutions, Inc. v. SAP AG*,
  No. 2014-1430 (Fed. Cir.) ....................................................................8

## OTHER AUTHORITIES

Beth Winegarner, *Samsung Atty Quinn Calls IPhone IP War 'Apple's
  Vietnam'*, Law360 (May 5, 2014), *available at*
  http://www.law360.com/articles/534842/samsung-atty-quinn-calls-
  iphone-ip-war-apple-s-vietnam................................................................3

# STATEMENT OF RELATED CASES[1]

This Court previously resolved four appeals in this case: *Apple Inc. v. Samsung Electronics Co.*, Nos. 14-1335, 15-1029, 786 F.3d 983 (Fed. Cir. 2015) (Prost, C.J., joined by O'Malley and Chen, JJ.), *pet. for reh'g denied* (Aug. 13, 2015) (appeal from judgment following jury verdicts and damages awards); *Apple Inc. v. Samsung Electronics Co.*, No. 13-1129, 735 F.3d 1352 (Fed. Cir. 2013) (Prost, J., joined by Bryson and O'Malley, JJ.) (appeal from permanent injunction denial); *Apple Inc. v. Samsung Electronics Co.*, Nos. 12-1600, -1606, 13-1146, 727 F.3d 1214 (Fed. Cir. 2013) (Prost, J., joined by Bryson & O'Malley, JJ.) (appeal from denial of requests to seal confidential materials); and *Apple Inc. v. Samsung Electronics Co.*, No. 12-1105, 678 F.3d 1314 (Fed. Cir. 2012) (Bryson, J., joined by Prost, J.; opinion concurring in part and dissenting in part by O'Malley, J.), *pet. for reh'g denied* (June 19, 2012) (appeal from preliminary injunction denial).

There is another appeal in this case currently pending in this Court, although it is based on a collateral issue that will not affect or be affected by the present appeal: *Apple Inc. v. Samsung Electronics Co.*, No. 15-1857 (Samsung's appeal from order finding that Samsung waived privilege with respect to certain documents related to Samsung's violation of the protective order).

---

[1]     Reuters America, LLC, International Business Machines Corporation, Research In Motion Corporation, and Research In Motion, Ltd. are incorrectly listed on the docket as Defendants-Appellants.  They are not parties to this appeal.

Apple is unaware of any other case pending in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## INTRODUCTION

This Court remanded this case to the district court "for immediate entry of final judgment" on the damages amounts that this Court affirmed for Samsung's infringement of Apple's design and utility patents. *Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 1005 (Fed. Cir. 2015). The district court faithfully and promptly did as this Court directed, entering partial final judgment for Apple in the amount of $548,176,477. Add. 60-61 (Dkt. 3290); Add. 96 (9/18/15 Hrg. Tr. 35).[2] Samsung does not dispute that it owes Apple that amount based upon this Court's ruling. *E.g.*, *Apple*, No. 14-1335, Dkt. 159 at 2 (Samsung acknowledging that this Court "affirmed the remaining $548 million in damages"). But rather than pay the judgment, Samsung filed another notice of appeal.

Samsung's decision to re-appeal is nothing short of extraordinary, and can only be explained as yet another maneuver in Samsung's single-minded effort to ensure that, no matter how many decision-makers confirm Samsung's infringement liability, Samsung can still say that—as its counsel boasted in May 2014—"Apple

---

[2]    Citations to the district court record are included in the attached Addendum ("Add.").

hasn't collected a penny."[3]  Samsung's use of a follow-on appeal to assert a meritless argument that it failed to press in the prior appeal is—as the district court put it—"frivolous" (Add. 106 (9/18/2015 Hrg. Tr. 45)), and thus summary affirmance is appropriate.  Postponing resolution of this appeal through briefing and argument would give Samsung the very delay it wants, which this Court's opinion made plain Samsung does not deserve.

Apple does not file this motion lightly, but Samsung's appeal truly is beyond the pale.  It should be brought to a swift end, rather than serve Samsung's goals of imposing greater cost and delay on the Court and Apple.[4]

## PROCEDURAL BACKGROUND

This Court is intimately familiar with this case.  Apple filed this suit over four years ago in an effort to halt Samsung's infringement of Apple's patents relating to innovations that Apple created during the development of its iconic iPhone and iPad products.  *Apple*, 786 F.3d at 989-990.  The jury sided with Apple, finding that numerous Samsung products infringed Apple's patented designs and features and awarding damages.  *Id*.  After a partial retrial on certain damages amounts, the district court denied Samsung's further post-trial motions and entered

---

[3]    *See* Beth Winegarner, *Samsung Atty Quinn Calls IPhone IP War 'Apple's Vietnam'*, Law360 (May 5, 2014), *available at* http://www.law360.com/articles/534842/samsung-atty-quinn-calls-iphone-ip-war-apple-s-vietnam.

[4]    Apple has discussed this motion with Samsung.  Samsung opposes this motion and intends to submit a response.

judgment. *Id.* at 990. Samsung appealed a number of design and utility patent issues to this Court, and the panel unanimously rejected every one. *Id.* at 996-1005. Although the Court vacated and remanded part of the judgment that rested on Apple's trade dress claims, the Court also recognized the need to bring this drawn-out litigation to a close regarding the remaining issues: "We remand for ***immediate entry of final judgment*** on all damages awards not predicated on Apple's trade dress claims and for any further proceedings necessitated by our decision to vacate the jury's verdicts on the unregistered and registered trade dress claims." *Id.* at 1005 (emphasis added).[5]

Samsung petitioned for rehearing en banc, but notably did ***not*** argue that the Court's direction that the trial court "immediate[ly]" enter "final judgment" on the affirmed damages awards was in any way problematic or improper. Instead, Samsung's petition addressed only two issues: (1) whether the district court properly instructed the jury regarding the scope of Apple's design patents; and (2) whether Congress actually meant what it said when it provided that a design patent infringer "shall be liable … to the extent of his total profit." 35 U.S.C. § 289; *see also Apple*, No. 14-1335, Dkt. 159 at 1. The Court denied Samsung's petition without dissent. *Apple*, No. 14-1335, Dkt. 207 at 2.

---

[5]    The district court has scheduled a retrial on the remaining damages issues for March 28 to April 5, 2016. *See* Add. 109-110 (9/18/2015 Hrg. Tr. 48-49).

On the last day before the mandate's scheduled issuance—six days after the order denying rehearing—Samsung asked this Court to stay issuance of its mandate pending the filing of a petition for certiorari. *Apple*, No. 14-1335, Dkt. 208. Apple opposed, explaining *inter alia*: "Now that this Court has conclusively affirmed a significant portion of the damages award and recognized the need for immediate entry of final judgment, Apple is most certainly harmed every day that Samsung is allowed to defer payment of its adjudicated liability." *Apple*, No. 14-1335, Dkt. 209 at 8. Samsung filed a reply, but nowhere denied that the Court's mandate, once issued, would require the district court to enter judgment on the affirmed damages amounts immediately. *Apple*, No. 14-1335, Dkt. 210. Nor did it argue that this Court's order of immediate entry of judgment was somehow improper. *Id*. The Court denied Samsung's motion, and the mandate issued on August 25, 2015. *Apple*, No. 14-1335, Dkts. 211, 212.[6]

On remand, Apple promptly sought "immediate entry of final judgment" in the affirmed damages amount of $548,176,477. Add. 1-2 (Dkt. 3264).[7] Samsung

---

[6]     Samsung has not made any filing in the Supreme Court in connection with this case, although it has suggested that it intends to file a petition for certiorari in November 2015. Add. 71 (9/18/2015 Hrg. Tr. 10).

[7]     Both sides agreed on appeal that the judgment could be divided into three categories based on cause of action: $398,940,864 for design patent infringement, $149,235,613 for utility patent infringement, and $381,683,562 for trade dress dilution. *See Apple*, No. 14-1335, Dkt. 34 at 12 (Samsung opening brief); *Apple*, No. 14-1335, Dkt. 80 at 21 n.1, 45, 67, 80, 86 (Apple opening brief). The first two

filed "objections" to Apple's request.  Add. 25-46 (Dkt. 3269).  Although Samsung did not contest the ***amount*** of affirmed damages, it argued for the first time that this Court's direction was somehow contrary to Federal Rule of Civil Procedure 54(b).  Add. 34-44 (Dkt. 3269 at 5-15).  Apple replied that the Court's remand direction was clear, and that Samsung should have expressed any objection to it in Samsung's petition for rehearing.  Add. 48-52 (Dkt. 3276 at 1-5).  Apple also explained that Samsung's argument under Rule 54(b) was meritless, because Rule 54(b) does not confine this Court's ability to direct proceedings on remand.  Add. 52-55 (Dkt. 3276 at 5-8) (discussing 28 U.S.C. § 2106 and *King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560 (Fed. Cir. 1987)).

Following this briefing, the district court asked Samsung whether it intended "to pay any partial final judgment to Apple from Samsung's supersedeas bond if this Court enters partial final judgment for Apple."  Add. 56-57 (Dkt. 3282).  Samsung's response made clear that it had no intention of doing so.  Instead, Samsung repeated its "object[ion] to the entry of partial final judgment" and indicated that it would "appeal to the U.S. Court of Appeals for the Federal Circuit" "were such judgment entered."  Add. 59 (Dkt. 3283 at 2).

---

amounts total $548,176,477, which is the affirmed damages award.  In its petition for rehearing, Samsung acknowledged that this Court "affirmed … $548 million in damages."  *Apple*, No. 14-1335, Dkt. 159 at 2.

At a hearing on September 18, 2015, the district court ruled from the bench and granted Apple's request for immediate entry of final judgment.[8]  The district court delivered its reasoning orally.  The court rejected Samsung's Rule 54(b) argument, ruling that "the Federal Circuit has held that Rule 54(b) 'concerns the power of the trial court before appeal,' and Rule 54(b) therefore is not applicable to the entry of partial final judgment on remand for that portion of the original judgment that the appeals court has affirmed."  Add. 91 (9/18/2015 Hrg. Tr. 30) (citing *King*, 814 F.2d at 1563).  The district court further explained:  "The Federal Circuit exercised its authority under 28 U.S.C. [§] 2106 to direct the entry of final judgment as to those products whose damages awards the Federal Circuit affirmed.  Under the Federal Circuit's mandate rule, this Court is bound to follow the Federal Circuit's decree as law of the case."  Add. 91-92 (9/18/2015 Hrg. Tr. 30-31).  The district court reaffirmed the point as follows:

> [T]he Court is not entering partial final judgment pursuant to Rule 54(b), so the requirements of Rule 54(b) need not be satisfied.
>
> The entry of partial final judgment at this stage of the litigation is pursuant to the Federal Circuit's authority under 28 U.S.C. [§]

---

[8]    The district court also rightly rejected Samsung's separate motion to enter judgment in Samsung's favor on the validity of one of the patents in suit in light of pending but not yet final proceedings in the PTO.  Add. 82-83 (9/18/2015 Hrg. Tr. 21-22).  Samsung made this request despite the fact that the patent's validity, as found by the jury, was affirmed by this Court in the decision that led to the mandate.  The district court also rejected Samsung's alternative request to stay all remand proceedings pending resolution of the PTO proceedings.  Add. 87-88 (9/18/2015 Hrg. Tr. 26-27).

2106, which gives the court of appellate jurisdiction the authority to remand the case and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

To the extent Samsung believes that directing the entry of partial final judgment was not just under the circumstances and therefore improper under 28 U.S.C. [§] 2106, Samsung ought to have raised that argument with the Federal Circuit.

Add. 92-93 (9/18/2015 Hrg. Tr. 31-32).  The district court warned Samsung that any appeal from the judgment would be "frivolous."  Add. 106 (9/18/2015 Hrg. Tr. 45).

The district court entered judgment later that day.  Add. 60 (Dkt. 3290 at 1) ("Pursuant to the Federal Circuit's May 18, 2015 Order, judgment is entered against Samsung and in favor of Apple in the amount of $548,176,477 according to the affirmed damages awards for the following 18 products ….").  Samsung noticed this appeal on September 21, 2015.

## ARGUMENT

Summary affirmance is appropriate where, as here, "the position of one party is so clearly correct as a matter of law that no substantial question regarding the outcome of the appeal exists."  *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994); *see also* Fed. Cir. R. 36; *Versata Computer Indus. Solutions, Inc. v. SAP AG*, No. 2014-1430, Dkt. 26 (Fed. Cir. June 18, 2014) (summarily affirming the district court's entry of final judgment pursuant to this Court's remand order).

- 8 -

Samsung's effort to block the district court from performing the most ministerial of tasks—entering final judgment at the express direction of this Court—has no legal basis whatsoever.  For nearly thirty years, this Court's case law has been clear that a district court has the authority to enter partial final judgment on remand following an "explicit [instruction] that final judgment be entered" on a subset of damages.  *King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560, 1563 (Fed. Cir. 1987).  Moreover, even if Samsung did have a plausible legal argument for its appeal (it does not), it failed to make it at the appropriate time, namely during the prior appeal.  Once this Court denied its petition for rehearing en banc and issued the mandate, "[u]nder the law of the case doctrine, th[e district] court was absolutely bound by" this Court's affirmance of the design and utility patent damages.  *Id.*

The Court should accordingly dismiss this appeal summarily and issue the mandate forthwith.  *See* Fed. Cir. R. 36; Fed. R. App. P. 41(b).  If, however, the Court is inclined to receive full briefing, Apple requests that the Court order that the briefing schedule is not suspended pending its consideration of this motion (*see* Fed. Cir. R. 31(c)), so that the appeal proceeds expeditiously.  Apple additionally requests that this Court clarify that the judgment should not be subject to any stay of enforcement.

### A.    This Court's Mandate Clearly Required The District Court To "Immediate[ly] Ent[er]" Partial Final Judgment.

This Court's ruling unanimously affirming that Samsung repeatedly infringed Apple's design and utility patents concluded with a specific instruction to the district court:  The case was "remand[ed] for *immediate* entry of final judgment on all damages awards not predicated on Apple's trade dress claims."  *Apple*, 786 F.3d at 1005 (emphasis added).  Such an order was well within this Court's authority and the district court was required to carry it out.

This Court has substantial power under "the broad provisions" of 28 U.S.C. § 2106, *United States v. Shotwell Mfg. Co.*, 355 U.S. 233, 241 n.17 (1957), to "direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances," 28 U.S.C. § 2106.  Correspondingly, the district court "has no power or authority to deviate from the mandate."  *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306 (1948); *accord In re Roberts*, 846 F.2d 1360, 1363 (Fed. Cir. 1988) ("Unlike the authority to reconsider its *own* rulings, a district court is without choice in obeying the mandate of the appellate court.").

The logical corollary of these two principles is the "mandate rule"—i.e., the doctrine that "the district court [must] follow an appellate decree as the law of the case."  *Cardiac Pacemakers Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1356 (Fed. Cir. 2009).  In particular, when this Court expressly states "the purpose of the

remand," the mandate rule requires the district court to follow those instructions. *Id*. (requiring district court to follow "explicit instructions" to limit "any new trial on remand" to two issues). Accordingly, the district court correctly followed the mandate rule when it entered partial final judgment on Apple's behalf. *E.g.*, Add. 92 (9/18/2015 Hrg. Tr. 31) ("Under the Federal Circuit's mandate rule, this court is bound to follow the Federal Circuit's decree as law of the case.").

This Court's case law applies to mandate rule questions. *TecSec, Inc. v. International Bus. Machs. Corp.*, 731 F.3d 1336, 1341-1342 (Fed. Cir. 2013). And this Court has expressly endorsed the application of the mandate rule to cases where, as here, a district court enters partial final judgment in order to carry out the terms of the remand. *See King*, 814 F.2d at 1563. In *King*, this Court affirmed (1) the district court's findings that King's patent was valid and infringed and (2) a portion of the district court's damages award, but vacated and remanded another portion of the damages award. *Id*. at 1561. On remand, the district court entered partial judgment on the portion of the damages award that this Court had affirmed. *Id*. Although the infringer argued that final judgment was improper because the district court did not follow the dictates of Federal Rule of Civil Procedure 54(b), this Court affirmed the partial judgment, ruling that "[c]learly it was within this court's power under 28 U.S.C. § 2106" to order the district court to enter partial final judgment: "Rule 54(b)[] is not applicable" when the district court is fulfilling

its obligations under the mandate. *Id*. at 1563. Thus, "[u]nder the law of the case doctrine, [the district] court was absolutely bound by [this Court's] affirmance" of a portion of the damages award and therefore acted properly by "order[ing] execution on that portion of the [damages] judgment which was final." *Id*.

*King* controls here. This Court affirmed the finding that Apple's patents were valid and infringed, as well as a portion of the damages award, and ordered immediate entry of final judgment on those rulings. The district court was accordingly "absolutely bound" on remand to enter a final judgment that reflected that decision. *King*, 814 F.2d at 1563. Indeed, the mandate rule has even more force in this case than in *King*: This Court's initial ruling in *King* did not expressly instruct the district court to enter partial final judgment, although the Court recognized that it was "clearly" within this Court's power "to provide explicitly that [partial] final judgment be entered." *Id*. Here, by contrast, this Court clearly and undisputedly ordered the district court to enter partial final judgment "immediate[ly]." *Apple*, 786 F.3d at 1005.

This Court is no outlier in permitting the district court to enter partial final judgment following remand. The rule discussed in *King* has been followed by the Third, Seventh, Ninth, and Eleventh Circuits. *See Barnes v. United States*, 678 F.2d 10, 11-13 (3d Cir. 1982) ("[O]nce an appeal is properly before this court, there is no reason why our powers under Section 2106 should be deemed to be as

circumscribed as those of a trial court acting on a Rule 54(b) application."); *see also Carter v. United States*, 333 F.3d 791, 793 (7th Cir. 2003) (Posner, J.) (entering "partial final judgment in the plaintiff's favor" where "[n]either she nor the government challenge[d an] award of $3.4 million in economic damages"); *Dempsey v. United States*, 32 F.3d 1490, 1497-1498 (11th Cir. 1994) (Carnes, J., concurring) (discussing panel's order of partial final judgment "to the extent of the uncontested part of the damages award"); *Fadhl v. City & Cnty. of S.F.*, 804 F.2d 1097, 1099 (9th Cir. 1986) (per curiam) (affirming the "portion of the judgment" representing undisputed attorneys' fees, because "there is no reason to delay receipt of these undisputed fees," while maintaining jurisdiction over the question whether additional amounts were properly awarded); Add. 94-95 (9/18/2015 Hrg. Tr. 33-34) (district court noting that "the Third, Seventh, Ninth, and Eleventh Circuits all apply the same rule as *King*").  While the Sixth Circuit has come to a different conclusion, that decision is not binding, and arose on a very different set of facts, including that the remand order apparently did not expressly instruct the district court to enter partial final judgment.  *See Jalapeno Prop. Mgmt., LLC v. Dukas*, 265 F.3d 506, 508, 511-513 (6th Cir. 2001).  Thus, the weight of authority strongly reinforces the correctness of the *King* decision.

### B. Samsung Identifies No Plausible Reason Why The District Court Was Not Required to Follow This Court's Express Instruction To Enter Partial Final Judgment.

Samsung has no effective response to this Court's binding precedent. While the mandate rule may not apply in "extraordinary circumstances," this case is not one of the "rare" few that qualifies as an exception to the general rule. *See ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885, 889 (Fed. Cir. 2015). Samsung's arguments below did not, for example, identify any "new evidence [that] differs materially from the evidence of record when the issue was first decided." *Id.*; *see also Gould, Inc. v. United States*, 67 F.3d 925, 930 (Fed. Cir. 1995); Add. 44-45 (Dkt. 3269 at 15-16). Samsung's primary assertion was that entry of partial final judgment would be at odds with Rule 54(b)—an argument that *King* squarely forecloses. *Compare* Add. 34-44 (Dkt. 3269 at 5-15), *with King*, 814 F.2d at 1563.

In an unauthorized filing in the district court, Samsung added a bare citation to *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 402 n.4 (2006), without explaining why Samsung believed it was relevant. Add. 59 (Dkt. 3283 at 1). The district court noted that Samsung's citation to *Unitherm* was contrary to its orders; this Court may accordingly disregard that argument on that ground alone. Add. 95 (9/18/2015 Hrg. Tr. 34) ("[T]his supplemental citation is in violation of the Court's order that no further briefing be entertained.").

In any event, *Unitherm* has no bearing on this case.  Add. 95 (9/18/2015 Hrg. Tr. 34) (district court noting that even if *Unitherm* had been timely cited, "it's inapplicable and not persuasive").  *Unitherm* dealt with the narrow question of whether a court of appeals can order a new trial when the losing party below failed to make a post-verdict motion for a new trial under Federal Rule of Civil Procedure 50(b).  Rule 50 is not at issue in this case.  *See* Add. 96 (9/18/2015 Hrg. Tr. 35) (district court explaining that "*Unitherm* does not apply … because all of the issues encompassed by the Federal Circuit's remand for immediate partial final judgment … were the subject of a [Rule] 50(b) motion in this case….").  *Unitherm* does not mention Rule 54(b), and footnote 4's discussion of the Seventh Amendment cannot be read to undermine *King* or the decisions from other circuits that recognize the authority to direct entry of a partial judgment on remand under 28 U.S.C. § 2106—especially here, where Samsung's Seventh Amendment rights have been fully respected through **two** jury trials.  Moreover, neither the Supreme Court nor this Court has applied *Unitherm* in civil litigation in cases other than those involving a party's failure to file a Rule 50 motion.[9]

---

[9]    In *Greenlaw v. United States*, 554 U.S. 237 (2008), the Supreme Court cited *Unitherm* as support for the proposition that § 2106 does not permit a court of appeals to increase a criminal defendant's sentence when the government fails to file a cross-appeal.  *Id*. at 249.  Similar to *Unitherm*, the *Greenlaw* Court's logic focused on the special context of the cross-appeal rule.  *Id*. (noting that § 2106 applies "to all cases, civil and criminal, and to all errors" and if it was read to

And this makes sense. Rule 54(b) acts only as a limit on the district court's ability to send claims to the court of appeals in the first instance. *See King*, 814 F.2d at 1563 ("Rule 54(b) … concerns the power of the trial court before appeal …."); *see also Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956) (Rule 54(b) permits the "District Court" to act "as a 'dispatcher.' It is permitted to determine, in the first instance, the appropriate time when each 'final decision' upon 'one or more but less than all' of the claims in a multiple claims action is ready for appeal."); *supra* pp. 7, 11-13. It is not at all inconsistent with Rule 54(b) for a court of appeals to order the imposition of judgment on damages that were properly appealed and affirmed and subject to an issued mandate.

## C.    Regardless Of The Merits of Samsung's Position, Samsung Raised The Issue Too Late.

Even if Samsung had advanced a colorable legal argument for why partial entry of final judgment was inappropriate (it did not), any such argument should have been raised in its petition for rehearing in the prior appeal and is now barred by the law of the case. As this Court has explained, "[o]nce a case has been decided on appeal, the rule adopted is to be applied … absent exceptional circumstances, in the disposition of the lawsuit." *International Rectifier Corp. v. IXYS Corp.*, 515 F.3d 1353, 1360 (Fed. Cir. 2008).

---

abrogate the cross-appeal rule in the criminal, plain-error context, it "would displace the cross-appeal rule cross the board").

The proper time for Samsung to object to this Court's express order to the district court was when Samsung filed its petition for rehearing in the prior appeal. *See, e.g.*, *Taylor v. United States PTO*, 385 F. App'x 980, 983 (Fed. Cir. 2010) ("If Mr. Taylor was dissatisfied with the relief accorded by this court's earlier opinion, he could have petitioned for rehearing or moved to recall the mandate. Because he failed to seek any such relief in this court at the time of the initial appeal, he cannot now challenge the district court's compliance with our instructions on remand."). Samsung failed to raise the issue, and this Court denied rehearing without dissent. *See supra* p. 4; *see also* Add. 93-94 (9/18/2015 Hrg. Tr. 32-33) (district court noting that "[t]o the extent Samsung believes that directing the entry of partial final judgment was … improper under 28 U.S.C. [§] 2106, Samsung ought to have raised that argument with the Federal Circuit"). To permit Samsung to resurrect this issue on remand and in a follow-on appeal would be contrary to the twin purposes of the law of the case doctrine: "to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts." *Gould*, 67 F.3d at 930.

\*    \*    \*

This appeal is completely meritless, and serves only to advance Samsung's manifest desire for delay in paying its adjudicated liability. Apple respectfully

submits that the Court should not afford Samsung its hoped-for delay by receiving full briefing and argument where the correctness of affirmance is beyond doubt.

In addition to summarily affirming, Apple respectfully submits that the Court should not delay in issuing the mandate in this appeal, but rather should "shorten … the time" so that the mandate issues forthwith.  *See* Fed. R. App. P. 41(b).  In the event that the Court is inclined to receive full briefing (though Apple believes that unnecessary), Apple requests that the Court order that the suspension of the briefing schedule provided for in Federal Circuit Rule 31(c) does not apply in this case.   If this appeal is to proceed to briefing, it should be briefed expeditiously.

Finally, Samsung has taken the position before the district court that enforcement of the underlying judgment is or should be stayed, either by operation of Federal Rule of Civil Procedure 62 or through Samsung's proffer of a supersedeas bond.  Apple respectfully submits that a stay of enforcement of the judgment is likewise contrary to this Court's direction to the district court to "immediate[ly] ent[er]" final judgment and this Court's denial of Samsung's motion to stay the mandate.  Apple accordingly requests that this Court make clear that enforcement of the judgment is not and should not be stayed.

## CONCLUSION

Apple respectfully requests that this appeal be summarily affirmed (Fed. Cir. R. 36), and that the mandate issue forthwith (Fed. R. App. P. 41(b)). Apple further requests that the Court order that the briefing schedule is not suspended pending the ruling on this motion (Fed. Cir. R. 31(c)). Finally, Apple requests that this Court clarify that enforcement of the judgment is not and should not be stayed.

Respectfully submitted,

/s/ William F. Lee

| | |
|---|---|
| HAROLD J. MCELHINNY | WILLIAM F. LEE |
| RACHEL KREVANS | MARK C. FLEMING |
| ERIK J. OLSON | LAUREN B. FLETCHER |
| NATHAN B. SABRI | SARAH R. FRAZIER |
| MORRISON & FOERSTER LLP | WILMER CUTLER PICKERING |
| 425 Market Street | HALE AND DORR LLP |
| San Francisco, CA  94105 | 60 State Street |
| (415) 268-7000 | Boston, MA  02109 |
| | (617) 526-6000 |
| MARK D. SELWYN | |
| WILMER CUTLER PICKERING | THOMAS G. SPRANKLING |
| HALE AND DORR LLP | WILMER CUTLER PICKERING |
| 950 Page Mill Road | HALE AND DORR LLP |
| Palo Alto, CA  94304 | 1875 Pennsylvania Avenue, NW |
| | Washington, DC  20006 |
| September 30, 2015 | *Counsel for Plaintiff-Appellee Apple Inc.* |

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellee Apple Inc. certifies the following:

1.     The full name of every party or *amicus* represented by us is:

Apple Inc.

2.     The name of the real party in interest represented by us is:

Not applicable.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

MORRISON & FOERSTER LLP:  Ruchika Agrawal (former), Deok Keun Matthew Ahn (former), Charles S. Barquist, Jason R. Bartlett, Ruth N. Borenstein, Brittany N. DePuy (former), Francis Chung-Hoi Ho (former), Richard S.J. Hung, Michael A. Jacobs, Esther Kim, Grant L. Kim, Alexei Klestoff (former), Rachel Krevans, Kenneth Alexander Kuwayti, Jack Williford Londen, Harold J. McElhinny, Andrew Ellis Monach, Erik J. Olson, Marc J. Pernick (former), Taryn Spelliscy Rawson, Christopher Leonard Robinson, Nathaniel Bryan Sabri, Jennifer Lee Taylor, Alison Margaret Tucher (former), Christopher James Wiener, Patrick J. Zhang (former)

WILMER CUTLER PICKERING HALE AND DORR LLP:  David B. Bassett, James C. Burling, Robert Donald Cultice, Andrew J. Danford, Michael A. Diener, Christine E. Duh, Mark D. Flanagan, Mark C. Fleming, Eric Fletcher, Lauren B. Fletcher, Sarah R. Frazier, Richard Goldenberg, Robert J. Gunther, Jr., Liv Leila Herriot, Michael R. Heyison, Peter James Kolovos, Derek Lam, Gregory H. Lantier, Brian Larivee, William F. Lee, Andrew L. Liao, Joseph J. Mueller, Kevin Scott Prussia, James L. Quarles, III, Michael Saji (former), Brian Seeve, Mark Daniel Selwyn, Ali H. Shah (former),

Victor F. Souto, Thomas G. Sprankling, Timothy Davis Syrett, Nina S. Tallon, Samuel Calvin Walden, Emily R. Whelan, Jeremy S. Winer

COOLEY LLP:  Benjamin George Damstedt, Jesse L. Dyer (former), Timothy S. Teter

TAYLOR & COMPANY LAW OFFICES, LLP:  Joshua Ryan Benson, Stephen McGeorge Bundy, Stephen E. Taylor

MAVRAKAKIS LAW GROUP LLP:  Kenneth H. Bridges (former), Michael T. Pieja

Dated:  September 30, 2015

/s/ William F. Lee
WILLIAM F. LEE
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

No. 2015-2088

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

APPLE INC., a California corporation,

*Plaintiff-Appellee*,

*v.*

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, REUTERS AMERICA, LLC, INTERNATIONAL BUSINESS MACHINES CORPORATION, RESEARCH IN MOTION CORPORATION, RESEARCH IN MOTION, LTD.,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of California in case no. 11-CV-1846, Judge Lucy H. Koh.

## DECLARATION OF WILLIAM F. LEE

1.      I, William F. Lee, hereby declare that I am a partner in the law firm of

Wilmer Cutler Pickering Hale and Dorr LLP, and a member of the Bar of this

Court.  I represent Plaintiff-Appellee Apple Inc. ("Apple") in this appeal.

2.      The facts set out in Apple's motion are true and correct and are based on my

personal knowledge.

3.      I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

Dated:  September 30, 2015

/s/ William F. Lee
WILLIAM F. LEE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

No. 2015-2088

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

APPLE INC., a California corporation,

*Plaintiff-Appellee*,

*v.*

SAMSUNG ELECTRONICS CO., LTD., A KOREAN CORPORATION, SAMSUNG ELECTRONICS AMERICA, INC., A NEW YORK CORPORATION, SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, A DELAWARE LIMITED LIABILITY COMPANY, REUTERS AMERICA, LLC, INTERNATIONAL BUSINESS MACHINES CORPORATION, RESEARCH IN MOTION CORPORATION, RESEARCH IN MOTION, LTD.,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of California in case no. 11-CV-1846, Judge Lucy H. Koh.

## ORDER

UPON CONSIDERATION of the motion of Plaintiff-Appellee Apple Inc. to summarily affirm, it is ORDERED that:

The motion is GRANTED.  Pursuant to Federal Circuit Rule 36, the judgment is summarily affirmed.  Any stay preventing the judgment from being enforced is hereby lifted.  The mandate shall issue forthwith.

Date: _____

cc: William F. Lee, Kathleen Sullivan

# CERTIFICATE OF SERVICE

I hereby certify that, on this 30th day of September, 2015, I filed the

foregoing with the Clerk of the United States Court of Appeals for the Federal

Circuit via the CM/ECF system, which will send notice of such filing to all

registered CM/ECF users.


/s/ William F. Lee
WILLIAM F. LEE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

# ADDENDUM

# TABLE OF CONTENTS

**Page(s)**

Letter from Harold J. McElhinny to Judge Lucy H. Koh and
attachments A-D, Dkt. No. 3264 (Aug. 25, 2015)....................................ADD1-24

Samsung's Objections to Apple's Proposed Partial Final
Judgment, Dkt. No. 3269 (Aug. 27, 2015) ...........................................ADD25-46

Apple's Response to Samsung's Objections to Apple's Proposed
Partial Final Judgment, Dkt. No. 3276 (Sept. 8, 2015) ........................ADD47-55

Order to Supplement Joint Case Management Statement, Dkt.
No. 3282 (Sept. 17, 2015)....................................................................ADD56-57

Samsung's Supplemental Case Management Statement, Dkt.
No. 3283 (Sept. 18, 2015)....................................................................ADD58-59

Partial Final Judgment, Dkt. No. 3290 (Sept. 18, 2015) ..........................ADD60-61

Transcript of Proceedings held September 18, 2015, Dkt. No.
3291 (Sept. 18, 2015)..........................................................................ADD62-137

MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS, DENVER,
HONG KONG, LONDON, LOS ANGELES,
NEW YORK, NORTHERN VIRGINIA,
PALO ALTO, SACRAMENTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

August 25, 2015

Writer's Direct Contact
+1 (415) 268.7265
HMcElhinny@mofo.com

The Honorable Lucy H. Koh
United States District Court, Northern District of California
280 South 1st Street, Courtroom 8, 4th Floor
San Jose, California 95113

Re:     *Apple Inc. v. Samsung Electronics Co., Ltd. et al.*
        No. 5:11-cv-01846-LHK

Dear Judge Koh:

On May 18, 2015, the Federal Circuit affirmed the validity and infringement judgments in
this case with respect to Apple's design patents and utility patents, as well as "the damages
awarded for the design and utility patent infringements appealed by Samsung." *Apple Inc. v.
Samsung Elecs. Co.*, 786 F.3d 983, 989 (Fed. Cir. 2015). The Federal Circuit "remand[ed]
for ***immediate entry of final judgment*** on all damages awards not predicated on Apple's
trade dress claims." Id. at 1005 (emphasis added). On August 13, 2015, the Federal Circuit
denied Samsung's petition for rehearing en banc. Samsung moved to stay issuance of the
mandate on August 19, 2015. Today, on August 25, 2015, the Federal Circuit denied the
motion to stay and issued the mandate. To assist the Court in carrying out the above portion
of the mandate, Apple hereby submits a proposed final judgment, attached as Attachment A.
As explained below, the amount of damages covered by the Court's mandate comes directly
from the Federal Circuit decision and representations by Samsung to the Federal Circuit.

As Samsung acknowledged in its petition for rehearing en banc, the portion of the damages
award affirmed by the Federal Circuit totals $548 million. (*See* Attachment B (Samsung
Fed. Cir. Petition For Rehearing En Banc) at 2 ("The panel … reversed the award of $382
million in trade-dress dilution damages but affirmed the remaining $548 million in
damages.").) More precisely, the amount is $548,176,477, which includes $398,940,864 for
design patent infringement and $149,235,613 for utility patent infringement. (*See*
Attachment C (Samsung Opening Fed. Cir. Br.) at 12; Attachment D (Apple Fed. Cir. Br.) at
21 n.1, 45, 67, 80, 86.) The parties further acknowledged that the damages award could be
further broken down on a product-by-product basis as outlined in the attached proposed
judgment. (*See* Attachment C at 9-14; Attachment D at 22.)

sf-3567702

**ADD1**

MORRISON | FOERSTER

The Honorable Lucy H. Koh
August 25, 2015
Page Two

Accordingly, Apple respectfully requests that the Court enter partial final judgment for
Apple in the amount of $548,176,477 pursuant to the Federal Circuit's mandate. A proposed
form of judgment is attached.

Pursuant to the Federal Circuit's opinion and previous orders of this Court, we anticipate
further action concerning supplemental damages and the issues remanded for rehearing.

Respectfully submitted,

Harold J. McElhinny

Attachments

sf-3567702

**ADD2**

# ATTACHMENT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.    11-cv-01846-LHK (PSG)<br><br>**[PROPOSED] PARTIAL FINAL JUDGMENT PURSUANT TO THE FEDERAL CIRCUIT'S MANDATE**<br><br>Hon. Lucy H. Koh |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1       The Court, having considered the Federal Circuit's opinion in *Apple Inc. v. Samsung*

2   *Electronics Co.*, 786 F.3d 983 (Fed. Cir. 2015), and having concluded that there is no just reason

3   for delay, HEREBY ORDERS that judgment is entered against Samsung and in favor of Apple in

4   the amount of $548,176,477 for Samsung's infringement of Apple's design patents and utility

5   patents based on sales up to and including June 30, 2012, of the following Samsung products:

6   $21,121,812 for the Captivate; $6,478,873 for the Continuum; $60,706,020 for the Droid Charge;

7   $37,928,694 for the Epic 4G; $2,044,683 for the Exhibit 4G; $22,143,335 for the Galaxy Prevail;

8   $40,494,356 for the Galaxy S II (AT&T); $100,326,988 for the Galaxy S II (Epic 4G);

9   $32,273,558 for the Galaxy S II (Skyrocket); $83,791,708 for the Galaxy S II (T-Mobile);

10  $9,544,026 for the Galaxy Tab; $833,076 for the Galaxy Tab 10.1 (WiFi); $4,831,453 for the

11  Gem; $9,917,840 for the Indulge; $99,943,987 for the Infuse 4G; $10,559,907 for the Nexus S 4G;

12  $3,046,062 for the Replenish; and $2,190,099 for the Transform.

13

14      **IT IS SO ORDERED.**

15

16  Dated: _____, 2015

17                                                    _____
                                                      HONORABLE LUCY H. KOH
18                                                    United States District Judge

19

20

21

22

23

24

25

26

27

28

[PROPOSED] PARTIAL FINAL JUDGMENT                                                               1

**ADD5**

# ATTACHMENT B

# United States Court of Appeals

*for the*

# Federal Circuit

APPLE INC., a California corporation,

*Plaintiff-Appellee,*

– v. –

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,
SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation,
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,
a Delaware limited liability company,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA IN CASE NO. 11-CV-01846-LHK,
HONORABLE LUCY H. KOH

## PETITION FOR REHEARING *EN BANC*

SUSAN R. ESTRICH
MICHAEL T. ZELLER
ROBERT J. BECHER
B. DYLAN PROCTOR
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

KATHLEEN M. SULLIVAN
WILLIAM B. ADAMS
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Defendants-Appellants Samsung Electronics Co., Ltd., Samsung
Electronics America, Inc. and Samsung Telecommunications America, LLC*

*(For Continuation of Appearances See Inside Cover)*

**ADD7**

infringement and trade-dress dilution.  The panel (Prost, C.J., joined by O'Malley & Chen, JJ.) reversed the award of $382 million in trade-dress dilution damages but affirmed the remaining $548 million in damages.  Of that amount, $399 million represents an award of Samsung's entire profits from products found to infringe Apple's design patents; this petition seeks *en banc* review of that award.

The panel decision is the first from this Court involving design-patent infringement by a complex electronic device.  Unlike rugs, spoons, and simple mechanical objects, smartphones incorporate hundreds or thousands of different patented technologies, and it is undisputed here that Apple's design patents claim only partial, minor features of such devices and that some attributes of those designs are functional.  And yet the panel upheld the infringement finding without requiring the district court to properly construe the patents or instruct the jury to filter out functional attributes.  And the panel deemed itself bound by Section 289 to uphold an award of all of Samsung's profits from the infringing products even though the patented designs are only minor features of those products.  Both holdings warrant *en banc* review, for they conflict with precedent, create confusion, and raise the prospect that a design patent, alone among all species of intellectual property, will allow its holder to "leverage its patent for competitive gain beyond that which the inventive contribution and value of the patent warrant." *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1375 (Fed. Cir. 2012).

2

**ADD8**

# ATTACHMENT C

Nos. 2014-1335, -1368

# United States Court of Appeals

### *for the*

# Federal Circuit

APPLE INC., a California corporation,

*Plaintiff-Cross-Appellant,*

– v. –

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,
SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation,
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,
a Delaware limited liability company,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA IN CASE NO. 11-CV-01846-LHK,
HONORABLE LUCY H. KOH

## OPENING BRIEF FOR DEFENDANTS-APPELLANTS

SUSAN R. ESTRICH
MICHAEL T. ZELLER
B. DYLAN PROCTOR
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

KATHLEEN M. SULLIVAN
WILLIAM B. ADAMS
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Defendants-Appellants Samsung Electronics Co., Ltd., Samsung
Electronics America, Inc. and Samsung Telecommunications America, LLC*

*(For Continuation of Appearances See Inside Cover)*

**ADD10**

element of patent infringement," despite Apple presenting copying as a central trial theme and despite clear law that copying "is of no import on the question of whether the claims of an issued patent are infringed," *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002).

Over Samsung's objection (A43865-68), the verdict form provided for a single damages award for each product without particularizing by patent/trade dress or damages theory. A00646-47; A43924-28. On August 24, 2012, the jury returned a verdict awarding Apple $1,049,343,540 in damages on twenty-three Samsung products and no damages on five products. A00646. As the district court concluded in ruling on post-trial motions (A00097-98; A24945), the basis for the jury's award could be reverse-engineered as follows:

For each of the eleven Samsung phones (Captivate, Continuum, Droid Charge, Epic 4G, Galaxy S II 2 (AT&T), Galaxy S II (T-Mobile), Galaxy S II (Epic 4G Touch), Galaxy S II (Skyrocket), Gem, Indulge, and Infuse 4G) for which the jury found infringement of one or more design patents but no trade-dress dilution, the jury awarded the entirety of Samsung's profits, which it determined to be 40% of Apple's claimed figure (reflecting a dispute over deductible costs). For each of the five Samsung phones (Fascinate, Galaxy S 4G, Galaxy S Showcase (i500), Mesmerize, and Vibrant) for which the jury found infringement of one or more design patents *and* trade-dress dilution, the jury awarded Apple's claimed

9

**ADD11**

lost profits *plus* the same 40% of Apple's claimed figure for Samsung's profits. For five of the seven Samsung products that were found to infringe only utility patents (Exhibit 4G, Galaxy Tab, Nexus S 4G ('381 & '915), Replenish ('163 and '381), and Transform ('915)), the jury awarded half of Apple's claimed royalties. For the remaining two Samsung products found to infringe only utility patents, the jury awarded 40% of Apple's claimed figure for Samsung's profits on the Galaxy Prevail, and $833,076 for the Galaxy Tab 10.1 (WiFi).

### E. The District Court's Orders On Post-Trial Motions

After trial, Samsung moved under Fed. R. Civ. P. 50(b) for judgment as a matter of law ("JMOL") and 59 for new trial or remittitur. A07605-08128. Apple moved under those rules for JMOL, new trial, and an amended judgment. A8669. The district court denied Apple's motions for permanent injunction (A08258-59) and willfulness enhancements (A08461-62). It also denied Samsung's motions (A08129-48; A00002-89) except insofar as it granted Samsung JMOL that infringement of the utility and design patents was not willful, and vacated and granted new trial as to $410,020,294 in damages on twelve Samsung products as to which Apple failed to provide a correct "notice date" and on one product on which the jury had erroneously awarded infringer's profits for utility-patent infringement.

**ADD12**

A00110-12; A08169.[1]  The court declined to order new trial on five other products, despite similarly incorrect notice dates, because they had been found both to infringe design patents and to dilute unregistered trade dress, and the court ruled that notice was not required for trade-dress dilution.  A00109-10.[2]

### F.    The Partial Damages Retrial

In November 2013, the district held a five-day partial retrial on damages before a second jury, conducted under "Groundhog Day" rules (A08342-43) that precluded any challenges to previously decided issues.  This time the jury awarded Apple $290,456,793 in damages.  A00652-53.

For each of six Samsung devices found to infringe only utility patents (Exhibit 4G, Galaxy Prevail, Galaxy Tab, Nexus S 4G, Replenish, and Transform), the jury awarded 100% of Apple's claimed lost profits and reasonable royalty. A00119.  For each of seven Samsung devices found to infringe both design and utility patents (Captivate, Continuum, Droid Charge, Epic 4G, Gem, Indulge, and Infuse 4G), the jury awarded 100% of Apple's claimed lost profits and reasonable

---

[1]  These thirteen products were:  Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Galaxy Prevail, Galaxy Tab, Gem, Indulge, Infuse 4G, Nexus S 4G, Replenish, and Transform.   The court initially vacated the award of $40,494,356 for the Galaxy S II AT&T, but ultimately reinstated it.  A08169.

[2]  The district court's post-trial rulings are reported at 932 F. Supp. 2d 1076 (N.D. Cal. 2013); 926 F. Supp. 2d 1000 (N.D. Cal. 2013); 920 F. Supp. 2d 1116 (N.D. Cal. 2013); 920 F. Supp. 2d 1079 (N.D. Cal. 2013); and 909 F. Supp. 2d 1147 (N.D. Cal. 2012).

**ADD13**

royalty, plus the exact average of the parties' respective total Samsung profits calculations (which amounted to 61.4% of Apple's claimed infringer's profits). A00119-20; A00123; A00128 .

The district court denied Samsung's post-retrial motions (A08463-512) for JMOL, new trial, and/or remittitur. A00116-44.

### G. The Final Judgment

On March 6, 2014, the district court entered final judgment for Apple in the amount of $929,780,039. A00001. This amount represented the $1,049,343,540 award from the first trial, minus the vacated $410,020,294, plus the $290,456,793 awarded on retrial. A00646; A00114; A08168-69; A00652; A00116.

Divided by damages theory, that judgment comprises $689,492,147 in Samsung's profits ($398,940,864 for design-patent infringement and $290,551,283 for dilution of unregistered trade dress), $204,909,622 in Apple's lost profits ($113,777,343 for utility-patent infringement and $91,132,279 for dilution of unregistered trade dress), and $35,458,270 in reasonable-royalty damages. A00089-A00144.

Divided by cause of action, the judgment awards $398,940,864 for design-patent infringement, $381,683,562 for dilution of Apple's unregistered trade dress, and $149,235,613 for utility-patent infringement.

**ADD14**

And divided by product, the judgment reflects ten damages awards from the first trial:

Fascinate ($143,539,179)

Galaxy S 4G ($73,344,668)

Galaxy S II (AT&T) ($40,494,356)

Galaxy S II (Epic 4G Touch) ($100,326,988)

Galaxy S Showcase (i500) ($22,002,146)

Galaxy S II (Skyrocket) ($32,273,558)

Galaxy S II (T-Mobile) ($83,791,708)

Galaxy Tab 10.1 (WiFi) ($833,076)

Mesmerize ($53,123,612)

Vibrant ($89,673,957)

and thirteen more from the retrial:

Captivate ($21,121,812)

Continuum ($6,478,873)

Droid Charge ($60,706,020)

Epic 4G ($37,928,694)

Exhibit 4G ($2,044,683)

Galaxy Prevail ($22,143,335)

Galaxy Tab ($9,544,026)

13

**ADD15**

Gem ($4,831,453)

Indulge ($9,917,840)

Infuse 4G ($99,943,987)

Nexus S 4G ($10,559,907)

Replenish ($3,046,062)

Transform ($2,190,099).

## SUMMARY OF ARGUMENT

The judgment should be reversed, or at the very least vacated and remanded, for any of several, independent reasons.

**1.** The $399 million judgment for design-patent infringement should be reversed because no reasonable, properly-instructed jury could find infringement or damages. *First*, as to liability, the district court erred as a matter of law in instructing the jury on design-patent scope and infringement. Specifically, the district court failed to instruct the jury to "factor out" the unprotectable structural and functional elements of Apple's designs (*e.g.*, large rectangular form with rounded corners, grid of icons, etc.), thereby allowing Apple to obtain a monopoly over a basic geometric shape and functional features of a smartphone. It compounded this error, moreover, by ruling that the lack of real-world deception is irrelevant to design-patent infringement and by minimizing the role of prior art in the infringement analysis, notwithstanding that prior art can (and does here) render

14

**ADD16**

# ATTACHMENT D

**Nos. 2014-1335, -1368**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

APPLE INC., a California corporation,

*Plaintiff-Cross Appellant*,

*v.*

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation,
SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation,
SAMSUNG TELECOMMUNICATIONS AMERICA LLC,
a Delaware limited liability company,

*Defendants-Appellants.*

Appeals from the United States District Court for the
Northern District of California in case no. 11-CV-1846, Judge Lucy H. Koh.

## BRIEF FOR PLAINTIFF-CROSS APPELLANT APPLE INC.

RACHEL KREVANS
RUTH N. BORENSTEIN
NATHAN B. SABRI
CHRISTOPHER L. ROBINSON
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000

MARK D. SELWYN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6000

WILLIAM F. LEE
MARK C. FLEMING
LAUREN B. FLETCHER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

JAMES L. QUARLES III
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 663-6000

July 28, 2014

*Counsel for Plaintiff-Cross Appellant Apple Inc.*

willful because Samsung's defenses were "objectively reasonable." A74-A80. The court upheld $639,403,248 in damages awarded for thirteen infringing and diluting products but, for the other thirteen infringing products, concluded that "the jury awarded an impermissible *form* of damages for some period of time" during which Samsung purportedly lacked notice of some asserted patents. A109; *see* A114; A8169. The court ordered a partial retrial on damages for those products.[1]

Following a six-day retrial, a second jury awarded Apple $290,456,793 for the thirteen remaining products. A116; A652-A653. After the two trials, the damages awarded were:

---

[1] Although Apple disagrees with the district court's grant of JMOL on willfulness, reverse-engineering of the first jury's damages award, grant of a partial retrial, and denial of Apple's renewed permanent injunction request, Apple is not pressing those issues on appeal.

| Samsung Product | Damages | Samsung Product | Damages |
|---|---|---|---|
| Fascinate | $143,539,179 | Captivate | $21,121,812 |
| Galaxy Ace | $0 | Continuum | $6,478,873 |
| Galaxy S (i9000) | $0 | Droid Charge | $60,706,020 |
| Galaxy S 4G | $73,344,668 | Epic 4G | $37,928,694 |
| Galaxy S II (AT& T) | $40,494,356 | Exhibit 4G | $2,044,683 |
| Galaxy S II (i9100) | $0 | Galaxy Prevail | $22,143,335 |
| Galaxy S II (T-Mobile) | $83,791,708 | Galaxy Tab | $9,544,026 |
| Galaxy S II (Epic 4G) | $100,326,988 | Gem | $4,831,453 |
| Galaxy S II (Skyrocket) | $32,273,558 | Indulge | $9,917,840 |
| Galaxy S II Showcase | $22,002,146 | Infuse 4G | $99,943,987 |
| Galaxy Tab 10.1 (WiFi) | $833,076 | Nexus S 4G | $10,559,907 |
| Mesmerize | $53,123,612 | Replenish | $3,046,062 |
| Vibrant | $89,673,957 | Transform | $2,190,099 |

A100-A114; A646-A647; A652-A653; A8169. The district court denied all post-retrial motions and entered judgment against Samsung for $929,780,039. A1; A116-A117.

<strong>SUMMARY OF ARGUMENT</strong>

**I. Design-Patent Infringement.** Overwhelming evidence demonstrated that Samsung's copied product and user-interface designs were substantially the same as Apple's patented designs. Samsung's claims of instructional error depend on misstating this Court's precedents, which make clear (for example) that a design is ornamental as long as it is not "dictated by function." The evidence, including expert testimony and several alternative designs, easily permitted the jury to find that Apple's patented designs are not dictated by function and were infringed when viewed in light of the substantially different prior art.

### C.    The Jury's Damages Award For Design-Patent Infringement Was Legally Proper And Supported By Substantial Evidence.

The verdict forms only asked the juries to award damages on a per-product basis; they did not parse out the damages awarded by intellectual property right (*i.e.*, design patent, utility patent, or trade dress) or by the *form* of damages (*i.e.*, Samsung's profits, Apple's lost profits, or reasonable royalty).  A646-A647; A652-A653.  Samsung speculates that the juries awarded $399 million for design-patent infringement, consisting of Samsung's profits from eleven infringing phones.  Br. 12, 35.  Even accepting that speculation, the $399 million judgment should be affirmed, because the district court properly instructed both juries that they could award Samsung's profits for design-patent infringement and substantial evidence supports the amounts.

### 1.    The "total profit" instruction was proper.

A design-patent holder is entitled to an infringer's "total profit," 35 U.S.C. § 289, and the district court instructed the jury accordingly.  A1403.  Section 289's language defeats Samsung's apportionment argument; "it is unlikely that Congress would have used such all-encompassing language if it intended that a design patentee could only recover profits attributable solely to the design or ornamental qualities of the patented article."  *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 495 (D. Minn. 1980).  As several of Samsung's amici have admitted elsewhere, "current law required" the district court to instruct the jury as it did.

obtaining a design patent is not dispositive of the availability of trade dress

protection:  more than one form of intellectual property protection may

simultaneously protect particular product features."  *I.P. Lund Trading ApS v.*

*Kohler Co.*, 163 F.3d 27, 48 (1st Cir. 1998).  Samsung's other case concerns

federal preemption of "*state* regulation of intellectual property." *Bonito Boats, Inc.*

*v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 152 (1989).  The statute plainly falls

within Congress's power to regulate interstate commerce, *see* 15 U.S.C.

§ 1125(c)(1) (limiting action to "use of a mark or trade name *in commerce*"), and

Samsung points to nothing in the Patent Clause suggesting otherwise.

### E.     Substantial Evidence Supports The Damages Award.

The $382 million award that Samsung challenges as "trade-dress dilution

award" (Br. 41) includes all damages awarded for six Samsung products, which the

jury found not only diluted Apple's trade dresses but also infringed Apple's design

and utility patents.  A646-A647; *supra* p. 20.  If the Court were to reverse or

remand on any trade-dress issue (though it should not), then damages should still

be awarded for these six products for at least design-patent and utility-patent

infringement.  But even focusing solely on trade-dress dilution, the $382 million

awarded for these six products is well-supported.

impose "greater precision" than the ordinary meaning requires (A6) does not

render the claim indefinite where, as the district court concluded, the evidence

shows that a skilled artisan would understand its meaning (A9).

Nor did named inventor Scott Forstall testify that the term is "entirely

subjective." Br. 66-67. Mr. Forstall merely explained *why* it would not always be

appropriate to center the enlarged content exactly—for example, where exact

centering would result in empty space on the side of the screen. A40759-40760.

To the extent Mr. Forstall addressed the term's meaning, he identified objective

criteria that a skilled artisan would apply (*e.g.*, centering should not result in

showing space "beyond the edge of a document"). *Id.*

### C. Substantial Evidence Supports The Second Jury's Lost-Profits Award.

Although not indicated on the verdict form (A652-A653), Samsung

speculates that the second jury awarded $114 million in lost profits for ten phones

found to infringe the '915 patent. Br. 68. Even if Samsung's dissection of the

verdict is accepted, the $114 million award is well-supported by the evidence.

*E.g.*, A29791-A29813; A50649-A50678; A50690-A50692.

#### 1. Samsung's non-infringing alternatives argument rests on an incorrect standard.

To receive lost profits, Apple was not required to prove the *complete*

absence of non-infringing alternatives. Br. 68. Rather, Apple simply had to

infringing alternatives in his analysis. A50589. Samsung's argument, at most, is that Dr. Hauser did not specifically test the Intercept or Galaxy Ace. But as explained above (pp. 81-83), neither of those phones was an acceptable, available alternative. In any event, Samsung placed this theory before the jury by cross-examining Dr. Hauser (A50610); the jury was free to reject it.

### D. Substantial Evidence Supports The Reasonable-Royalty Awards.

Samsung also speculates that the judgment includes $35 million in reasonable-royalty damages for utility-patent infringement. Br. 72. That amount is amply supported.

Ms. Davis explained the three different methods underlying her royalty rate and applied a *Georgia-Pacific* analysis to calculate her final royalty. A50707-A50709. She discussed demand for Apple's patented features at length in her lost-profits analysis, including Dr. Hauser's survey and several Samsung documents. A50652-A50661 (discussing A24978, A25003, A25162, A25173, A25178, A25345-A25346, A25349). Samsung's argument that Ms. Davis should have addressed that evidence again in her reasonable-royalty discussion (Br. 72-73) places form over substance. The evidence was before the jury, and Ms. Davis was not required to retread old ground in a time-limited trial—particularly when she emphasized that her demand analysis for lost profits was also "relevant to the determination of the amount of reasonable royalties." A50651:25-A50652:4; *see,*

**ADD24**

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Cal. Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Cal. Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>       Plaintiff,<br><br>     vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>      Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OBJECTIONS TO APPLE'S PROPOSED PARTIAL FINAL JUDGMENT (DKT. 3264)**<br><br>Date:<br>Time:<br>Place:   Courtroom 8, 4th Floor<br>Judge:  Hon. Lucy H. Koh |

# ADD25

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

        A.      Previous District Court Proceedings ........................................................ 2

        B.      Federal Circuit Proceedings ..................................................................... 4

        C.      United States Patent And Trademark Office Proceedings ........................ 4

        D.      Apple's Proposed Partial Final Judgment ................................................ 5

III.    ENTRY OF A PARTIAL FINAL JUDGMENT WOULD VIOLATE RULE 54(B) .......... 5

        A.      None Of Apple's Patent Claims Has Been Finally Resolved ................... 6

                1.      Apple's Complaint States Its Claims On A Patent-by-Patent Basis ............. 6

                2.      Apple's Patent Claims Are Not Final Under Rule 54(b) Until
                        Damages Have Been Determined ................................................ 7

                3.      Damages Have Not Been Finally Resolved As To Any Of Apple's
                        Patent Claims ................................................................................ 8

        B.      The "No Just Reason For Delay" Requirement Is Not Satisfied ............................. 10

IV.     THE MANDATE RULE DOES NOT ALLOW THE ENTRY OF AN IMPROPER
        PARTIAL FINAL JUDGMENT ................................................................... 12

        A.      The Court Of Appeals Did Not Instruct The Court To Enter Partial Final
                Judgment In Violation Of The Rules Of Civil Procedure ...................... 12

        B.      Exceptions To The Mandate Rule Apply In Any Event ......................... 15

V.      CONCLUSION ................................................................................................. 16

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4 *Amado v. Microsoft Corp.*,
   517 F.3d 1353 (Fed. Cir. 2008)..................................................................................13, 16
5

6 *Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   786 F.3d 983 (Fed. Cir. 2015)............................................................................1, 4, 9, 14

7 *Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   Case No. 14-1335, Dkt. 212, (Fed. Cir. Aug. 25, 2015) ...................................4, 5, 12
8

9 *Aspex Eyewear, Inc. v. Concepts in Optics, Inc.*,
   153 Fed. App'x 730 (Fed. Cir. 2005)................................................................................7

10 *Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*,
   146 F.3d 1071 (9th Cir. 1998)...........................................................................................13
11

12 *B&B Hardware, Inc. v. Hargis Industries, Inc.*,
   135 S. Ct. 1293 (2015) .......................................................................................................10

13 *Bank of Nova Scotia v. United States*,
   487 U.S. 250 (1988) ...........................................................................................................13
14

15 *Barrow v. Falck*,
   11 F.3d 729 (7th Cir. 1993)...............................................................................................16

16 *Baughman v. Walt Disney World Co.*,
   685 F.3d 1131 (9th Cir. 2012)........................................................................................8, 9
17

18 *Bausch & Lomb Inc. v. Alcon Labs., Inc.*,
   914 F. Supp. 951 (W.D.N.Y. 1996) .................................................................................11

19 *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
   576 F.3d 1348 (Fed. Cir. 2009).........................................................................................12
20

21 *Clark v. United States*,
   656 F.3d 1317 (Fed. Cir. 2011).........................................................................................14

22 *Coho Licensing LLC v. Glam Media*,
   2014 WL 4681699 (N.D. Cal. Sept. 17, 2014)...............................................................11
23

24 *Conway v. Chem. Leaman Tank Lines, Inc.*,
   644 F.2d 1059 (5th Cir. 1981)...........................................................................................14

25 *Cox Enters., Inc. v. News-Journal Corp.*,
   --- F.3d ----, 2015 WL 4461615 (11th Cir. 2015) .........................................................15
26

27 *Curtiss-Wright Corp. v. Gen. Elec. Co.*,
   446 U.S. 1 (1980) ......................................................................................................3, 5, 6, 10

28

**ADD27**

*Davis v. Wakelee,*
   156 U.S. 680 (1895) ........................................................................................8

*Delphix Corp. v. Actifio, Inc.,*
   2014 WL 6068407 (N.D. Cal. Nov. 13, 2014) ..................................................11

*Engel Indus., Inc. v. Lockformer Co.,*
   166 F.3d 1379 (Fed. Cir. 1999) ..............................................................13, 14

*ePlus, Inc. v. Lawson Software, Inc.,*
   760 F.3d 1350 (Fed. Cir. 2014) ....................................................................10

*ePlus, Inc. v. Lawson Software, Inc.,*
   790 F.3d 1307 (Fed. Cir. 2015) ....................................................................10

*Everything For Love.com, Inc. v. Tender Loving Things, Inc.,*
   2006 WL 2091706 (D. Ariz. Jul. 21, 2006) ....................................................11

*Evolutionary Intelligence, LLC v. Apple, Inc.,*
   2014 WL 93954 (N.D. Cal. Jan. 9, 2014) ......................................................11

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.,*
   137 F.3d 1475 (Fed. Cir. 1998) ..............................................................13, 14

*Falk v. Allen,*
   1990 WL 134267 (9th Cir. 1990) ............................................................13, 15

*Fresenius, USA, Inc. v. Baxter Int'l, Inc.,*
   721 F.3d 1330 (Fed. Cir. 2013) ....................................................................10

*Houston Indus. Inc. v. United States,*
   78 F.3d 564 (Fed. Cir. 1996) ......................................................................5, 10

*Int'l Controls Corp. v. Vesco,*
   535 F.2d 742 (2nd Cir. 1976) ..........................................................................7

*Juxtacomm-Texas Software, LLC v. Lanier Parking Sys. of Va., Inc.,*
   2011 WL 3322554 (E.D. Va. Aug. 2, 2011) ....................................................11

*Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund,*
   791 F.2d 548 (7th Cir. 1986) ..........................................................................7

*Laitram Corp. v. NEC Corp.,*
   115 F.3d 947 (Fed. Cir. 1997) ......................................................................15

*Liberty Mutual Ins. Co. v. Wetzel,*
   424 U.S. 737 (1976) ........................................................................................7

*Mendenhall v. Barber-Greene Co.,*
   26 F.3d 1573 (Fed. Cir. 1994) ......................................................................10

*Monument Mgmt. Ltd. P'ship I v. City of Pearl,*
   952 F.2d 883 (5th Cir. 1992) ..........................................................................7

**ADD28**

*Moulds v. Bullard*,
   452 F. App'x 851 (11th Cir. 2011)................................................................16

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) .......................................................................................8

*Pearson v. Exide Corp.*,
   2002 WL 93052 (E.D. Pa. Jan. 22, 2002) ......................................................8

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
   719 F.3d 1305 (Fed. Cir. 2013) .....................................................................7

*S. Bank & Trust Co. v. Prosperity Beach, LLC*,
   2014 WL 4976598 (E.D. Va. Oct. 3, 2014) ..................................................12

*Scott v. Churchill*,
   377 F.3d 565 (6th Cir. 2004).........................................................................16

*Sears, Roebuck & Co. v. Mackey*,
   351 U.S. 427 (1956)...............................................................................5, 6, 7

*Tronzo v. Biomet, Inc.*,
   236 F.3d 1342 (Fed. Cir. 2001).................................................................13, 16

*United States v. Bell Petroleum Servs., Inc.*,
   64 F.3d 202 (5th Cir. 1995)...........................................................................13

*United States v. Bass*,
   104 F. App'x 997 (5th Cir. 2004)..................................................................16

*United States v. Burnett*,
   262 F.2d 55 (9th Cir. 1958)............................................................................7

*United States v. Cuddy*,
   147 F.3d 1111 (9th Cir. 1998)......................................................................16

*W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Research Assocs., Inc.*,
   975 F.2d 858 (Fed. Cir. 1992).................................................................5, 6, 10

*Westside Mothers v. Olszewski*,
   454 F.3d 532 (6th Cir. 2006).........................................................................13

*Yankee Atomic Elec. Co. v. United States*,
   679 F.3d 1354 (Fed. Cir. 2012).....................................................................13

## Statutes

28 U.S.C. § 1292(c)(2) ..........................................................................................7

35 U.S.C. § 141(b) ..........................................................................................5, 10

Fed. R. Civ. P. 54(b)...................................................................................... *passim*

Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") hereby respectfully provide the following points and authorities in support of their objections to the entry of partial final judgment (Dkt. 3265). On August 25, 2015, Samsung showed (Dkt. 3265) that Apple's letter of that same date (Dkt. 3264) was procedurally improper and that any action taken based on that letter would violate due process. Although Apple has not properly requested the relief it seeks, in an abundance of caution Samsung promptly prepared these points and authorities to assist the Court in addressing Apple's proposed partial final judgment. As shown below, entry of partial final judgment at this time would violate Federal Rule of Civil Procedure 54(b), contradict this Court's previous ruling denying a partial final judgment, and work a manifest injustice by enforcing a patent which the PTAB has ruled is invalid in a final decision. Nor is any such judgment required by the appellate court's mandate.

## I.    INTRODUCTION

On May 18, 2015, the Federal Circuit vacated the prior judgment in this case, reversing liability and damages on Apple's claims of trade-dress dilution and otherwise affirming. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 786 F.3d 983, 1005 (Fed. Cir. 2015). The jury's damages awards for five products were supported only by the judgment of trade-dress dilution liability, and those awards have thus now been vacated. Further proceedings are required to reassess damages for those five products, as they were also found to infringe Apple's design and utility patents. Because damages for Apple's patent claims as to those five products are undetermined, total damages on each patent claim are undetermined.

This means that the Court *cannot* enter a partial final judgment at this time, for the law is clear that a partial final judgment can be entered only when an entire *claim* is completely resolved, including damages as to all accused products. Indeed, this Court previously so ruled, at Apple's urging, in materially identical circumstances. After the first trial, this Court held that Apple's incorrect "notice date" contentions led to damages awards premised on a legally impermissible theory, requiring a retrial as to some products. And although the Court encouraged the parties to seek appellate review of that ruling before retrying damages, Apple argued that Rule 54(b) did not

SAMSUNG'S OBJECTIONS TO APPLE'S PROPOSED PARTIAL FINAL JUDGMENT

authorize the entry of partial judgment until damages from infringement by *all* accused products were finally determined.   The Court agreed, ruling that federal law prohibits entry of partial judgment when damages as to some accused products are undetermined and thus the patent-by-patent claims remained unresolved.   This ruling applies again now, and precludes the entry of a partial final judgment.

Moreover, it would work a manifest injustice to enter partial final judgment on the many products for which '915 patent infringement damages were awarded.   As explained in further detail in Samsung's pending Motion for Entry of Judgment of Invalidity (Dkt. 3267), the PTAB has issued a final decision invalidating the '915 patent.   That final decision is entitled to collateral estoppel effect in this case.   Even if collateral estoppel did not apply at this stage of the proceedings, the PTAB's ruling would still provide a "just reason for delay" foreclosing immediate entry of partial judgment under Rule 54(b).

The appellate mandate does not require a different result because the Federal Circuit did not consider any arguments pertaining to Rule 54(b) or instruct the Court to enter a partial final judgment that violates the Federal Rules of Civil Procedure.   Nor could such a violation of the Rules be encompassed by an appellate court's mandate.

Accordingly, Samsung objects to the entry of a partial final judgment at this time.

## II.    BACKGROUND

### A.    Previous District Court Proceedings

At the first trial in 2012, a jury found that multiple Samsung products infringed Apple's D'677, D'087 and D'305 design patents and Apple's '381, '915 and '163 utility patents, and diluted Apple's registered '983 trade dress and unregistered iPhone trade dress.   Because the claims were on a patent-by-patent basis, the verdict form was arranged on a patent-by-patent basis for all liability questions.   For example, Question 1 was directed to infringement of the '381 patent, Question 2 was directed to infringement of the '915 patent, Question 3 was directed to infringement of the '163 patent, and so on.   Dkt. No. 1931.   With respect to damages, Question 22 sought the total amount of damages due to Apple, and Question 23 sought the total amount of damages due to Apple on a product-by-product basis.   *Id.* at 15-16.   The verdict form did not

permit the jury to make separate damages findings on a patent-by-patent basis, but only on a product-by-product basis.

Following the first jury trial, the Court held that Apple had relied on incorrect notice dates for all of its design patents and all but one of its utility patent claims.  Dkt. 2271 at 18.  As a result, the Court concluded that Apple had "identified an impermissible legal theory on which the jury based its award" (*id*. at 26), and ordered a new trial on damages for thirteen products.[1]  The Court also found that notice was not required for dilution of unregistered trade dress and upheld the jury's damages verdicts for five products found to dilute Apple's unregistered trade dress on that basis— the Fascinate, Galaxy S 4G, Galaxy S Showcase, Mesmerize, and Vibrant.  The Court stated: "Thus, for any product for which the jury found dilution of unregistered trade dress, there can be no excess on the basis of notice dates, because an award of Samsung's profits, the highest amount sought by Apple, would be permissible for the entire period requested by Apple, from August 4, 2010 through the beginning of trial, based on trade dress dilution alone."  *Id*. at 21-22.

The Court "encouraged [the parties] to seek appellate review of this Order before any new trial."  *Id*. at 26.  Consistent with the Court's request, Samsung moved for entry of partial final judgment under Federal Rule of Civil Procedure 54(b).  Dkt. 2281.  Apple opposed, arguing that Rule 54(b) did not permit such a partial judgment because its claims for relief had not been finally resolved inasmuch as damages for the products subject to retrial—and thus the total damages for each patent claim—were undetermined.  Dkt. 2288 at 3.  The Court agreed that Rule 54(b) does not permit entry of partial final judgment on a claim for patent infringement when damages for some accused products are undetermined (Dkt. 2320 at 27 (citing *Curtiss-Wright Corp. v. Gen. Elec. Co*., 446 U.S. 1, 7 (1980))), and denied Samsung's motion on that basis (Dkt. 2316 at 1).  The Court then held a damages retrial and resolved post-trial motions before entering final judgment on March 6, 2014.  Dkt. 3017.

---

[1]   Specifically, the Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Galaxy Prevail, Galaxy Tab, Gem, Indulge, Infuse 4G, Nexus S 4G, Replenish, and Transform.  Dkt. 2271 at 26.  The Court also ordered a new trial on damages for the Galaxy S II (AT&T), but the original verdict for this product was later reinstated.  Dkt. 2316 at 2.

**B.      Federal Circuit Proceedings**

On appeal from the Court's final judgment, the Federal Circuit held that Apple's registered and unregistered trade dresses were functional, and reversed the judgment for Apple of trade-dress dilution.   *Apple*, 786 F.3d at 994-96.   The court remanded "for immediate entry of final judgment on all damages awards not predicated on Apple's trade dress claims and for any further proceedings necessitated by our decision to vacate the jury's verdicts on the unregistered and registered trade dress claims."   *Id*. at 1005.

With respect to damages, the Federal Circuit's opinion applies to the five products as to which this Court previously sustained the jury's damages awards on the basis of Apple's claims of unregistered trade-dress dilution.   The Federal Circuit's invalidation of Apple's trade dress establishes another "impermissible legal theory on which the jury based its award" (Dkt. 2271 at 26), and the five products are now in a similar position to the thirteen products for which the Court ordered a new trial in 2013.   In addition to the judgment of trade-dress dilution, these five products were also found to infringe Apple's design and utility patents as illustrated below:

| Product | D'677 | D'305 | D'087 | '381 | '915 | '163 |
|---|---|---|---|---|---|---|
| Fascinate | X | X | | X | X | X |
| Galaxy S 4G | X | X | X | X | X | X |
| Galaxy S Showcase | X | X | | | | |
| Mesmerize | X | X | | X | X | X |
| Vibrant | X | X | X | X | X | |

The Federal Circuit issued its mandate on August 25, 2015.   *Apple Inc. v. Samsung Elecs. Co., Ltd*., Case No. 14-1335, Dkt. 212, (Fed. Cir. Aug. 25, 2015).

**C.      United States Patent And Trademark Office Proceedings**

In the course of this case there have been parallel *ex parte* reexamination proceedings in the United States Patent and Trademark Office ("PTO") regarding the validity of the '915 patent. Samsung has previously updated the Court as the reexamination has progressed.   *See* Dkt. 2349, Dkt. 2421, Dkt. 2507, Dkt. 2614, Dkt. 2809, Dkt. 2899, Dkt. 2928, Dkt. 3145.   On December 9,

2014, the PTAB affirmed the examiner's rejection of all claims of the '915 patent, including the only claim at issue here (claim 8).   Dkt. 3267-19.   On February 9, 2015, Apple filed a request for a rehearing with the PTAB.   Dkt. 3267-20.   That rehearing request is currently pending.

Recent PTAB statistics show that there are currently five requests for rehearing for *ex parte* reexaminations pending before the PTAB.   Dkt. 3267-23.   Of those five, four have been pending for less than six months and one has been pending between seven and thirteen months. *Id*.   The number of rehearing requests has been rapidly declining over the past 9 months, which indicates that the PTAB is addressing rehearing requests expeditiously.   *Id*.   Based on these statistics, a final decision from the PTAB will likely issue soon.   If the PTAB denies Apple's rehearing request, Apple's only recourse is to appeal the decision to the Federal Circuit.   35 U.S.C. § 141(b).

### D.   Apple's Proposed Partial Final Judgment

On August 25, 2015, Apple filed a letter to the Court attaching a proposed partial final judgment.   Dkt. 3264.   Apple's letter identifies no basis for its submission, nor does it offer the Court any rule or legal authority to support entry of partial final judgment in these circumstances. Apple's proposed order requests that this Court find "no just reason for delay," but such a finding, while required, is not sufficient for a partial final judgment under Rule 54(b).

## III.   ENTRY OF A PARTIAL FINAL JUDGMENT WOULD VIOLATE RULE 54(b)

Rule 54(b) provides that, "[w]hen an action presents more than one claim for relief— whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Such a partial final judgment is the exception rather than the rule, and a district court must make two determinations before it may enter such a partial judgment.   *Houston Indus. Inc. v. United States*, 78 F.3d 564, 567 (Fed. Cir. 1996); *see Curtiss-Wright*, 446 U.S. at 7-8.   *First*, a partial final judgment can enter only if there has been "an ultimate disposition of an individual claim entered in the course of a multiple claims action."   *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956).   This requirement is "a statutory mandate and not a matter of discretion."   *W.L.*

1   *Gore & Assocs., Inc. v. Int'l Med. Prosthetics Research Assocs., Inc.*, 975 F.2d 858, 862 (Fed. Cir.

2   1992).   *Second*, the Court must also determine that there is "no just reason for delay" in entering

3   judgment as to any such claim.   *Curtiss-Wright*, 446 U.S. at 8; *see also* Fed. R. Civ. P. 54(b).

4   Neither requirement is satisfied here.

### A.   None Of Apple's Patent Claims Has Been Finally Resolved

6       This Court previously held that the Federal Rules of Civil Procedure do not permit the

7   entry of partial final judgment on a claim for patent infringement when damages for one or more

8   products found to infringe that patent are undetermined, and thus the patent-by-patent claims

9   remain unresolved.   Dkt. 2316 at 1; Dkt. 2320 at 27 (citing *Curtiss-Wright*, 446 U.S. at 7).   That

10  ruling, made at Apple's urging, precludes the entry of a partial final judgment now.

### 1.   Apple's Complaint States Its Claims On A Patent-by-Patent Basis

12      The Supreme Court and the Federal Circuit have defined a "claim," as that term is used in

13  Rule 54(b), as the actual claim described in a party's complaint.   Courts "must examine *the*

14  *claims stated in the complaint* so as to consider adequately the issue of appealability," *Sears*, 351

15  U.S. at 429 (emphasis added), and "[a] judgment is not final for Rule 54(b) purposes unless it is

16  'an *ultimate* disposition of an *individual* claim entered in the course of a multiple claims action.'"

17  *W.L. Gore*, 975 F.2d at 861-62 (quoting *Sears*, 351 U.S. at 436) (emphasis in original).   Because

18  the finality requirement is mandatory and jurisdictional, partial final judgment cannot be entered

19  until a claim "stated in the complaint" is completely resolved.   *See Sears*, 351 U.S. at 437 ("The

20  District Court cannot, in the exercise of its discretion, treat as 'final' that which is not 'final'

21  within the meaning of § 1291.").

22      Earlier in this case, this Court ruled (at Apple's urging) that the claims "stated in the

23  complaint," for purposes of Rule 54(b), are each of Apple's claims alleging design and utility

24  patent infringement.   *See* Dkt. 2320 at 27:17-24 (ruling that Court could not enter partial final

25  judgment on "Apple's claims for relief … involving infringement of the '381 patent, the '915

26  patent, the '163 patent, the design patent numbers '305 and '677").   This identification of claims

27  is clear from Apple's complaint, which pleads separate claims alleging infringement of the '381

28  patent ("Ninth Claim for Relief"); the '915 patent ("Twelfth Claim for Relief"); the '163 patent

("Fourteenth Claim for Relief"); the D'305 patent ("Eighteenth Claim for Relief"); the D'677 patent ("Nineteenth Claim for Relief"); and the D'087 patent ("Twenty-First Claim for Relief"). Dkt. 75 at 51, 53-55, 57-59.   Thus, Apple has asserted six separate claims for infringement of those patents, and a partial final judgment can enter under Rule 54(b) only if one or more of those patent-by-patent claims has been finally resolved.   But here, none of Apple's claims for patent infringement have been finally resolved.

### 2. Apple's Patent Claims Are Not Final Under Rule 54(b) Until Damages Have Been Determined

Because a partial final judgment is proper only following the "ultimate disposition" of a claim, *Sears*, 351 U.S. at 436, the law is clear that no such judgment can enter unless the Court has finally resolved both liability *and* damages for that claim.   *See, e.g.*, *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1331 n.2 (Fed. Cir. 2013) (en banc) (O'Malley, J., dissenting) (noting that "there is no dispute that a Rule 54(b) certification is not appropriate" where liability but not damages have been determined, in the context of evaluating an exception to the finality rule under 28 U.S.C. § 1292(c)(2)); *Aspex Eyewear, Inc. v. Concepts in Optics, Inc.*, 153 Fed. App'x 730, 731 (Fed. Cir. 2005) (non-precedential) ("To enter an appealable Rule 54(b) judgment, the district court must have decided all pertinent issues regarding the claim, and not just liability."); *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 553 (7th Cir. 1986) ("There is no material difference between an order that leaves all damages issues open (as in *Liberty Mutual* ) and an order that leaves one, important damages issue open (this case).   In either event the order is not a final disposition of a claim and does not meet the standards of Rule 54(b).") (citing *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737 (1976)); *Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 748 (2nd Cir. 1976) ("[F]or a final judgment to be entered on any one claim, all damages stemming from that claim must be fixed."); *United States v. Burnett*, 262 F.2d 55, 59 (9th Cir. 1958) (judgment of liability and partial damages not final where the issue of damages as to future disability was reserved for later decision); *see also Monument Mgmt. Ltd. P'ship I v. City of Pearl*, 952 F.2d 883, 885 (5th Cir. 1992) (dismissing appeal of Rule 54(b) judgment that "disposed of most of the elements of damages arising from Monument's inverse condemnation

claim against the City, but … did not dispose of that claim in its entirety"); *Pearson v. Exide Corp.*, 2002 WL 93052, at *1 (E.D. Pa. Jan. 22, 2002) ("Any order where the damages are not fixed or which leaves additional damages issues open for further adjudication is not final pursuant to Rule 54(b).").

It was on this basis that, following the first jury trial, Apple opposed Samsung's request for partial final judgment (Dkt. 2281) as to 14 products as to which both liability and damages had been finalized.    Apple argued then that it would be improper under Rule 54(b) to "separate out portions of the case for final judgment by *product*, rather than by *claim for relief*" (Dkt. 2288 at 3 (emphasis in original)), and the Court agreed with Apple, ruling that "it [had] not finally resolved Apple's claims for relief as the new trial on damages will implicate products involving infringement of the '381 patent, the '915 patent, the '163 patent, the design patent numbers '305 and '677" (Dkt. 2320 at 27:17-24).

Accordingly, as the Court previously ruled, a partial final judgment can enter on Apple's claims of infringement only after *all* damages for such infringement, as to *all* products found to be infringing, have been finally determined.    And Apple is judicially estopped from asserting otherwise.    *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 754 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)); *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) ("We've applied the doctrine [of judicial estoppel] to prevent a party from making a legal assertion that contradicted its earlier legal assertion.").

### 3. Damages Have Not Been Finally Resolved As To Any Of Apple's Patent Claims

Because the five products subject to retrial implicate all of Apple's claims of patent infringement, damages are unresolved as to each of those claims and the Court may not enter a partial final judgment on any of those claims.

Specifically the damages awards for five products—the Fascinate, Galaxy S 4G, Galaxy S Showcase, Mesmerize, and Vibrant—were predicated solely on the now-vacated judgment of trade-dress dilution.   Following the first trial, the Court held that Apple's proof of damages depended on erroneous "notice" dates, requiring a damages retrial for some products.   Dkt. 2271 at 18.   But the Court upheld the jury's award of $381,683,562 in damages for the above-listed five products based on Apple's claim of unregistered trade-dress dilution, which the Court ruled required no notice.   *Id*. at 21-22.   The Federal Circuit reversed the judgment of liability for trade-dress dilution and remanded for "any further proceedings necessitated by our decision to vacate the jury's verdicts on the unregistered and registered trade dress claims."   *Apple*, 786 F.3d at 1005.   Further proceedings are thus required to reassess any damages for those five products.

These further proceedings will entail litigation as to *each* of Apple's claims for relief, including its claims for infringement of the D'677 patent, the D'305 patent, the D'087, the '381 patent, the '915 patent, and the '163 patent, because the five products were collectively found to infringe *all* of those patents.   In particular, the proceedings will need to address the proper measure of damages and available remedies for each design and utility patent, employing correct notice dates, as set forth in the following table:

| Claim | Notice Date | Available Remedy | Products |
|-------|-------------|------------------|----------|
| D'677 | April 15, 2011 | Infringer's Profits or Reasonable Royalty | Fascinate, Galaxy S 4G, Galaxy S Showcase, Mesmerize, and Vibrant |
| D'305 | June 16, 2011 | Infringer's Profits or Reasonable Royalty | Fascinate, Galaxy S 4G, Galaxy S Showcase, Mesmerize, and Vibrant |
| D'087 | June 16, 2011 | Infringer's Profits or Reasonable Royalty | Galaxy S 4G and Vibrant |
| '381 | August 4, 2010 | Reasonable Royalty | Fascinate, Galaxy S 4G, Mesmerize, and Vibrant |
| '915 | April 15, 2011 | Lost Profits or Reasonable Royalty | Fascinate, Galaxy S 4G, Mesmerize, and Vibrant |
| '163 | June 16, 2011 | Reasonable Royalty | Fascinate, Galaxy S 4G, and Mesmerize |

As this shows, damages remain undetermined as to each of Apple's claims of infringement.   The Federal Rules do not permit the entry of partial final judgment on such claims

**ADD38**
-9-

at this time. *See W.L. Gore*, 975 F.2d at 861-62; *Houston Indus.*, 78 F.3d at 567 ("The requirement of a final disposition of a claim is mandatory and is not a matter of discretion.").

## B. The "No Just Reason For Delay" Requirement Is Not Satisfied

Entry of partial final judgment pursuant to Rule 54(b) is independently barred because Apple cannot satisfy the requirement that there be "no just reason for delay," Fed. R. Civ. P. 54(b), considering "judicial administrative interests as well as the equities involved." *Curtiss-Wright*, 446 U.S. at 7-8. The PTAB's final decision invalidating the '915 patent clearly provides just reason for delay in this case.

As explained in Samsung's Motion for Entry of Judgment of Invalidity, the PTAB has issued a final decision invalidating claim 8 of the '915 patent, and that decision is entitled to preclusive effect in this Court now, particularly in view of the Supreme Court's recent decision in *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 135 S. Ct. 1293 (2015). *See* Dkt. 3267; Dkt. 3267-1. But even if further proceedings on reexamination were needed for preclusion to attach (they are not), final resolution will occur within the near future. Apple's request for a rehearing should be disposed of shortly, and Apple's only recourse upon denial of rehearing will be an appeal to the Federal Circuit. *See* Dkt. 3267 at 10; *id.* at 5-11, 15 (preclusion based on collateral estoppel); 35 U.S.C § 141(b); *Fresenius*, *USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340-46 (Fed. Cir. 2013) (holding that PTO cancellation renders patent void *ab initio*, requiring a defense judgment in ongoing infringement proceedings); *ePlus, Inc. v. Lawson Software, Inc.*, 760 F.3d 1350, 1355-1360 (Fed. Cir. 2014) (similar).

In light of the preclusive effects of the PTAB's final decision, it would be unjust to enter a partial final judgment on products found to infringe that patent, for several reasons:

*First*, the Federal Circuit has recognized that it is "manifestly *unjust*" to allow a plaintiff to recover on a patent that has been invalidated in separate proceedings, *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1583 (Fed. Cir. 1994) (italics in original), *as corrected on reh'g* (Sept. 14, 1994), because such enforcement unfairly penalizes the defendant in one proceeding "when the rest of the industry is not impeded by the patents." *Id.*; *see also ePlus, Inc. v. Lawson Software, Inc.*, 790 F.3d 1307, 1309 (Fed. Cir. 2015) (Dyk., J., concurring in denial of rehearing

SAMSUNG'S OBJECTIONS TO APPLE'S PROPOSED PARTIAL FINAL JUDGMENT

1  en banc) (similar).    The harm to Samsung from the entry of final partial judgment could be

2  irreparable.    *See Everything For Love.com, Inc. v. Tender Loving Things, Inc.*, 2006 WL

3  2091706, at *4 (D. Ariz. Jul. 21, 2006) ("If Plaintiff acquires a judgment against Defendant for

4  infringement, and the '980 patent is subsequently held invalid by the PTO, there exists the

5  possibility of irreparable harm to Defendant…."); *Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F.

6  Supp. 951, 952 (W.D.N.Y. 1996) ("[O]ne possible scenario could result in irreparable harm to

7  Alcon: if this Court finds that the '607 [patent] is not invalid and that Alcon has infringed it, and

8  orders Alcon to pay damages to B & L for such infringement, then Alcon would have no ability to

9  recover those damages if at a later date the PTO determined that the '607 patent is invalid.").

10      *Second*, appropriate respect for the PTO—the agency tasked by Congress with creating and

11  dissolving patent rights—requires a stay of this case in deference to the agency proceedings.    The

12  PTAB's finding of invalidity, while based on different arguments than those presented to the jury

13  in this case, *see* Dkt. No. 3267 at 2-3, is inconsistent with Apple's proposed partial final judgment.

14  The "cloud of invalidity" that covers the '915 patent, *Juxtacomm-Texas Software, LLC v. Lanier*

15  *Parking Sys. of Va., Inc.*, 2011 WL 3322554, at *2 (E.D. Va. Aug. 2, 2011), and the need to avoid

16  "inconsistent results" between this Court and the PTO, support a stay of these proceedings.    *See*

17  Dkt. 3267 at 14-15 (citing *Delphix Corp. v. Actifio, Inc.*, 2014 WL 6068407, at *2 (N.D. Cal. Nov.

18  13, 2014); *Coho Licensing LLC v. Glam Media*, 2014 WL 4681699, at *2 (N.D. Cal. Sept. 17,

19  2014); *Evolutionary Intelligence, LLC v. Apple, Inc.*, 2014 WL 93954, at *2-3 (N.D. Cal. Jan. 9,

20  2014)).    At a minimum, the PTAB's final decision of invalidity provides "just reason for delay"

21  in entering partial final judgment.    Fed. R. Civ. P. 54(b).

22      *Third*, to enter partial final judgment on products found to infringe the '915 patent now

23  would create a risk of inconsistent judgments issued *by this Court*.    Subject to stays of execution

24  and further appellate proceedings, entry of partial final judgment for Apple on its claim for '915

25  patent infringement would require Samsung to pay damages on thirteen products for which '915

26

27

28

1  patent infringement damages were awarded.[2]   But proceedings as to *other* products would be

2  ongoing—as explained above, new damages proceedings are required as to the five products found

3  to dilute trade dress—and further proceedings confirming the preclusive effect of the PTAB's

4  invalidation decision would then require a judgment *for Samsung* as to the remaining portions of

5  Apple's claim for '915 patent infringement.   Thus, entry of partial judgment could yield

6  inconsistent judgments finding both liability *and* no liability as to the same '915 patent, for

7  different but similarly-situated accused products.

8         This risk of inconsistency provides ample "reason for delay" in issuing a partial final

9  judgment.   *S. Bank & Trust Co. v. Prosperity Beach, LLC*, 2014 WL 4976598, at *1 (E.D. Va.

10  Oct. 3, 2014) (refusing Rule 54(b) judgment to prevent "logically inconsistent judgment in the

11  same action") (internal quote marks omitted).   It also demonstrates the importance of strict

12  adherence to the requirement that an *entire* claim, and not just part of it, be *finally* resolved before

13  a partial judgment can be entered.

14  **IV.    THE MANDATE RULE DOES NOT ALLOW THE ENTRY OF AN IMPROPER PARTIAL FINAL JUDGMENT**

15

16         Apple is not correct that this Court is required by the appellate court's mandate to enter a

17  partial final judgment in disregard of Rule 54(b)'s settled requirements.   The appellate court did

18  not instruct the Court to violate the Federal Rules of Civil Procedure, and there is no reason to

19  think that it intended or considered such a result.

20         **A.    The Court Of Appeals Did Not Instruct The Court To Enter Partial Final Judgment In Violation Of The Rules Of Civil Procedure**

21         The "mandate rule" generally requires a district court to "follow an appellate decree as the

22  law of the case" in subsequent proceedings, *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576

23

---

24         [2]   *See* Dkt 2271 at 9-10 (identifying bases for award by product) and 19-20 (identifying
products eligible for damages for infringement of the '915 patent).   The amounts for the thirteen
25  products as listed in Apple's proposed form of judgment are: $21,121,812 for the Captivate;
$6,478,873 for the Continuum; $60,706,020 for the Droid Charge; $37,928,694 for the Epic 4G;
26  $2,044,683 for the Exhibit 4G; $22,143,335 for the Galaxy Prevail; $9,544,026 for the Galaxy
Tab; $833,076 for the Galaxy Tab 10.1 (WiFi); $4,831,453 for the Gem; $9,917,840 for the
27  Indulge; $99,943,987 for the Infuse 4G; $10,559,907 for the Nexus S 4G; and $2,190,099 for the
Transform.   Dkt. 3264-1 at 1.

28

**ADD41**  -12-                              Case No. 11-cv-01846-LHK

1  F.3d 1348, 1356 (Fed. Cir. 2009), and "forecloses reconsideration of issues implicitly or explicitly

2  decided on appeal," *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1364 (Fed. Cir. 2008).   The scope

3  of an appellate court's mandate is "measured by the scope of the judgment appealed from."

4  *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1382 (Fed. Cir. 1999).   This is a "prudential

5  doctrine[] that direct[s] a court's discretion," and not a jurisdictional limitation.   *Tronzo v.*

6  *Biomet, Inc.*, 236 F.3d 1342, 1349 (Fed. Cir. 2001).

7      Because the scope of a mandate is often "uncertain," district courts must consider both "the

8  letter and the spirit of the mandate" in interpreting it, *Engel Indus.*, 166 F.3d at 1383, taking into

9  account the circumstances under which the mandate issued, *see, e.g.*, *Yankee Atomic Elec. Co. v.*

10  *United States*, 679 F.3d 1354, 1360-61 (Fed. Cir. 2012).   "Interpretation of an appellate mandate

11  entails more than examining the language of the court's judgment in a vacuum."   *Exxon Chem.*

12  *Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed. Cir. 1998).   An appellate mandate

13  must be interpreted "reasonably and not in a manner to do injustice," *United States v. Bell*

14  *Petroleum Servs., Inc.*, 64 F.3d 202, 204 (5th Cir. 1995), and an "overly formalistic interpretation"

15  of a mandate is improper, *Falk v. Allen*, 1990 WL 134267, at *1 (9th Cir. 1990) (unpubl.).

16  "Where there is substantial doubt as to whether a prior panel actually decided an issue, the district

17  court should not be foreclosed from considering the issue on remand."   *Westside Mothers v.*

18  *Olszewski*, 454 F.3d 532, 539 (6th Cir. 2006).

19      Apple suggests (Dkt. 3264) that the Court of Appeals' mandate requires entry of partial

20  final judgment without regard for the requirements of the Federal Rules of Civil Procedure, which

21  prohibit the relief that Apple seeks.   Not so.   The Court of Appeals did not instruct the Court to

22  violate the Rules of Civil Procedure, nor could it have done so.   *See Atchison, Topeka & Santa*

23  *Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) ("The Federal Rules are 'as

24  binding as any statute duly enacted by Congress, and federal courts have no more discretion to

25  disregard [a Rule's] mandate than they do to disregard constitutional or statutory provisions.'")

26  (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988)).

27      Instead, as is clear from the second half of the court's instruction—omitted from Apple's

28  quotation (Dkt. 3264 at 1)—the appellate court actually remanded "for immediate entry of final

1  judgment on all damages awards not predicated on Apple's trade dress claims **and** for any further

2  proceedings necessitated by [the court's] decision to vacate the jury's verdicts on the unregistered

3  and registered trade dress claims." *Apple*, 786 F.3d at 1005 (emphasis added).  And as

4  explained above, the "further proceedings necessitated by [the] decision to vacate the jury's

5  verdicts" which the appellate court instructed this Court to undertake *preclude* the entry of a

6  partial final judgment now:  Each of Apple's claims for patent infringement remains less than

7  final given the need to reassess damages.

8       The Federal Circuit did not decide that Rule 54(b) requires the entry of partial judgment

9  notwithstanding this lack of finality because issues relating to Rule 54(b) were never raised in the

10  Court of Appeals.  And because these issues were not "actually decided" by the Federal Circuit,

11  they are not within the scope of its mandate.  *See, e.g.*, *Clark v. United States*, 656 F.3d 1317,

12  1320-21 (Fed. Cir. 2011); *Conway v. Chem. Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1062 (5th

13  Cir. 1981) ("[T]he law of the case established by a prior appeal does not extend to preclude

14  consideration of issues not presented or decided on the prior appeal.").  Nor is the question

15  whether the PTO's invalidation of the '915 patent constitutes just reason for delay under Rule

16  54(b) encompassed by the Federal Circuit's mandate, for the scope of that mandate is "measured

17  by the scope of the judgment appealed from," *Engel Indus.*, 166 F.3d at 1382, and this Court did

18  not consider that issue prior to entering final judgment.

19       In light of the clear and settled requirements for entry of partial final judgment (which are

20  not satisfied here), the Court should interpret the Federal Circuit's mandate in a manner consistent

21  with the posture of its opinion and against the backdrop of the Federal Rules—as the Federal

22  Circuit has ruled is proper in other cases.  For example, in *Exxon Chemical*, a jury verdict finding

23  literal infringement was reversed on appeal to the Federal Circuit, "without remand for a second

24  trial."  137 F.3d at 1478.  On remand, the district court interpreted the mandate to divest it of

25  authority to conduct a new trial on infringement under the doctrine of equivalents even though that

26  issue had not been addressed on appeal.  *Id.* at 1477.  But the Federal Circuit then reversed,

27  holding that its prior decision encompassed only *literal* infringement, and that its omission of a

28

1  remand directive did not preclude a new trial on infringement under the doctrine of equivalents, an

2  issue which the appellate court had not considered.   *Id.* at 1478, 1484.

3      The Federal Circuit rejected a similarly mechanical interpretation of its mandate in *Laitram*

4  *Corp. v. NEC Corp.*, 115 F.3d 947 (Fed. Cir. 1997).   There, after a jury verdict finding patent

5  infringement, the district court granted the defendant judgment as a matter of law (JMOL) on non-

6  infringement and denied the defendant's alternative motions for JMOL "as moot."   *Id.* at 949.

7  The Federal Circuit reversed and remanded with explicit instructions to "reinstate the jury's

8  verdict," *id.*, and the district court responded by reinstating the jury's verdict over the defendant's

9  objection that the court never ruled on its alternative JMOL motions.   *Id.* at 949-50.   But the

10 Federal Circuit reversed, holding that its prior decision only encompassed the issue of JMOL on

11 non-infringement, and did not preclude consideration of other grounds for JMOL.   *Id.* at 951-53.

12     Similarly, in *Falk*, 1990 WL 134267, the Ninth Circuit's mandate stated that the defendant

13 in an unlawful detainer action had a "meritorious defense to the default judgment" entered against

14 her, and remanded for the district court to consider whether the defendant was liable for treble

15 damages.   1990 WL 134267, at *1.   Attempting to follow the language of the appellate opinion

16 strictly, the district court ruled that the Ninth Circuit's statement that the defendant had a

17 "meritorious defense" required dismissal of the unlawful detainer claim altogether.   *Id.*   But the

18 Ninth Circuit then reversed, holding that such an "overly formalistic interpretation" of the mandate

19 was unwarranted.   *Id.*

20     As these cases show, an appellate mandate must be followed—but it must be properly

21 interpreted before it *can* be followed, and that interpretation must consider the posture of

22 proceedings on appeal as well as governing law.   Here, the Court of Appeals did not consider

23 Rule 54(b) issues at all, and there is no reason to assume that it mandated a clear violation of law.

**B.     Exceptions To The Mandate Rule Apply In Any Event**

25     Even if the mandate rule would otherwise require entry of an improper partial final

26 judgment (it does not), departure from the mandate would be warranted under well-established

27 exceptions to the mandate rule.   An appellate instruction is not binding if "the presentation of

28 new evidence or an intervening change in the controlling law dictates a different result, or the

1   appellate decision is clearly erroneous and, if implemented, would work a manifest injustice."

2   *Cox Enters., Inc. v. News-Journal Corp.*, --- F.3d ----, 2015 WL 4461615 (11th Cir. 2015); *see*

3   *also, e.g.*, *Tronzo*, 236 F.3d at 1349 ("revisiting issues otherwise foreclosed" by an appellate

4   mandate is appropriate "where there has been a substantial change in the evidence"); *Amado*, 517

5   F.3d at 1359 ("'An appellate mandate does not turn a district judge into a robot, mechanically

6   carrying out orders that become inappropriate in light of subsequent factual discoveries or changes

7   in the law'") (quoting *Barrow v. Falck*, 11 F.3d 729, 731 (7th Cir. 1993)).

8          As shown above, it would be clearly erroneous and manifestly unjust to enter a Rule 54(b)

9   judgment in violation of controlling authority.    The mandate rule does not require the Court to do

10  so.    *See, e.g.*, *Moulds v. Bullard*, 452 F. App'x 851, 856 (11th Cir. 2011) (unpubl.) (mandate rule

11  did not bind district court where prior appellate decision was clear error); *United States v. Bass*,

12  104 F. App'x 997, 1000 (5th Cir. 2004) (unpubl.) (district court erred in implementing "clearly

13  erroneous" appellate mandate that "said too much" about its effect); *Scott v. Churchill*, 377 F.3d

14  565, 569-70 (6th Cir. 2004) (misstatement of the law not binding on remand); *United States v.*

15  *Cuddy*, 147 F.3d 1111, 1115 (9th Cir. 1998) (district court correctly departed from clearly

16  erroneous mandate).

17  **V.     CONCLUSION**

18         For the foregoing reasons, Samsung respectfully requests that the Court not enter partial

19  final judgment at this time.

20

21

22

23

24

25

26

27

28

1 DATED:   August 27, 2015          QUINN EMANUEL URQUHART &
2                                   SULLIVAN, LLP

3                                   By   /s/ Victoria F. Maroulis
                                         Charles K. Verhoeven
4                                        Kathleen M. Sullivan
                                         Kevin P.B. Johnson
5                                        Victoria F. Maroulis
                                         Michael T. Zeller
6
                                         Attorneys for SAMSUNG ELECTRONICS CO.,
7                                        LTD., SAMSUNG ELECTRONICS AMERICA,
                                         INC., and SAMSUNG
8                                        TELECOMMUNICATIONS AMERICA, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | HAROLD J. MCELHINNY (CA SBN 66781) |
| | HMcElhinny@mofo.com |
| 2 | RACHEL KREVANS (CA SBN 116421) |
| | RKrevans@mofo.com |
| 3 | ERIK J. OLSON (CA SBN 175815) |
| | EJOlson@mofo.com |
| 4 | MORRISON & FOERSTER LLP |
| | 425 Market Street |
| 5 | San Francisco, California  94105-2482 |
| | Telephone: 415.268.7000 |
| 6 | Facsimile: 415.268.7522 |

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

7

8  Attorneys for Plaintiff and
   Counterclaim-Defendant APPLE INC.

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                          SAN JOSE DIVISION

13

| | | |
|---|---|---|
| 14 | APPLE INC., a California corporation, | Case No. 11-cv-01846-LHK (PSG) |
| 15 | Plaintiff, | **APPLE'S RESPONSE TO SAMSUNG'S OBJECTIONS TO APPLE'S PROPOSED PARTIAL FINAL JUDGMENT** |
| 16 | v. | |
| 17 | SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| 18 | | Date:    To be set by Court |
| 19 | | Time:    1:30 p.m. |
| | | Ctrm:    Courtroom 8, 4th Floor |
| 20 | | Judge:   Honorable Lucy H. Koh |
| 21 | Defendants. | |

22

23

24

25

26

27

28

**ADD47**

## INTRODUCTION

The Federal Circuit gave this Court a simple and explicit directive: "immediate entry of final judgment on all damages awards not predicated on Apple's trade dress claims." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 786 F.3d 983, 1005 (Fed. Cir. 2015). To assist the Court in carrying out the Federal Circuit's instruction, Apple submitted a proposed form of partial final judgment, with the amount of damages taken directly from the court of appeals' decision and representations by Samsung to the Federal Circuit. (Dkt. 3264.)

Notwithstanding the Federal Circuit's clear instruction that this Court immediately enter final judgment, Samsung objects. Despite its initial indication that it would challenge Apple's proposed judgment on "numerical" grounds (Dkt. 3265 at 1) Samsung does not actually object to the amount of damages in Apple's proposed partial final judgment. (Dkt. 3269; *see also* Fed. Cir. Case No. 14-1335, Dkt. 159 at 2 (Samsung stating that "[t]he panel . . . affirmed the remaining $548 million in damages").) Instead, Samsung urges this Court to defy the remand order by refusing to enter the judgment the Federal Circuit expressly directed. All of Samsung's arguments lack merit because, among other things, they are foreclosed by the plain terms of the Federal Circuit's mandate.

Enough is enough. The Court should immediately enter partial final judgment for Apple in the amount of $548,176,477 as the Federal Circuit directed.

## ARGUMENT

### I. THE FEDERAL CIRCUIT'S MANDATE REQUIRES ENTRY OF PARTIAL FINAL JUDGMENT FOR APPLE

"We remand for *immediate entry of final judgment on all damages awards not predicated on Apple's trade dress claims* and for any further proceedings necessitated by our decision to vacate the jury's verdict on the unregistered and registered trade dress claims." *Apple*, 786 F.3d at 1005 (emphasis added). The Federal Circuit's remand order unambiguously requires this Court to immediately enter a partial final judgment on Apple's affirmed damages awards. The alternative courses urged by Samsung are those of open and willful defiance of the Federal Circuit.

APPLE'S RESPONSE TO SAMSUNG'S OBJECTIONS TO APPLE'S PROPOSED PARTIAL FINAL JUDGMENT
Case No. 11-cv-01846-LHK (PSG)
sf-3572555

**ADD48**

1  "[A]n inferior court has no power or authority to deviate from the mandate issued by an

2  appellate court." *Briggs v. Pa. R. Co.*, 334 U.S. 304, 306 (1948); *see also Ins. Grp. Comm. v.*

3  *Denver & R.G.W.R. Co.*, 329 U.S. 607, 612 (1947) ("When matters are decided by an appellate

4  court, its rulings, unless reversed by it or a superior court, bind the lower court."); *In re Roberts*,

5  846 F.2d 1360, 1363 (Fed. Cir. 1988) ("Unlike the authority to reconsider its *own* rulings, a

6  district court is without choice in obeying the mandate of the appellate court.").

7    This general principle finds specific application in the "mandate rule," which "requires

8  that the district court follow an appellate decree as the law of the case." *Cardiac Pacemakers,*

9  *Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1356 (Fed. Cir. 2009).[1] When the court of appeals

10  expressly states "the purpose of the remand," the district court violates the mandate rule when it

11  contravenes those instructions. *Id.* In *Cardiac Pacemakers*, the Federal Circuit had "reinstate[d]

12  [a] jury verdict of validity" and had remanded only for retrial on infringement and damages. *Id.*

13  "Therefore, according to [the Federal Circuit's] explicit instructions, any new trial on remand was

14  limited to an assessment of infringement and a calculation of any damages." *Id.* The district

15  court violated the mandate rule by also purporting to address invalidity—a question already

16  decided by the court of appeals. *Id.*; *see also Puricelli v. Republic of Argentina*, — F.3d —,

17  No. 14-2104-cv(L), 2015 WL 4716474, at *3 (2d Cir. Aug. 10, 2015) ("Where a mandate limits

18  the issues open for consideration on remand, a district court ordinarily cannot consider additional

19  issues.").

20    Here, the mandate rule requires immediate entry of partial final judgment for Apple. As

21  noted, the Federal Circuit "remand[ed] for immediate entry of final judgment on all damages

22  awards not predicated on Apple's trade dress claims" and permitted only those "further

23  proceedings necessitated by [its] decision to vacate the jury's verdicts on the unregistered and

24

---

25  [1] The Federal Circuit applies Federal Circuit law to mandate rule questions. *See TecSec,*
*Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336, 1341-42 (Fed. Cir. 2013). In any event, Ninth

26  Circuit precedent is the same. *See, e.g.*, *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995)
("A district court, upon receiving the mandate of an appellate court 'cannot vary it or examine it

27  for any other purpose than execution.'") (*quoting In re Sanford Fork & Tool Co.*, 160 U.S. 247,
255 (1895)).

28

APPLE'S RESPONSE TO SAMSUNG'S OBJECTIONS TO APPLE'S PROPOSED PARTIAL FINAL JUDGMENT
Case No. 11-cv-01846-LHK (PSG)
sf-3572555                      2

**ADD49**

1    registered trade dress claims." *Apple*, 786 F.3d at 1005.  The court of appeals' use of the word

2    "immediate" in this instruction for entry of judgment was unusual and underscores the urgency of

3    its directive.

4         To do anything now other than provide "immediate entry of final judgment" on the

5    "damages awards not predicated on Apple's trade dress claims" (*id.*) would violate the Federal

6    Circuit's mandate.  For example, "grant[ing] judgment of invalidity to Samsung on claim 8 of the

7    '915 patent and vacat[ing] all damages judgments relating thereto" on purported collateral

8    estoppel grounds, as Samsung requests (Dkt. 3267 at 2), would be the *opposite* of entering

9    "immediate . . . final judgment" for Apple.  Likewise, entry of a stay of all proceedings

10   (Dkt. 3267 at 14-19) rather than entry of "*immediate*" final judgment would also contravene the

11   Federal Circuit's mandate.  *Apple*, 786 F.3d at 1005 (emphasis added).  Indeed, to allow Samsung

12   to assert new invalidity contentions for a patent whose non-invalidity has already been affirmed

13   on appeal—or to stay the case to permit Samsung to make such an assertion in the future—would

14   violate the mandate rule in the same way as did the district court's actions on remand in *Cardiac*

15   *Pacemakers*.  *See* 576 F.3d at 1356.[2]

16        None of Samsung's arguments against application of the mandate rule has any merit.

17        Samsung suggests that the meaning of the mandate in this case is "uncertain," so the Court

18   is free to deviate from the mandate's "letter" to follow its "spirit."  (Dkt. 3269 at 13 (quoting

19   *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999)).)  But there is no

20   uncertainty about what the Federal Circuit instructed this Court to do with respect to "all damages

21   awards not predicated on Apple's trade dress claims":  "immediate entry of final judgment."

22   *Apple Inc.*, 786 F.3d at 1005.  Samsung identifies no ambiguity in that instruction, nor does it

23   explain how the mandate's "spirit" would be served by ignoring its plain terms.

24        For this reason, Samsung's reliance on *Laitram Corp. v. NEC Corp.*, 115 F.3d 947 (Fed.

25   Cir. 1997), is misplaced.  In that case, "the critical question" was an interpretive one:  "what

26        [2] As Apple will show in its opposition to Samsung's motion for judgment as a matter of
27   law, Samsung's requests for judgment on collateral estoppel grounds and for a stay are meritless
     even apart from their failure to conform to the Federal Circuit's mandate.

28

APPLE'S RESPONSE TO SAMSUNG'S OBJECTIONS TO APPLE'S PROPOSED PARTIAL FINAL JUDGMENT
Case No. 11-cv-01846-LHK (PSG)
sf-3572555

**ADD50**

3

1    issues were left open by the mandate." *Id.* at 951.  The district court had read the Federal

2    Circuit's instruction "requir[ing] reinstatement of 'the jury verdict,'" to mean "the entire verdict."

3    *Id.* at 950.  The Federal Circuit, by contrast, ultimately interpreted its "mandate to 'reinstate the

4    jury verdict'" to refer, in context, to "the reinstatement of the verdict of infringement."  *Id.* at 952.

5    Here, there is no question of interpreting an ambiguous term of the Federal Circuit's remand

6    instructions.  There is nothing unclear about "immediate entry of final judgment."  *Apple*,

7    786 F.3d at 1005.  What Samsung asks this Court to do is simply to disobey the Federal Circuit's

8    plain instructions.[3]

9          Second, Samsung's contention that the mandate rule does not apply because the question

10   whether partial final judgment should be entered was not "decided on the prior appeal"

11   (Dkt. 3269 at 14 (citation omitted)) is baffling.  The Federal Circuit quite obviously decided to

12   direct "immediate entry of final judgment on all damages awards not predicated on Apple's trade

13   dress claims."  *Apple*, 786 F.3d at 1005.  The incontestable fact that the Federal Circuit actually

14   decided the question whether judgment should be entered entirely distinguishes this case from

15   *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475 (Fed. Cir. 1998).  (*cf.* Dkt. 3269 at

16   14-15.)  The Federal Circuit's prior opinion in *Exxon* had "noted that the issue" of a "new trial on

17   infringement under the doctrine of equivalents" had not been "briefed or argued" and expressly

18   stated that the court "'express[ed] no view on that question.'"  *Exxon Chem. Patents, Inc.*,

19   137 F.3d at 1478 (quoting 64 F.3d at 1555 n.1).  "In light of that statement," the Federal Circuit

20   later explained, "it [was] clear that this court's mandate was not intended to address the question

21   whether Exxon would be entitled to a new trial under the doctrine of equivalents."  *Id.*  By

22   contrast, the intended scope of the Federal Circuit's mandate here with respect to entry of partial

23   final judgment is perfectly clear.  Unlike in *Exxon*, it was not a question on which the Court

24          [3] The Ninth Circuit's non-precedential decision, *Falk v. Allen*, 914 F.2d 262 (9th Cir.
25   1990), is similarly inapposite.  (*Cf.* Dkt. 3267 at 13.)  In that case, the trial court committed "clear
     error" by misconstruing the court of appeals' statement that a party "ha[d] a meritorious defense
26   to [a] default judgment" to mean that the party had a meritorious defense to the plaintiffs'
     complaint, thus requiring dismissal of the complaint without any litigation on the merits.  *Falk*,
27   914 F.2d at 262.  The trial court's "overly formalistic" interpretation of the mandate was flatly
     wrong.  *Id.*  By contrast, Samsung offers no plausible way to read the Federal Circuit's mandate
28   to allow the relief Samsung seeks.

APPLE'S RESPONSE TO SAMSUNG'S OBJECTIONS TO APPLE'S PROPOSED PARTIAL FINAL JUDGMENT
Case No. 11-cv-01846-LHK (PSG)
sf-3572555                                                                    4

**ADD51**

1    expressed "no view."

2           Finally, contrary to Samsung's perfunctory argument, no "exceptions to the mandate rule"

3    apply here.  (Dkt. 3269 at 15-16); *see ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885, 889

4    (Fed. Cir. 2015) ("Under the mandate rule and the broader law-of-the-case doctrine, a court may

5    only deviate from a decision in a prior appeal if 'extraordinary circumstances' exist."); *Toro*

6    *Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1336 (Fed. Cir. 2004) (noting that "departures"

7    from the mandate rule are "rare").  Samsung fails to point to any "new evidence" or "intervening

8    change in the controlling law."  (Dkt. 3269 at 15-16 (quoting *Cox Enters., Inc. v. News-Journal*

9    *Corp.*, — F.3d —, 2015 WL 4461615 (11th Cir. 2015)).)  Samsung posits that "it would be

10   clearly erroneous and manifestly unjust to enter a Rule 54(b) judgment in violation of controlling

11   authority."  (Dkt. 3269 at 16.)  But the relevant "controlling authority" here is the Federal Circuit,

12   and it is Samsung that asks for relief "in violation" of that authority.  Moreover, as shown below,

13   there is no conflict between Rule 54(b) and compliance with the Federal Circuit's mandate.

14           **II.     SAMSUNG'S RELIANCE ON RULE 54(B) IS MISPLACED**

15           Samsung argues at length that "entry of a partial final judgment would violate Rule 54(b)"

16   of the Federal Rules of Civil Procedure.  (Dkt. 3269 at 5 (capitalization altered).)  Similarly,

17   Samsung contends that the Federal Circuit's remand instruction for "any further proceedings

18   necessitated by [its] decision to vacate the jury's verdict on the unregistered and registered trade

19   dress claims" precludes compliance with the Federal Circuit's immediately prior directive for

20   "immediate entry of final judgment on all damages awards not predicated on Apple's trade dress

21   claims."  *Apple*, 786 F.3d at 1005; (*see* Dkt. 3267 at 13-14.)  These contentions, like all of those

22   Samsung advances, are foreclosed by the Federal Circuit's mandate.

23           The Federal Circuit "remand[ed] for immediate entry of final judgment on all damages

24   awards not predicated on Apple's trade dress claims."  *Apple*, 786 F.3d at 1005.  This Court

25   accordingly must enter that judgment.  If Samsung believed that this portion of the Federal

26   Circuit's remand was erroneous, it was obligated to make that argument in a rehearing petition to

27   the Federal Circuit.  *See Taylor v. U.S. Patent & Trademark Office*, 385 Fed. Appx. 980, 983

28   (Fed. Cir. 2010) ("If Mr. Taylor was dissatisfied with the relief accorded by this court's earlier

APPLE'S RESPONSE TO SAMSUNG'S OBJECTIONS TO APPLE'S PROPOSED PARTIAL FINAL JUDGMENT
Case No. 11-cv-01846-LHK (PSG)
sf-3572555                                                                                    5

**ADD52**

1    opinion, he could have petitioned for rehearing or moved to recall the mandate. Because he failed

2    to seek any such relief in this court at the time of the initial appeal, he cannot now challenge the

3    district court's compliance with our instructions on remand.") (citation omitted). Samsung did

4    not do so.[4] Samsung cannot now have this Court reconsider the Federal Circuit's judgment.

5         In any event, all of Samsung's arguments about Rule 54(b) are based on a fundamental

6    misunderstanding of the posture of this case, which is on remand from the court of appeals.

7    Congress expressly granted the courts of appeals the authority to "*direct the entry of such*

8    *appropriate judgment*, decree, or order, or require such further proceedings to be had as may be

9    just under the circumstances." 28 U.S.C. § 2106 (emphasis added); *see United States v. Shotwell*

10   *Mfg. Co.*, 355 U.S. 233, 241 n.17 (1957) (referring to the "broad provisions of

11   28 U.S.C. § 2106"); *Niesz v. Gorsuch*, 295 F.2d 909, 914 (9th Cir. 1961) (citing an appellate

12   court's "broad powers under 28 U.S.C. § 2106"). In directing entry of partial judgment in this

13   case, the Federal Circuit was not acting pursuant to Rule 54(b), but was instead appropriately

14   exercising its "broad power" under Section 2106 "to dispose of the case by controlling the shape

15   of the judgment or the course of further proceedings in the district court." 15A Charles Alan

16   Wright et al., *Federal Practice & Procedure* § 3901 (2d ed.). And it is the Federal Circuit's

17   mandate that now provides all the authority necessary for this Court to act.

18        Samsung's argument that Rule 54(b) bars this Court from complying with the Federal

19   Circuit's mandate is also foreclosed by *King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560

20   (Fed. Cir. 1987). In that case, the Federal Circuit had previously affirmed the district court's

21   finding that the relevant patent was valid and infringed and had also affirmed the award of

22   damages based on machines, but had vacated and remanded the district court's award of damages

23   based on spare parts. *See id.* at 1561. On remand, the district court entered partial judgment

24   "confirming the original machine damages and ordering execution thereof but reserving for a later

25   determination (on remand from [the Federal Circuit]) the amount, if any, of spare parts damages."

26   _____

     [4] Samsung sought rehearing from the Federal Circuit, but did not raise any challenge to
27   the terms of the panel decision's remand instructions. (Fed. Cir. Case No. 14-1335, Dkt. 159.)
     The Federal Circuit denied rehearing without dissent. (Fed. Cir. Case No. 14-1335, Dkt. 207.)

28

APPLE'S RESPONSE TO SAMSUNG'S OBJECTIONS TO APPLE'S PROPOSED PARTIAL FINAL JUDGMENT
Case No. 11-cv-01846-LHK (PSG)
sf-3572555

6

ADD53

1 *Id.* at 1561-62.

2   The party subject to the partial final judgment posited on appeal that Rule 54(b) "is the

3 only source of authority for finally deciding less than the entire case." *Id.* at 1563. That party

4 further contended, like Samsung here, that the district court's partial final judgment

5 "impermissibly split[] a single claim, contrary to" Rule 54(b). *Id.* The Federal Circuit rejected

6 this argument, explaining that the party's reliance on Rule 54(b) "fail[ed] to acknowledge . . . the

7 posture of this case at the time the [partial] judgment was issued." *Id.* Specifically, the "District

8 Court [in *King Instrument*] ordered execution of the machine sales *after* [the Federal Circuit] had

9 considered and affirmed the District Court's determination on those damages." *Id.* (emphasis in

10 original). The Federal Circuit then held that "Rule 54(b), which concerns the power of the trial

11 court *before* appeal, is not applicable in these circumstances." *Id.* (emphasis in original). The

12 Federal Circuit explained that it had authority under 28 U.S.C. § 2106 "to affirm that portion of

13 the trial court's determination as to machine damages, remand the issue of damages pertaining to

14 spare parts, and *to provide explicitly that final judgment be entered as to the machine sales*." *Id.*

15 (emphasis added). Notably, the first Federal Circuit decision in *King Instrument* had not even

16 included such an explicit instruction requiring entry of partial judgment (as it did in this case).

17 Nonetheless, the Federal Circuit held that the district court properly "order[ed] execution on that

18 portion of the judgment which was final, while reserving the issue of spare parts." *Id.* The

19 Federal Circuit went on to note that "[i]n light of the length of time that has elapsed since these

20 parties first were involved in litigation over the . . . patent, the District Court could certainly

21 decline to insist that [the patentee] wait even longer before receiving compensation for machine

22 damages which are, at this point, both uncontested and absolute." *Id.*

23   The immediate obligation to enter judgment is even more pronounced here than in *King*

24 *Instrument.* As noted above, the Federal Circuit in that case had not expressly directed entry of

25 partial judgment on remand, but the district court nonetheless properly entered it. *See id.* Here,

26 by contrast, the Federal Circuit *has* expressly so directed. *See Apple*, 786 F.3d at 1005.

27 Moreover, here, like in *King Instrument*, the portion of the jury's verdict "not predicated on

28 Apple's trade dress claims," *id.*, is both "uncontested and absolute," *King Instrument*, 814 F.2d at

APPLE'S RESPONSE TO SAMSUNG'S OBJECTIONS TO APPLE'S PROPOSED PARTIAL FINAL JUDGMENT
Case No. 11-cv-01846-LHK (PSG)
sf-3572555       7

**ADD54**

1563. Samsung makes no attempt to demonstrate that the Federal Circuit exceeded its authority under 28 U.S.C. § 2106 in ordering entry of judgment, nor could it appropriately make any such argument in this forum. For all these reasons, Rule 54(b) stands as no obstacle to compliance with the Federal Circuit's mandate.

**III.    APPLE IS SEEKING IMMEDIATE ENTRY OF PARTIAL FINAL JUDGMENT WITHOUT SUPPLEMENTAL DAMAGES OR PREJUDGMENT INTEREST**

The Court has asked Apple to "clarify whether Apple is seeking entry of partial final judgment without supplemental damages and prejudgment interest." (Dkt. 3272 at 1.) The answer is yes. Apple is not seeking immediate entry of judgment on supplemental damages or prejudgment interest at this time. Apple will instead separately move for entry of judgment on those amounts.

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court immediately enter partial final judgment for Apple in the amount of $548,176,477 as the Federal Circuit's mandate requires.

Dated: September 8, 2015                MORRISON & FOERSTER LLP


By:    _/s/ Harold J. McElhinny_
       HAROLD J. MCELHINNY

       Attorneys for Plaintiff
       APPLE INC.

APPLE'S RESPONSE TO SAMSUNG'S OBJECTIONS TO APPLE'S PROPOSED PARTIAL FINAL JUDGMENT
Case No. 11-cv-01846-LHK (PSG)
sf-3572555

**ADD55**

8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC.,

              Plaintiff,

     v.

SAMSUNG ELECTRONICS CO. LTD., et al.,

              Defendants.

Case No.11-CV-01846-LHK

**ORDER TO SUPPLEMENT JOINT CASE MANAGEMENT STATEMENT**

In the parties' joint case management statement filed on September 11, 2015, Samsung did not state a position on Apple's proposal for binding arbitration. The Court ORDERS Samsung to file by noon on September 18, 2015 a statement on whether Samsung will submit to binding arbitration subject to this Court's "Groundhog Rules" on a schedule that would conclude no later than December 31, 2015.

Additionally, Samsung's statement shall indicate whether Samsung intends to pay any partial final judgment to Apple from Samsung's supersedeas bond if this Court enters partial final judgment for Apple. *See* ECF Nos. 3206, 3036.

**IT IS SO ORDERED.**

United States District Court
Northern District of California

1   Dated: September 17, 2015

2                                        _Lucy H. Koh_

                                         _____

3                                        LUCY H. KOH
                                         United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Cal. Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Cal. Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>        Plaintiff,<br><br>        vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S SUPPLEMENTAL CASE MANAGEMENT STATEMENT**<br><br>Date:    Sept. 18, 2015<br>Time:   2:00 p.m.<br>Place:  Courtroom 1, 5th Floor<br>Judge:  Hon. Lucy H. Koh |

**ADD58**

Samsung respectfully submits this response to the Court's September 17, 2015 order.

First, Samsung continues to invoke its right to a jury trial, and thus does not agree to Apple's proposal for binding arbitration.

Second, Samsung objects to the entry of partial final judgment and, were such judgment entered, would appeal to the U.S. Court of Appeals for the Federal Circuit pursuant to 28 U.S.C. § 1295(a)(1), arguing, among other things, that the judgment is not authorized by Fed. R. Civ. P. 54(b). *See, e.g., Unitherm Food Sys. v. Swift-Eckrich*, 546 U.S. 394, 402 n.4 (2006); ECF No. 3269. Because Samsung's existing supersedeas bond (*see* ECF Nos. 3206, 3036) remains in effect, during Samsung's appeal any partial final judgment would remain secured by the bond or any modified bond that the Court may approve, and execution of the judgment therefore would be automatically stayed pursuant to Fed. R. Civ. P. 62(d). If any partial final judgment were affirmed on appeal, Samsung would satisfy that judgment when it becomes executable and then move to release the bond.

DATED:    September 18, 2015

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By    _/s/ Victoria F. Maroulis_
Charles K. Verhoeven
Kathleen M. Sullivan
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC.,

           Plaintiff,

    v.

SAMSUNG ELECTRONICS CO. LTD., et al.,

          Defendants.

Case No. 11-CV-01846-LHK

**PARTIAL FINAL JUDGMENT**

Pursuant to the Federal Circuit's May 18, 2015 Order, judgment is entered against Samsung and in favor of Apple in the amount of $548,176,477 according to the affirmed damages awards for the following 18 products: the Captivate, the Continuum, the Droid Charge, the Epic 4G, the Exhibit 4G, the Galaxy Prevail, the Galaxy S II (AT&T), the Galaxy S II (Epic 4G), the Galaxy S II (Skyrocket), the Galaxy S II (T-Mobile), the Galaxy Tab, the Galaxy Tab 10.1 (WiFi), the Gem, the Indulge, the Infuse 4G, the Nexus S 4G, the Replenish, and the Transform.

**IT IS SO ORDERED.**

1    Dated: September 18, 2015

2                                        *Lucy H. Koh*

3                                        LUCY H. KOH
                                         United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Case No. 11-CV-01846-LHK
PARTIAL FINAL JUDGMENT

**ADD61**

1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3        SAN JOSE DIVISION

4

5

6   APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
    CORPORATION,                  )
                                  )  SAN JOSE, CALIFORNIA
7                  PLAINTIFF,     )
                                  )  SEPTEMBER 18, 2015
8            VS.                  )
                                  )  PAGES 1-75
9   SAMSUNG ELECTRONICS CO., LTD.,)
    A KOREAN BUSINESS ENTITY;     )
10  SAMSUNG ELECTRONICS AMERICA,  )
    INC., A NEW YORK CORPORATION; )
11  SAMSUNG TELECOMMUNICATIONS    )
    AMERICA, LLC, A DELAWARE      )
12  LIMITED LIABILITY COMPANY,    )
                                  )
13                  DEFENDANTS.   )
    _____ )

14

15

16        TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17        UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22  OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
23

24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

1

2    A P P E A R A N C E S:

3    FOR PLAINTIFF          MORRISON & FOERSTER
     APPLE:                 BY:  HAROLD J. MCELHINNY
4                                 RACHEL KREVANS
                            425 MARKET STREET
5                           SAN FRANCISCO, CALIFORNIA  94105

6                           BY:  ERIK J. OLSON
                            755 PAGE MILL ROAD
7                           PALO ALTO, CALIFORNIA  94304

8                           WILMER, CUTLER, PICKERING,
                            HALE AND DORR
9                           BY:  WILLIAM F. LEE
                                 LAUREN B. FLETCHER
10                          60 STATE STREET
                            BOSTON, MASSACHUSETTS  02109
11
                            BY:  MARK D. SELWYN
12                          950 PAGE MILL ROAD
                            PALO ALTO, CALIFORNIA  94304
13

14   FOR DEFENDANT          QUINN, EMANUEL, URQUHART & SULLIVAN
     SAMSUNG:               BY:  VICTORIA F. MAROULIS
15                          555 TWIN DOLPHIN DRIVE
                            SUITE 560
16                          REDWOOD SHORES, CALIFORNIA  94065

17                          BY:  CARL G. ANDERSON
                            50 CALIFORNIA STREET, 22ND FLOOR
18                          SAN FRANCISCO, CALIFORNIA  94111

19

20

21

22

23

24

25

**ADD63**

```
1    SAN JOSE, CALIFORNIA                    SEPTEMBER 18, 2015

2                    P R O C E E D I N G S

3        (COURT CONVENED AT 2:13 P.M.)

4            THE COURT:  GOOD AFTERNOON AND WELCOME.  SORRY WE'RE

5    STARTING LATE.

6            THE CLERK:  CALLING CASE 11-CV-01846, APPLE,

7    INCORPORATED VERSUS SAMSUNG ELECTRONICS COMPANY.

8        IF THE PARTIES WOULD PLEASE STATE THEIR APPEARANCES FOR

9    THE RECORD.

10           MR. MCELHINNY:  GOOD AFTERNOON, YOUR HONOR.

11   HAROLD MCELHINNY AND RACHEL KREVANS FOR THE PLAINTIFF, APPLE.

12           MR. LEE:  GOOD AFTERNOON, YOUR HONOR.  BILL LEE AND

13   MARK SELWYN AND LAUREN FLETCHER FROM WILMER, HALE FOR APPLE.

14           MS. MAROULIS:  GOOD AFTERNOON, YOUR HONOR.

15   VICTORIA MAROULIS AND CARL ANDERSON FOR SAMSUNG.

16       AND BILL PRICE ISN'T HERE.  HE'S IN TRIAL AND HE

17   APOLOGIZES.

18           THE COURT:  ALL RIGHT.  GOOD AFTERNOON AND WELCOME TO

19   EVERYONE.

20       ALL RIGHT.  THE TIME IS NOW, WHAT, 2:13.  LET'S TRY TO GO

21   THROUGH THIS FAIRLY QUICKLY.

22       LET ME FIRST START OFF WITH THE ALTERNATIVE DISPUTE

23   RESOLUTION ISSUE.  IT SEEMS THAT BOTH PARTIES WOULD BE OPEN TO

24   A SETTLEMENT CONFERENCE WITH JUDGE SPERO.  DOES THAT SOUND

25   CORRECT?
```

1        MS. MAROULIS:  YES, YOUR HONOR.

2        THE COURT:  AND WITH A DEADLINE OF NOVEMBER 15 OF

3   2015.

4        MS. MAROULIS:  YES.

5        MR. MCELHINNY:  WE WOULD -- WE AGREE TO THAT, YOUR

6   HONOR.  WE'D LIKE TO POINT OUT, WE DON'T THINK IT'S A VALUABLE

7   USE OF OUR TIME.  I MEAN, WITH THE RESPONSE THAT WE GOT TODAY,

8   WITH THE FACT THAT THESE COMPANIES KNOW EACH OTHER QUITE

9   WELL --

10       THE COURT:  OKAY.

11       MR. MCELHINNY:  THIS WAS NOT AN APPROACH MADE TO US.

12  IT'S A RESPONSE TO YOUR -- YOU KNOW, YOUR FORM.

13     SO THE ANSWER IS OF COURSE WE'LL DO THAT, BUT WE DON'T --

14  WE HAVE NO REASON TO THINK THAT THIS WOULD BE ANY MORE

15  BENEFICIAL THAN ANY OF THE OTHER DISCUSSIONS THAT WE'VE HAD.

16       THE COURT:  WELL, IF YOU DON'T WANT TO DO IT, I'M NOT

17  GOING TO ORDER IT BECAUSE I DON'T WANT TO WASTE YOUR TIME,

18  EITHER.

19       MR. MCELHINNY:  LET ME --

20       THE COURT:  I DIDN'T REALIZE THAT YOU HAD SORT OF

21  PLACED THAT RELUCTANTLY INTO YOUR --

22       MR. MCELHINNY:  LET ME PUT IT THIS WAY.

23       THE COURT:  I WON'T ORDER IT IF YOU DON'T WANT TO DO

24  IT.

25       MR. MCELHINNY:  LET ME PUT IT THIS WAY:  APPLE WOULD

1    VERY MUCH LIKE TO RESOLVE THIS CASE.

2           THE COURT:  YES.

3           MR. MCELHINNY:  IF THERE'S AN APPROACH DIRECTLY FROM

4    SAMSUNG WITH AN INTEREST TO DO THAT, WE WILL RESPOND TO THAT.

5           BUT IN THE ABSENCE OF THAT, WE JUST -- WE DON'T THINK IT'S

6    A GOOD USE OF JUDGE SPERO'S TIME OR OUR TIME, FRANKLY.

7           THE COURT:  SO WHAT WOULD YOU NEED TO MAKE IT

8    WORTHWHILE?  YOU WOULD WANT A PROPOSAL?

9           MR. MCELHINNY:  WE WOULD LIKE --

10          THE COURT:  OR AN OFFER?

11          MR. MCELHINNY:  OR ONE OF OUR CALLS RETURNED, OR ANY

12   KIND OF A CONTACT AT A LEVEL THAT INDICATED A SINCERE INTEREST

13   IN RESOLVING THE CASE.

14          MS. MAROULIS:  YOUR HONOR --

15          THE COURT:  WOULD YOU LIKE TO RESPOND?

16          MS. MAROULIS:  WE STATED ON THE RECORD THAT WE'RE

17   WILLING, SAMSUNG IS WILLING TO ENGAGE IN MEDIATION.  WE WOULD

18   PREFER A PRIVATE MEDIATOR BECAUSE WE DON'T WANT TO PLACE

19   FURTHER BURDEN ON THE COURT.

20          BUT WE WOULD ALSO GLADLY SIT DOWN WITH JUDGE SPERO.

21          SO I'M NOT SURE WHAT ELSE IS REQUIRED TO SIGNAL SAMSUNG'S

22   WILLINGNESS TO SIT DOWN FOR MEDIATION.

23          MR. MCELHINNY:  I'M HAPPY WITH YOUR SUGGESTION, YOUR

24   HONOR, THAT IF THE PARTIES TALK AND THEY COME TO AN AGREEMENT,

25   THAT IT WOULD MAKE SENSE THAT WE DO IT AGAIN AND WE WILL DO

1    THAT.

2        BUT IN THE ABSENCE OF THE MEANINGFUL, DIRECT COMPANY

3    CONTACTS, I -- I JUST DON'T THINK IT'S LIKELY TO GO ANYPLACE

4    GIVEN EVERYTHING ELSE THAT WE'RE SEEING IN --

5            THE COURT:  WELL, WOULD IT MAKE SENSE, THEN, TO PUT A

6    DEADLINE BEFORE THE NOVEMBER 15TH DEADLINE --

7            MR. MCELHINNY:  IT DOES, YOUR HONOR.

8            THE COURT:  -- AND HAVING A DIRECT COMMUNICATION?

9        AND THE IF PARTIES ARE WILLING TO DO THAT, THEN IT MAY NOT

10   BE WORTHWHILE TO --

11           MR. MCELHINNY:  THAT WOULD BE A PERFECTLY GOOD IDEA,

12   YOUR HONOR.

13           THE COURT:  OKAY.

14           MR. MCELHINNY:  WHAT WE DON'T WANT IS TO GET INTO A

15   PROCESS THAT ENDS UP MOVING OUT THE DATES THAT YOUR HONOR IS

16   GOING TO GIVE US.  WE DON'T WANT TO BUILD DELAY INTO THIS

17   PROCESS.

18           THE COURT:  OH, NO.  I'M GOING TO SET MY DATES

19   REGARDLESS.

20           MR. MCELHINNY:  I THOUGHT SO.

21           THE COURT:  IF YOU RESOLVE IT, THEN I WILL VACATE

22   EVERYTHING.  BUT IF YOU DON'T -- I MEAN, WE'RE STILL GOING TO

23   SET A CASE THROUGH TRIAL TODAY.

24           MR. MCELHINNY:  THANK YOU, YOUR HONOR.

25           THE COURT:  OKAY.  ALL RIGHT.  SO HOW QUICKLY -- AND

1    LET ME HEAR YOUR SUGGESTIONS.  YOU WANT ME TO ORDER THAT -- I

2    MEAN, I'VE TRIED THIS BEFORE, ORDERING THE CEO'S TO MEET.

3            MR. MCELHINNY:  NO.  I -- I MEAN, I'M TRYING TO BE AS

4    FRANK WITH THE COURT AS I POSSIBLY CAN.

5            THE COURT:  WHAT WOULD BE HELPFUL?  MAKE A

6    SUGGESTION.  WHAT SHOULD I ORDER PRIOR TO THE NOVEMBER 15TH

7    SETTLEMENT CONFERENCE?

8            MR. MCELHINNY:  THAT THE PARTIES REPORT BACK TO YOU

9    WHETHER OR NOT THEY HAVE AGREED TO ENTER INTO A MEDIATION.

10           THE COURT:  ALL RIGHT.  AND HOW LONG WILL YOU NEED?

11   HOW MUCH TIME WILL YOU NEED?

12           MR. MCELHINNY:  SEVEN DAYS.

13           THE COURT:  OKAY.  SO TODAY IS THE 18TH OF SEPTEMBER,

14   SO BY SEPTEMBER 25TH --

15           MS. MAROULIS:  YOUR HONOR, MAY WE HAVE TWO WEEKS,

16   JUST OUT OF AN ABUNDANCE OF CAUTION?  BECAUSE I'LL NEED TO TALK

17   TO PEOPLE AND MAKE SURE THEY'RE AVAILABLE.  I THINK MAYBE SEVEN

18   DAYS IS A LITTLE QUICK.

19           THE COURT:  WELL, MY ONLY CONCERN IS WE'RE RUNNING UP

20   AGAINST NOVEMBER 15TH AS THE DEADLINE, SO --

21           MR. MCELHINNY:  ALL IT REQUIRES IS SOMEBODY WITH

22   DECISION MAKING AUTHORITY AT SAMSUNG TO DECIDE THAT THEY REALLY

23   WANT TO SETTLE AND CALL UP AND HAVE A SUBSTANTIVE CONVERSATION

24   AND WE WOULD BE OFF TO THE RACES HERE.  BUT THAT HASN'T

25   HAPPENED.

 1        AND IT SHOULDN'T TAKE TWO WEEKS FOR THAT TO HAPPEN IF

 2   THAT'S WHAT THEY WANT.

 3             THE COURT:  ALL RIGHT.  SO HELP ME HERE WITH THE

 4   EXACT VERBIAGE.  SO WE'RE GOING TO ORDER THAT BY -- I'LL JUST

 5   MAKE IT MONDAY -- I'M SORRY.  I'M LOOKING AT THE WRONG DATES

 6   HERE.

 7        MONDAY, SEPTEMBER 28TH.

 8             MR. MCELHINNY:  THE PARTIES REPORT BACK TO THE COURT

 9   WHETHER OR NOT THEY HAVE AGREED TO ENTER INTO A MEDIATION

10   PROCESS THAT WOULD BE CONCLUDED ON OR ABOUT NOVEMBER 15TH.

11             THE COURT:  THE PARTIES REPORT BACK TO THE COURT

12   WHETHER THE PARTIES HAVE AGREED --

13             MR. MCELHINNY:  WHETHER OR NOT THE PARTIES HAVE

14   AGREED.

15             THE COURT:  THE PARTIES HAVE AGREED TO A -- AND DO

16   YOU HAVE A PREFERENCE BETWEEN A PRIVATE MEDIATION VERSUS A

17   SETTLEMENT CONFERENCE?

18             MR. MCELHINNY:  MY OWN VIEW IS THAT THE MOST -- THE

19   CLOSEST WE EVER GOT TO A SUBSTANTIVE CONFERENCE WAS BEFORE

20   JUDGE SPERO.

21             THE COURT:  ALL RIGHT.  WELL, LET ME ORDER THAT.

22        THE PARTIES REPORT BACK TO THE COURT WHETHER OR NOT THE

23   PARTIES HAVE AGREED TO ENGAGE IN A SETTLEMENT CONFERENCE WITH

24   MAGISTRATE JUDGE JOSEPH SPERO WITH A DEADLINE OF NOVEMBER 15TH,

25   2015.

1    AND I HAVE PRE-CLEARED WITH HIM THAT HE IS ABLE TO DO IT

2    BY THE 15TH OF NOVEMBER IF THE PARTIES ARE INTERESTED.  OKAY?

3            MR. MCELHINNY:  HE HAS A BIG INVESTMENT.  HE'S DONE A

4    LOT OF WORK HERE.

5            THE COURT:  SO HE IS AVAILABLE, SO IT'S REALLY UP TO

6    THE PARTIES IF YOU WANT TO DO IT.

7        NOW, LET ME GET -- CAN I GET A SENSE OF -- WE'VE HAD FOUR

8    FEDERAL CIRCUIT ORDERS NOW IN THIS CASE.  WE'VE ALREADY HAD TWO

9    TRIALS.  IS THERE ANOTHER EITHER DATA POINT OR GUIDANCE FROM

10   THE FEDERAL CIRCUIT THAT THE PARTIES NEED BEFORE RESOLVING?

11       I'M JUST TRYING TO GET SOME UNDERSTANDING OF WHAT -- I

12   MEAN, YOU'VE SETTLED EVERYTHING ELSE WORLDWIDE.  YOU'VE EVEN

13   SETTLED EVERYTHING ELSE IN THE UNITED STATES, OTHER THAN THE

14   TWO CASES HERE.

15       SO WHAT MORE DO YOU THINK YOU NEED?  DO YOU NEED ANY MORE

16   INFORMATION?  IS THERE -- YOU KNOW, IS THERE SOMETHING IN THE

17   HORIZON THAT WILL BE COMING THAT MIGHT BE HELPFUL TO MAKING A

18   DECISION OR ASSESSING YOUR POSITIONS AND NEGOTIATIONS?  OR IS

19   THERE ANY OTHER DATA POINT OR --

20           MR. MCELHINNY:  THERE WILL BE -- THERE IS GOING TO BE

21   AN APPEAL ON THE MERITS OF THE 630 CASE.

22           THE COURT:  YES.  IS THAT SET -- THAT'S NOT SET FOR

23   ORAL ARGUMENT YET?

24           MR. MCELHINNY:  IT'S NOT SET, BUT IT'S VERY CLOSE.

25           THE COURT:  DO YOU THINK IT'LL BE SET IN DECEMBER?

```
1                  MR. LEE:  I THINK IT'LL LIKELY BE THE FIRST WEEK IN

2      NOVEMBER.

3                  THE COURT:  OH, THE FIRST WEEK OF NOVEMBER?

4                  MR. LEE:  YES.

5                  THE COURT:  OKAY.  SO IN 630, YOU THINK THE HEARING

6      WILL BE THE FIRST WEEK OF NOVEMBER?

7                  MR. LEE:  YES.

8                  THE COURT:  OKAY.  SO THE ORDERS HAVE BEEN COMING OUT

9      ABOUT SIX TO SEVEN MONTHS AFTER THE HEARING DATE, AT LEAST THAT

10     SEEMS TO BE THE PATTERN IN THE SIX ORDERS WE'VE GOTTEN SO FAR

11     FROM THE CIRCUIT.

12          SO DO YOU THINK BY MAYBE NEXT APRIL OR MAY, APRIL TO JUNE

13     YOU MIGHT HAVE A RULING IN THAT CASE?

14                 MR. LEE:  I THINK THAT'S REASONABLE, YOUR HONOR.

15                 MS. MAROULIS:  YOUR HONOR, AS WE STATED ELSEWHERE IN

16     THE RECORD, SAMSUNG INTENDS TO SEEK SUPREME COURT REVIEW OF THE

17     ISSUES THAT WERE ADJUDICATED ALREADY BY THE FEDERAL CIRCUIT.

18                 THE COURT:  OKAY.  AND YOU'LL GET A DECISION ON THAT

19     PETITION BY, WHAT, NOVEMBER?

20                 MS. MAROULIS:  IT'S DUE IN NOVEMBER, SO THE DECISION

21     IS PROBABLY GOING TO BE EARLY NEXT YEAR OR MID NEXT YEAR.  I

22     DON'T KNOW THE EXACT DATE FOR A DECISION POINT ON THAT.

23                 THE COURT:  OKAY.  SO SOMETIME IN 2016.

24          AND THEN YOU'RE ALSO GOING TO SEEK EN BANC REVIEW OF

25     YESTERDAY'S PERMANENT INJUNCTION ORDER?
```

1        MS. MAROULIS:  THAT'S CORRECT, YOUR HONOR.  THAT ONE

2    IS DUE ON NOVEMBER 7TH -- I'M SORRY -- ON OCTOBER 17, AND BASED

3    ON THE SCHEDULES AND THE PRIOR EN BANCS, IT MIGHT BE BACK

4    EITHER AT THE END OF THIS YEAR TO THIS COURT OR SOMETIME LATER

5    NEXT YEAR DEPENDING ON WHETHER THE EN BANC IS GRANTED OR

6    DENIED.

7        THE COURT:  SO I'M JUST THINKING, WITH THE MERITS

8    ORDER IN THIS CASE, YOU PETITIONED IN, WHAT, JUNE?  IS THAT

9    CORRECT?

10        MS. MAROULIS:  WITH EN BANC?

11        THE COURT:  YES.

12        MS. MAROULIS:  YES, YOUR HONOR.  WE FILED A PETITION

13    IN MID-JUNE AND IT CAME BACK AUGUST 25 TO THIS COURT.

14        THE COURT:  RIGHT.

15        MS. MAROULIS:  SO --

16        THE COURT:  WELL, WE DIDN'T GET THE MANDATE UNTIL THE

17    1ST OF SEPTEMBER.  SO WE CAN ASSUME ABOUT TWO AND A HALF

18    MONTHS?

19        MS. MAROULIS:  THAT'S ABOUT RIGHT, YOUR HONOR.

20        THE COURT:  OKAY.  IF THERE'S NOT GOING TO BE A

21    REVIEW.

22        MS. MAROULIS:  YEAH.  AND IF THERE IS A REVIEW,

23    IT'S --

24        THE COURT:  PROBABLY MID-JANUARY?

25        MS. MAROULIS:  I WOULD SAY APRIL OF NEXT YEAR,

1    APPROXIMATELY.

2            THE COURT:  WAIT.  IF THERE IS REVIEW?

3            MS. MAROULIS:  YEAH.

4            THE COURT:  THAT'S WHEN WE SHOULD EXPECT A DECISION?

5    OR WHAT IS APRIL OF NEXT YEAR?

6            MS. MAROULIS:  THAT'S WHEN THE DECISION OF EN BANC

7    PANEL WOULD COME OUT IF THE EN BANC IS GRANTED.

8            THE COURT:  OH, OKAY.  ALL RIGHT.

9        AND IF EN BANC IS DENIED, WE SHOULD KNOW THAT BY EARLY

10    JANUARY.

11            MS. MAROULIS:  MAYBE EVEN BEFORE, PROBABLY AT THE END

12    OF DECEMBER.

13            THE COURT:  OH, OKAY.  AND YOU'RE SAYING THAT YOU

14    NEED THESE ADDITIONAL PIECES OF INFORMATION OR THE GUIDANCE

15    FROM THE CIRCUIT?  IS THAT YOUR SENSE?

16            MS. MAROULIS:  I THINK THE PARTIES WOULD JUST EXPLAIN

17    TO THE COURT WHAT FURTHER APPELLATE PROCEEDINGS THERE ARE FOR

18    THE COURT'S BENEFIT.

19            THE COURT:  OKAY.  BUT HOW MUCH DO YOU NEED THIS

20    ADDITIONAL GUIDANCE TO REACH A RESOLUTION?

21            MR. MCELHINNY:  I MEAN, OUR VIEW IS WE DON'T, YOUR

22    HONOR.  OUR VIEW IS THE -- TO THE EXTENT THAT THERE WAS EVER A

23    QUESTION ABOUT WHAT THE LAW IS OR WHAT -- EVEN NOW WHAT THE

24    REMEDIES ARE THAT ARE AVAILABLE, ALL OF THAT IS PRETTY MUCH

25    DETERMINED AND IT'S -- IT'S JUST DOLLARS NOW AND WHETHER OR NOT

1   WE'RE GOING TO BE ABLE TO COLLECT ON THESE JUDGMENTS.  THAT'S

2   OUR VIEW.

3        BUT CLEARLY THAT'S NOT A SHARED VIEW.

4        MS. MAROULIS:  YOUR HONOR, WE OBVIOUSLY WANT TO SEEK

5   GUIDANCE FROM THE SUPREME COURT.

6        BUT THERE'S ONE MORE THING THAT I MEANT TO MENTION, WHICH

7   IS, AS ONE OF OUR MOTIONS SUGGESTS TO THE COURT, THE '915

8   PATENT IS FINALLY DECIDED ON BY PTAB, BUT APPLE INDICATED THAT

9   THEY WOULD EVENTUALLY APPEAL TO THE FEDERAL CIRCUIT.  SO THAT'S

10  ANOTHER POINT THAT I THINK WOULD BE HELPFUL IN DISCUSSIONS.

11       THE COURT:  NOW, THE REHEARING REQUEST IS STILL

12  PENDING; IS THAT RIGHT?

13       MS. MAROULIS:  THAT'S CORRECT.  THEY FILED IS IN

14  FEBRUARY, SO IT'S BEEN PENDING FOR MORE THAN SIX MONTHS.

15       THE COURT:  OKAY.

16       MS. MAROULIS:  AND JUST BASED ON STATISTICS, IT

17  SHOULD BE DECIDED AT ANY MOMENT SOON.  IT'S HARD TO PREDICT.

18       THE COURT:  OKAY.  ALL RIGHT.

19       OKAY.  WELL, I'D LIKE TO -- LET ME JUST ASK A QUESTION.  I

20  AM GOING TO -- I'M GOING TO RESERVE THE ISSUE OF SUPPLEMENTAL

21  DAMAGES UNTIL AFTER THE RETRIAL ON DAMAGES.

22       I HAD ONE QUESTION ON PRE-JUDGMENT INTEREST.  THE

23  PRE-JUDGMENT INTEREST DOES NOT SEEM TO IMPLICATE ANY DESIGN

24  AROUNDS AS A SUPPLEMENTAL DAMAGES QUESTION DOES, SO ARE YOU

25  ASKING -- I KNOW YOU HAVE SAID YOU'RE FINE WITH JUST GETTING A

1    FINAL JUDGMENT THAT DOESN'T INCLUDE SUPPLEMENTAL DAMAGES OR

2    PRE-JUDGMENT INTEREST FOR THE PRODUCTS FOR WHICH THE DAMAGES

3    WAS AFFIRMED BY THE FEDERAL CIRCUIT.

4        BUT IF THERE IS NO DESIGN AROUND ISSUE WITH REGARD TO

5    PRE-JUDGMENT INTEREST, WHY SHOULDN'T THAT BE ORDERED NOW?  WHY

6    AREN'T YOU ASKING FOR IT NOW?

7            MR. MCELHINNY:  THAT'S -- THE REASON WE WEREN'T

8    ASKING FOR IT NOW -- THE REASON WE'RE NOT IS BECAUSE WE WERE

9    TRYING TO GET CLEAN ORDERS THAT --

10           THE COURT:  OKAY.

11           MR. MCELHINNY:  -- WILL BE ENFORCEABLE.

12           THE COURT:  I SEE.

13           MR. MCELHINNY:  THE MANDATE THAT COMES RIGHT NOW IS

14   BACK FROM THE FEDERAL CIRCUIT.  IT'S ON AN AMOUNT THAT IS NOT

15   CONTESTED.

16       THE PRE-JUDGMENT INTEREST, THEORETICALLY -- LET ME TELL

17   YOU WHAT OUR POSITION IS.  OUR POSITION IS YOUR HONOR HAS

18   ALREADY SET FORTH HOW YOU'RE GOING TO DETERMINE THE

19   PRE-JUDGMENT INTEREST AND YOU CAN DO THAT ANY DAY NOW.

20           THE COURT:  UM-HUM.

21           MR. MCELHINNY:  AND THERE'S NOTHING HOLDING YOU BACK

22   FROM DOING THAT NOW.

23           THE COURT:  OKAY.

24           MR. MCELHINNY:  AND WE'RE FINE IF YOU DO IT.

25       WE -- THE REASON WE DIDN'T ASK FOR IT IS BECAUSE WE WERE

1    FOLLOWING THE DIVISION THAT YOUR HONOR HAD SET OUT PREVIOUSLY

2    AND WE OBVIOUSLY HAD A -- THE WORD "IMMEDIATE" CAUGHT OUR

3    ATTENTION AND WE HAVE BEEN FOCUSSED ON THAT.

4            THE COURT:  OKAY.

5            MR. MCELHINNY:  AND SO THAT'S WHY WE WERE LOOKING FOR

6    A CLEAN ORDER ON THAT.

7            THE COURT:  ALL RIGHT.  AND I WOULD ASSUME THAT YOU

8    WOULD, SOME DAY, IF THERE ARE ANY SUPPLEMENTAL DAMAGES AWARDED,

9    YOU WOULD WANT PRE-JUDGMENT INTEREST ON THE SUPPLEMENTAL

10   DAMAGES.

11           MR. MCELHINNY:  THAT'S CORRECT.

12           THE COURT:  OKAY.

13           MR. MCELHINNY:  BUT, AGAIN, THOSE ARE CALCULATIONS.

14           THE COURT:  ALL RIGHT.  WELL, I -- THAT IS A

15   SATISFACTORY REASON ENOUGH FOR ME TO NOT ORDER PRE-JUDGMENT

16   INTEREST AT THIS TIME, TO NOT HAVE ALL OF THE ISSUES COMPLETELY

17   AND UNNECESSARILY ENTANGLED WITH ADDITIONAL APPEALS, SO I'M

18   GOING TO RESERVE THE ISSUE OF SUPPLEMENTAL DAMAGES AND

19   PRE-JUDGMENT INTEREST UNTIL AFTER THE RETRIAL ON DAMAGES.

20       UNFORTUNATELY, WE PROBABLY SHOULD WAIT UNTIL EVEN AFTER

21   THE POST-TRIAL MOTIONS ON THAT QUESTION.

22       BUT LET ME GO AHEAD AND GIVE YOU THE RULINGS ON THE TWO

23   PENDING MOTIONS.  OKAY?

24       SO THE FIRST MOTION -- I DID REVIEW EVERYTHING THAT WAS

25   SUBMITTED BY THE PARTIES -- IS SAMSUNG'S MOTION FOR JUDGMENT AS

1    A MATTER OF LAW ON THE INVALIDITY OF THE '91 PATENT -- '915

2    PATENT, EXCUSE ME -- AND FOR A STAY OF THE PROCEEDINGS.

3            SAMSUNG'S REQUEST IS BASED ON, AS WE'VE ALREADY DISCUSSED,

4    THE PTO RE-EXAMINATION PROCEEDINGS, THE PTAB'S FINDING THUS

5    FAR.

6            I'D LIKE TO JUST SORT OF BRIEFLY -- SINCE THIS IS GOING TO

7    BE MY ORDER, I'M NOT GOING TO ISSUE A WRITTEN ONE, TODAY'S

8    TRANSCRIPT -- YOU'LL HAVE TO ORDER IT -- WILL BE THE ORDER IF

9    YOU WANT TO APPEAL THIS, AS WELL AS MY ORDER ON THE ENTRY OF

10   PARTIAL FINAL JUDGMENT.

11           SO I'M GOING TO GO AHEAD AND SET FORTH THE BACKGROUND AND

12   PROCEDURAL --

13           MS. MAROULIS:  YOUR HONOR, MAY I JUST ASK, WILL

14   COUNSEL BE HEARD, OR --

15           THE COURT:  NO.

16           MS. MAROULIS:  OKAY.  THANK YOU.

17           THE COURT:  NO.  NO.  UNDER CIVIL LOCAL RULE 7-1(B),

18   I AM FINDING THAT NO HEARING IS NECESSARY AND ONE WAS NOT

19   SCHEDULED ON THESE MOTIONS.  IT HAS BEEN FULLY BRIEFED AND THIS

20   ISSUE OF A STAY, BASED ON THE '915 RE-EXAM, HAS ACTUALLY BEEN

21   LITIGATED AND PREVIOUSLY RULED UPON.

22           SO SINCE THIS IS GOING TO BE THE ORDER FOR ANY PURPOSES OF

23   APPEAL, LET ME GO AHEAD AND SET FORTH THE PROCEDURAL BACKGROUND

24   EVEN THOUGH THE PARTIES ARE CERTAINLY AWARE OF THIS.

25           SO THIS INSTANT CASE FIRST WENT TO TRIAL IN JULY OF 2012,

1    AND AT THAT TRIAL, THE JURY UPHELD THE VALIDITY OF THE '915,

2    FOUND THAT SAMSUNG HAD INFRINGED THE '915, AND AWARDED DAMAGES

3    TO APPLE.

4         IN JANUARY 2013, THIS COURT HELD THAT THE JURY REASONABLY

5    FOUND THAT THE '915 PATENT WAS VALID AND INFRINGED AND DENIED

6    SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO THE

7    INVALIDITY OF THE '915 PATENT.

8         IN MARCH OF 2013, THIS COURT ISSUED AN ORDER GRANTING A

9    PARTIAL RETRIAL ON DAMAGES.

10        THE SECOND TRIAL TOOK PLACE IN NOVEMBER OF 2013 AND THE

11   JURY AWARDED A NEW DAMAGES AWARD FOR APPLE.

12        IN MARCH 2014, THE COURT ENTERED FINAL JUDGMENT IN FAVOR

13   OF APPLE.  SAMSUNG APPEALED TO THE FEDERAL CIRCUIT.

14        ON MAY 18, 2015, THE FEDERAL CIRCUIT AFFIRMED THE VALIDITY

15   OF THE '915 PATENT, INCLUDING CLAIM 8, AND THE FINDING OF

16   INFRINGEMENT.  THE FEDERAL CIRCUIT HELD THAT THE '915 PATENT

17   WAS NOT ANTICIPATED BY THE NOMURA PATENT APPLICATION.  THE

18   FEDERAL CIRCUIT REMANDED FOR A RETRIAL ON DAMAGES FOR FIVE

19   PRODUCTS ONLY.

20        SAMSUNG PETITIONED THE FEDERAL CIRCUIT FOR REHEARING EN

21   BANC, WHICH THE FEDERAL CIRCUIT DENIED ON AUGUST 13, 2015.

22        SAMSUNG THEN REQUESTED THAT THE FEDERAL CIRCUIT STAY THE

23   MANDATE, WHICH THE FEDERAL CIRCUIT DENIED.  THE FEDERAL CIRCUIT

24   ISSUED THE MANDATE ON AUGUST 25, 2015, AND THIS COURT RECEIVED

25   THE MANDATE ON SEPTEMBER 1 OF 2015.

1      WHILE THIS CASE HAS BEEN ONGOING, THE '915 PATENT HAS BEEN

2   IN RE-EXAMINATION PROCEEDINGS WITH THE PATENT AND TRADEMARK

3   OFFICE.

4      ON MAY 30TH, 2012, AN ANONYMOUS THIRD PARTY REQUESTED EX

5   PARTE RE-EXAMINATION OF THE '915 PATENT.

6      ON DECEMBER 12TH -- EXCUSE ME -- DECEMBER 19TH OF 2012,

7   THE PTO EXAMINER ISSUED A FIRST OFFICE ACTION REJECTING ALL

8   CLAIMS OF THE '915 PATENT.

9      THE EXAMINER REJECTED CLAIM 8 AS ANTICIPATED BY THE HILLIS

10   PATENT AND OBVIOUS OVER NOMURA IN LIGHT OF RUBINE.

11      AND I'LL SPELL THAT FOR MS. SHORTRIDGE.  THAT'S

12   R-U-B-I-N-E, AND THE HILLIS IS H-I-L-L-I-S, NOMURA,

13   N-O-M-U-R-A.

14      ON JULY 26TH, 2013, THE PTO EXAMINER ISSUED A FINAL

15   REJECTION OF ALL CLAIMS OF THE '915 PATENT AS ANTICIPATED OR

16   OBVIOUS.

17      ON OCTOBER 28TH, 2013, APPLE FILED A RESPONSE TO THE

18   EXAMINER'S FINAL REJECTION, AND ON NOVEMBER 20TH, 2013, THE

19   EXAMINER ISSUED AN ADVISORY ACTION MAINTAINING HIS REJECTION OF

20   THE CLAIMS OF THE '915 PATENT.

21      APPLE THEN FILED A NOTICE OF APPEAL WITH THE PATENT TRIAL

22   AND APPEAL BOARD, REFERRED TO AS THE PTAB.  AFTER BRIEFING AND

23   A HEARING, THE PTAB ISSUED A FINAL DECISION AFFIRMING THE

24   REJECTION OF ALL CLAIMS OF THE '915 PATENT ON DECEMBER 9, 2014.

25      APPLE FILED A REQUEST FOR A REHEARING ON FEBRUARY 9, 2015.

1    THAT REQUEST IS CURRENTLY PENDING BEFORE THE PTAB.

2         ASSUMING THE PTAB DENIES APPLE'S REQUEST FOR REHEARING,

3    APPLE MAY APPEAL THE ADVERSE PTAB DECISION TO THE FEDERAL

4    CIRCUIT.

5         THE PTO CANNOT ISSUE A CERTIFICATE CANCELLING ANY CLAIM OF

6    THE '915 PATENT DEEMED TO BE UNPATENTABLE UNTIL THE TIME FOR

7    APPEAL TO THE FEDERAL CIRCUIT HAS EXPIRED OR ANY APPEAL

8    PROCEEDING BEFORE THE FEDERAL CIRCUIT HAS TERMINATED, AND

9    THAT'S PURSUANT TO 35 UNITED STATES CODE SECTION 307(A).

10        IN THE INSTANT MOTION, SAMSUNG ASKS THE COURT TO APPLY

11   COLLATERAL ESTOPPEL TO THE PTAB'S FINAL DECISION REJECTING ALL

12   CLAIMS OF THE '915 PATENT AND ENTER A JUDGMENT OF INVALIDITY OF

13   THE '915 PATENT ON THAT BASIS.

14        IN ORDER FOR COLLATERAL ESTOPPEL TO APPLY, THE PTAB'S

15   DECISION MUST QUALIFY AS A FINAL JUDGMENT ON THE MERITS.  SEE

16   E.DIGITAL CORP. VERSUS FUTUREWEI, F-U-T-U-R-E-W-E-I T-E-C-H,

17   INC., 772 F.3D 723, FEDERAL CIRCUIT 2014.

18        AS EVEN THE CASES CITED BY SAMSUNG RECOGNIZE, A

19   RE-EXAMINATION DECISION INVALIDING A PATENT IS NOT FINAL UNTIL

20   THE CLAIMS OF THE PATENT ARE CANCELLED BY THE PTO.  FRESENIUS

21   USA, INCORPORATED VERSUS BAXTER INTERNATIONAL, INCORPORATED,

22   721 F.3D 1330 AT 1339 THROUGH 40, FEDERAL CIRCUIT, 2013; SLIP

23   TRACK SYSTEMS INCORPORATED VERSUS METAL LITE, INCORPORATED,

24   159 F.3D 1337 AT 1340, FEDERAL CIRCUIT, 1998.

25        PURSUANT TO 35 U.S.C. SECTION 307(A), THE PTO CANNOT ISSUE

1    A CERTIFICATE CANCELLING THE CLAIMS OF THE '915 PATENT UNTIL

2    AFTER THE TIME FOR APPEAL HAS EXPIRED OR ANY APPEAL PROCEEDING

3    HAS TERMINATED.

4         THE TIME FOR APPLE TO APPEAL THE PTAB'S DECISION HAS NOT

5    YET EXPIRED, AND THE FEDERAL CIRCUIT HAS NOT AFFIRMED THE PTAB

6    DECISION, SO THE CLAIMS OF THE '915 HAVE NOT BEEN AND CANNOT BE

7    CANCELLED.  THE PTAB DECISION THEREFORE IS NOT ENTITLED TO

8    COLLATERAL ESTOPPEL EFFECT.

9         MOREOVER, THIS COURT IS BOUND BY THE FEDERAL CIRCUIT'S

10   MANDATE.  ACCORDING TO THE FEDERAL CIRCUIT'S MANDATE RULE,

11   QUOTE, "ISSUES ACTUALLY DECIDED ON APPEAL -- THOSE WITHIN THE

12   SCOPE OF THE JUDGMENT APPEALED FROM, MINUS THOSE EXPLICITLY

13   RESERVED OR REMANDED BY THE COURT -- ARE FORECLOSED FROM

14   FURTHER CONSIDERATION."  AMADO, A-M-A-D-O, VERSUS MICROSOFT

15   CORPORATION, 517 F.3D 1353 AT 1360, FEDERAL CIRCUIT, 2008.

16        IN THIS CASE, SAMSUNG ALERTED THE FEDERAL CIRCUIT TO THE

17   ONGOING RE-EXAMINATION PROCEEDINGS ON THE '915 PATENT IN

18   SAMSUNG'S OPENING APPELLATE BRIEF FILED IN MAY OF 2014 AND

19   INFORMED THE FEDERAL CIRCUIT THAT THE PTO EXAMINER HAD FOUND

20   CLAIM 8 OF THE '915 PATENT ANTICIPATED BY HILLIS AND OBVIOUS

21   OVER NOMURA IN VIEW OF RUBINE.

22        THE PTAB ISSUED ITS DECISION ON DECEMBER 9TH, 2014.

23        THEN ON DECEMBER 16, 2014, SAMSUNG FILED A LETTER WITH THE

24   FEDERAL CIRCUIT PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE

25   28(J) INFORMING THE FEDERAL CIRCUIT OF THE PTAB'S DECISION AND

 1    REQUESTING THAT THE FEDERAL CIRCUIT APPLY COLLATERAL ESTOPPEL

 2    TO HOLD THE '915 PATENT INVALID.  SPECIFICALLY, SAMSUNG ARGUED

 3    IN ITS 28(J) LETTER TO THE FEDERAL CIRCUIT THAT THE PTAB

 4    DECISION, QUOTE, "HAS COLLATERAL ESTOPPEL EFFECT," UNQUOTE,

 5    THAT, QUOTE, "THE PRECLUSIVE EFFECT OF A DECISION INVALIDATING

 6    A PATENT CAN BE RAISED AT ANY STAGE," END QUOTE, AND THAT

 7    COLLATERAL ESTOPPEL SHOULD APPLY, QUOTE, "DESPITE THE PENDENCY

 8    OF AN APPEAL OR POST-DECISION PROCEEDINGS," END QUOTE.

 9         DESPITE SAMSUNG TWICE NOTIFYING THE FEDERAL CIRCUIT OF THE

10    '915 RE-EXAMINATION PROCEEDINGS, THE FEDERAL CIRCUIT ON MAY 18,

11    2015, UPHELD THE VALIDITY OF THE '915 PATENT AS NOT OBVIOUS IN

12    LIGHT OF NOMURA.

13         I THINK THAT WAS NOT ANTICIPATED.  ISN'T THAT CORRECT?

14              MR. MCELHINNY:  YES, YOUR HONOR.

15              THE COURT:  OKAY.  NOT -- THAT'S WRONG.

16    SAMSUNG THEN FILED A PETITION FOR REHEARING EN BANC, BUT

17    DID NOT INCLUDE THE COLLATERAL ESTOPPEL ARGUMENT IN SAMSUNG'S

18    PETITION.

19         BY THE TIME THE FEDERAL CIRCUIT DENIED REHEARING EN BANC

20    AND ISSUED THE MANDATE IN THIS CASE, SAMSUNG HAD AT LEAST THREE

21    OPPORTUNITIES TO RAISE THE ISSUE OF COLLATERAL ESTOPPEL WITH

22    THE FEDERAL CIRCUIT.  NONETHELESS, THE FEDERAL CIRCUIT STILL

23    AFFIRMED THE VALIDITY OF THE '915 PATENT, DENIED REHEARING

24    EN BANC, AND ISSUED THE MANDATE.

25         THEREFORE, THE MANDATE RULE FORECLOSES THIS COURT FROM

1  APPLYING COLLATERAL ESTOPPEL AND SAMSUNG'S MOTION FOR A

2  JUDGMENT OF INVALIDITY AS TO THE '915 PATENT IS DENIED.

3       SAMSUNG ALTERNATIVELY ASKS THE COURT TO STAY PROCEEDINGS

4  IN THIS RETRIAL PENDING THE RESOLUTION OF THE PATENT

5  RE-EXAMINATION PROCEEDING ON THE '915 PATENT.

6       THE FEDERAL CIRCUIT HAS HELD THAT COURTS HAVE INHERENT

7  POWER TO MANAGE THEIR DOCKETS AND STAY PROCEEDINGS, INCLUDING

8  THE AUTHORITY TO ORDER A STAY PENDING CONCLUSION OF THE PTO

9  EXAMINATION.  ETHICON, E-T-H-I-C-O-N, INCORPORATED VERSUS

10  QUIGG, Q-U-I-G-G, 849 F.2D 1422 AT 1427 THROUGH -- PARDON ME --

11  1426 THROUGH 27, FEDERAL CIRCUIT, 1988.

12       COURTS ARE NOT REQUIRED TO STAY JUDICIAL PROCEEDINGS

13  PENDING RE-EXAMINATION OF A PATENT, AND A STAY FOR PURPOSES OF

14  RE-EXAMINATION IS WITHIN THE DISTRICT COURT'S DISCRETION.

15       TO DETERMINE WHETHER TO STAY A CASE PENDING

16  RE-EXAMINATION, THE COURT CONSIDERS THE FOLLOWING FACTORS:

17  1, THE STAGE OF THE PROCEEDINGS, INCLUDING WHETHER DISCOVERY IS

18  COMPLETE AND WHETHER A TRIAL DATE HAS BEEN SET; 2, WHETHER A

19  STAY WILL SIMPLIFY THE ISSUES IN QUESTION AND TRIAL OF THE

20  CASE; AND, 3, WHETHER A STAY WOULD UNDULY PREJUDICE OR PRESENT

21  A CLEAR TACTICAL DISADVANTAGE TO THE NON-MOVING PARTY.

22  TELEMAC, T-E-L-E-M-A-C, CORP. VERSUS TELEDIGITAL,

23  T-E-L-E-D-I-G-I-T-A-L, INCORPORATED, 450 F.SUPP.2D 1107 AT

24  1111, NORTHERN DISTRICT OF CALIFORNIA, 2006.

25       HOWEVER, THE COURT'S ANALYSIS IS NOT LIMITED TO THESE

1    FACTORS AND THE COURT MAY CONSIDER THE TOTALITY OF THE

2    CIRCUMSTANCES WHEN DECIDING WHETHER TO EXERCISE ITS DISCRETION

3    TO GRANT A STAY.  UNIVERSAL ELECTRONICS, INCORPORATED VERSUS

4    UNIVERSAL REMOTE CONTROL, INCORPORATED, 943 F.SUPP.2D 1028 AT

5    1031 FROM THE CENTRAL DISTRICT OF CALIFORNIA.

6         THE COURT CONSIDERS EACH OF THREE FACTORS FOR A STAY

7    PENDING RE-EXAMINATION, AS WELL AS THE TOTALITY OF THE

8    CIRCUMSTANCES.  THE COURT CONCLUDES THAT ALL THREE FACTORS IN

9    THE TOTALITY OF THE CIRCUMSTANCES WEIGH STRONGLY AGAINST

10   GRANTING A STAY.

11        THE FIRST FACTOR IS THE STAGE OF THE PROCEEDINGS.  AT THIS

12   POINT, THIS COURT HAS ALREADY CONDUCTED TWO TRIALS IN THIS

13   CASE.  THE FEDERAL CIRCUIT HAS ALREADY ISSUED FOUR ORDERS IN

14   THIS CASE, INCLUDING AN ORDER ON THE APPEAL OF THE MERITS OF

15   THE CASE.

16        THE FEDERAL CIRCUIT MOREOVER HAS INSTRUCTED THIS COURT TO

17   ENTER IMMEDIATE FINAL JUDGMENT ON ALL AFFIRMED DAMAGE AWARDS

18   AND TO UNDERTAKE ANY FURTHER PROCEEDINGS NECESSITATED BY THE

19   FEDERAL CIRCUIT'S DECISION TO VACATE THE TRADE DRESS DAMAGES

20   AWARDS.

21        THIS INSTRUCTION WAS ISSUED BY THE FEDERAL CIRCUIT AFTER

22   THE PTAB ISSUED ITS FINAL DECISION, AND AFTER SAMSUNG FILED ITS

23   28(J) LETTER INFORMING THE FEDERAL CIRCUIT OF THE PTAB'S

24   DECISION.

25        AT THIS STAGE OF THE PROCEEDINGS, THE COURT IS UNDER

1    INSTRUCTIONS FROM THE FEDERAL CIRCUIT TO PROCEED WITH THE

2    RETRIAL FOR DAMAGES ON FIVE PRODUCTS, EXCLUDING ANY TRADE DRESS

3    DAMAGES.  STAYING THE PROCEEDINGS NOW WOULD RUN COUNTER TO THE

4    FEDERAL CIRCUIT'S MANDATE.  THUS, THE STAGE OF THE PROCEEDINGS

5    WEIGHS EXTREMELY STRONGLY AGAINST GRANTING A STAY.

6         THE SECOND FACTOR ASKS THE COURT TO CONSIDER WHETHER A

7    STAY WOULD SIMPLIFY THE ISSUES IN QUESTION AND THE TRIAL OF

8    THIS CASE.

9         THE COURT INTENDS TO USE A VERDICT FORM THAT REQUIRES THE

10   JURY TO QUANTIFY DAMAGES PER PRODUCT PER PATENT.  IF THE '915

11   PATENT IS INVALIDATED BY THE FEDERAL CIRCUIT, IT WILL BE EASY

12   TO IDENTIFY THE FINAL DAMAGES AMOUNT WITHOUT THE INCLUSION OF

13   THE '915 PATENT WITH THIS MORE DETAILED VERDICT FORM.

14        FURTHERMORE, THE FEDERAL CIRCUIT HAS REMANDED TO THIS

15   COURT FOR A RETRIAL ON DAMAGES FOR PRODUCTS FOUND TO INFRINGE

16   ALL OF THE SIX APPLE PATENTS, THE '163 PATENT, THE '381 PATENT,

17   THE '915 PATENT, THE DESIGN '305 PATENT, THE DESIGN '677

18   PATENT, AND THE DESIGN '087 PATENT.

19        IF THIS COURT WERE TO GRANT A STAY OF PROCEEDINGS ON THE

20   '915 PATENT, THE COURT WOULD STILL NEED TO RETRY THE FIVE OTHER

21   APPLE PATENTS.

22        IF THE FEDERAL CIRCUIT WERE TO REVERSE THE DECISION OF THE

23   PTAB, THIS COURT WOULD THEN NEED TO CONDUCT A FOURTH TRIAL IN

24   THIS CASE AND A THIRD DAMAGES RETRIAL IN THIS CASE JUST FOR THE

25   '915 PATENT.  THIS WOULD COMPLICATE, NOT SIMPLIFY, THE

1    PROCEEDINGS OR TRIAL IN THIS CASE.  THEREFORE, THE SECOND

2    FACTOR ALSO WEIGHS AGAINST GRANTING A STAY.

3         FINALLY, THE THIRD FACTOR IS WHETHER A STAY WOULD UNDULY

4    PREJUDICE OR PRESENT A CLEAR TACTICAL DISADVANTAGE TO THE

5    NON-MOVING PARTY.  THIS FAVOR ALSO WEIGHS STRONGLY IN FAVOR OF

6    APPLE.

7         APPLE WON A JURY VERDICT IN AUGUST OF 2012 IN WHICH A JURY

8    FOUND, AMONG OTHER THINGS, THAT SAMSUNG HAD INFRINGED THE '915

9    PATENT AND THE '915 PATENT WAS VALID.

10        APPLE HAS OBTAINED AN AFFIRMANCE FROM THE FEDERAL CIRCUIT

11   ON THE INFRINGEMENT AND VALIDITY OF THE '915 PATENT.

12        MOREOVER, APPLE HAS OBTAINED A REMAND FROM THE FEDERAL

13   CIRCUIT TO THIS COURT FOR THE IMMEDIATE ENTRY OF FINAL JUDGMENT

14   ON 18 PRODUCTS.  DESPITE ALL OF THIS, APPLE HAS STILL RECEIVED

15   NO COMPENSATION FOR SAMSUNG'S INFRINGEMENT.

16        FURTHER DELAY OF RELIEF DUE TO A STAY PENDING FINAL

17   RESOLUTION OF THE '915 PATENT FOR THIS ENTIRE CASE, WHICH

18   INCLUDES CLAIMS OF PATENT INFRINGEMENT THAT DO NOT IMPLICATE

19   THE '915, WOULD THUS SUBSTANTIALLY PREJUDICE APPLE, AND UNDULY

20   PREJUDICE APPLE, AS WELL AS PRESENT A CLEAR TACTICAL

21   DISADVANTAGE TO APPLE.

22        SAMSUNG ARGUES THAT A STAY IS NECESSARY TO PREVENT

23   SIGNIFICANT INEQUITY TO SAMSUNG BECAUSE PROCEEDING IN THIS

24   LITIGATION COULD RESULT IN SAMSUNG PAYING DAMAGES FOR

25   INFRINGEMENT OF A PATENT ULTIMATELY HELD TO BE INVALID.

1    HOWEVER, ANY HARM TO SAMSUNG FROM DENYING A STAY AT THE

2    MOMENT IS ONLY POTENTIAL BECAUSE THE PTAB DECISION HAS NOT BEEN

3    AFFIRMED BY THE FEDERAL CIRCUIT.

4    AND I WOULD SUSPECT THAT FEDERAL CIRCUIT REVIEW OF ANY

5    PTAB DECISION, AND PERHAPS ANY PTAB REHEARING, IF ONE IS

6    GRANTED, WOULD TAKE FAR LONGER THAN WE'RE GOING TO TAKE TO

7    RETRY THIS CASE NEXT SPRING.

8    BY CONTRAST, A STAY WOULD RESULT IN CERTAIN HARM TO APPLE

9    BECAUSE IT WOULD DELAY APPLE'S ABILITY TO RECOVER UNDER ANY OF

10   ITS PATENTS.

11   APPLE RECEIVED A JURY VERDICT IN ITS FAVOR IN AUGUST OF

12   2012.  IT STILL HAS NOT RECEIVED ANY PAYMENT IN SEPTEMBER OF

13   2015, MORE THAN THREE YEARS LATER.

14   THE CERTAIN HARM TO APPLE OUTWEIGHS ANY POTENTIAL HARM TO

15   SAMSUNG IN THE ABSENCE OF A STAY.

16   FURTHERMORE, THE FEDERAL CIRCUIT'S MANDATE EXPLICITLY

17   STATED THAT THIS COURT SHOULD ENTER IMMEDIATE FINAL JUDGMENT

18   FOR APPLE AS TO THOSE DAMAGES AFFIRMED BY THE FEDERAL CIRCUIT.

19   THE RISK OF HARM TO SAMSUNG DOES NOT OUTWEIGH THIS COURT'S

20   OBLIGATION TO ABIDE BY THE FEDERAL CIRCUIT'S MANDATE.

21   THEREFORE, SAMSUNG'S REQUEST FOR A STAY OF PROCEEDINGS IS ALSO

22   DENIED.

23   AND SO I WOULD ASK, EVEN IF THE PTAB DECIDES NOT TO GRANT

24   REHEARING, THAT SAMSUNG NOT RENEW ITS STAY MOTION BECAUSE I'M

25   NOT GOING TO STAY THIS UNTIL THE FEDERAL CIRCUIT TIME TO APPEAL

1   HAS EXPIRED OR THE APPEAL PROCEEDINGS BEFORE THE FEDERAL

2   CIRCUIT HAVE TERMINATED AS TO THE '915 PATENT, AND WE'VE

3   LITIGATED THIS ISSUE MULTIPLE TIMES NOW AND I THINK IT WOULD BE

4   A WASTE OF THE COURT'S TIME AND RESOURCES TO LITIGATE THIS A

5   THIRD TIME UNTIL THE TIME FOR APPEAL HAS EXPIRED OR THE APPEAL

6   PROCEEDINGS HAVE TERMINATED.

7         MS. MAROULIS:  YOUR HONOR, MAY WE HAVE APPLE'S

8   AGREEMENT THAT THEY WILL NOT ARGUE WAIVER IF WE COMPLY WITH THE

9   COURT'S INSTRUCTION JUST NOW?  WHAT WE DON'T WANT TO DO IS FOR

10  APPLE TO LATER ARGUE THAT WE SOMEHOW WAIVED OUR RIGHTS AS TO

11  THIS PATENT AND OUR POSITION BECAUSE WE DID NOT MOVE AFTER THE

12  PTAB DENIED A HEARING.

13        THE COURT:  I GUESS I'M UNCLEAR.  YOU'RE WAIVING YOUR

14  RIGHT TO MAKE A MOTION FOR A -- TO MAKE A MOTION FOR THE COURT,

15  IN ITS DISCRETION, TO STAY THE PROCEEDINGS?

16        MS. MAROULIS:  YES, YOUR HONOR.

17     WE'VE HAD SOME INSTANCES IN THIS CASE WHERE APPLE ARGUED

18  WAIVER, BUT THERE WAS NONE, AND I SIMPLY WANT TO MAKE SURE THAT

19  IF WE DO NOT BRING THE MOTION, AS THE COURT WISHES WE NOT DO

20  UNTIL THE FEDERAL CIRCUIT DISPOSES OF THIS CASE, THAT THIS NOT

21  BE DEEMED A WAIVER OF ANY KIND OF SAMSUNG'S RIGHTS AS TO THE

22  '915 PATENT.

23        THE COURT:  OKAY.  WHAT RIGHT DO YOU HAVE TO A STAY?

24  THAT'S TOTALLY WITHIN THE DISTRICT COURT'S DISCRETION.  I'M NOT

25  SURE WHAT IT IS THAT YOU'RE WAIVING.  YOU DON'T HAVE A RIGHT TO

1    A STAY.

2         MS. MAROULIS:  WE HAVE A RIGHT TO SEEK A STAY.  WE

3    DON'T HAVE A RIGHT TO A STAY.

4      IF APPLE AGREES NOT TO RAISE WAIVER ARGUMENTS IN

5    CONNECTION WITH US NOT MOVING, THAT WOULD BE SUFFICIENT.

6         THE COURT:  WHAT ARE THE CONSEQUENCES OF FILING A

7    FRIVOLOUS MOTION?

8         MR. MCELHINNY:  THAT'S WHAT I WAS GOING TO OFFER,

9    YOUR HONOR, IS I CAN STATE CLEARLY FOR THE RECORD THAT IF

10   SAMSUNG MOVES FOR ANOTHER STAY AFTER YOUR HONOR'S ORDER, WE

11   WILL MOVE FOR SANCTIONS UNDER SECTION 1928.

12        THE COURT:  ALL RIGHT.  LET'S GO ON TO THE NEXT

13   ORDER.

14      APPLE HAS ASKED THE COURT TO ENTER PARTIAL FINAL JUDGMENT

15   IN THE AMOUNT OF $548,176,477 CORRESPONDING TO THE DAMAGE

16   AWARDS FOR THE FOLLOWING 18 PRODUCTS:  THE CAPTIVATE; THE

17   CONTINUUM; THE DROID CHARGE; THE EPIC 4G; THE EXHIBIT 4G; THE

18   GALAXY PREVAIL; THE GALAXY S II (AT&T); THE GALAXY S II

19   (EPIC 4G); THE GALAXY S II (SKYROCKET); THE GALAXY S II

20   (T-MOBILE), THE GALAXY TAB; THE GALAXY TAB 10.1 (WI-FI); THE

21   GEM; THE INDULGE; THE INFUSE 4G; THE NEXUS S 4G; THE REPLENISH;

22   AND THE TRANSFORM.

23      FOR THESE 18 PRODUCTS, THE FEDERAL CIRCUIT HAS AFFIRMED

24   THE VALIDITY OF APPLE'S INFRINGED PATENTS, THE FINDING THAT

25   THESE PRODUCTS INFRINGED APPLE'S PATENTS, AND THE DAMAGES

1    AWARDS.  SEE APPLE V. SAMSUNG, 786 F.3D 983, FEDERAL CIRCUIT,

2    2015.

3         NONE OF THESE 18 PRODUCTS WILL BE PART OF THE RETRIAL IN

4    THIS CASE BECAUSE NONE OF THE DAMAGES FOR THOSE PRODUCTS

5    INCLUDE TRADE DRESS DAMAGES.

6         THE FEDERAL CIRCUIT'S INSTRUCTION TO THIS COURT WAS AS

7    FOLLOWS:  QUOTE, "WE REMAND FOR IMMEDIATE ENTRY OF FINAL

8    JUDGMENT ON ALL DAMAGES AWARDS NOT PREDICATED ON APPLE'S TRADE

9    DRESS CLAIMS AND FOR ANY FURTHER PROCEEDINGS NECESSITATED BY

10   OUR DECISION TO VACATE THE JURY'S VERDICTS ON THE UNREGISTERED

11   AND REGISTERED TRADE DRESS CLAIMS."

12        NOTWITHSTANDING THE FEDERAL CIRCUIT'S REMAND, QUOTE, "FOR

13   IMMEDIATE ENTRY OF FINAL EQUIPMENT," UNQUOTE, SAMSUNG CONTENDS

14   THAT THIS COURT SHOULD NOT ENTER PARTIAL FINAL JUDGMENT AS TO

15   THE 18 PRODUCTS NOT SUBJECT TO RETRIAL BECAUSE TO DO SO WOULD

16   CONTRAVENE THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE

17   54(B).

18        SAMSUNG FIRST ARGUES THAT PARTIAL FINAL JUDGMENT UNDER

19   RULE 54(B) WOULD BE INAPPROPRIATE BECAUSE THERE IS NOT YET,

20   QUOTE, "AN ULTIMATE DISPOSITION OF AN INDIVIDUAL CLAIM ENTERED

21   IN THE COURSE OF A MULTIPLE CLAIMS ACTION," UNQUOTE, AS

22   REQUIRED BY SEARS ROEBUCK & COMPANY VERSUS MACKEY, M-A-C-K-E-Y,

23   351 U.S. 427 AT 436, 1956 IS THE YEAR; AND CURTISS,

24   C-U-R-T-I-S-S, WRIGHT, W-R-I-G-H-T, CORP. VERSUS GENERAL

25   ELECTRIC COMPANY, 446 U.S. 1 AT 7, AND THE YEAR IS 1980.

1    HOWEVER, THE FEDERAL CIRCUIT HAS HELD THAT RULE 54(B),

2    QUOTE, "CONCERNS THE POWER OF THE TRIAL COURT BEFORE APPEAL,"

3    END QUOTE, AND RULE 54(B) THEREFORE IS NOT APPLICABLE TO THE

4    ENTRY OF PARTIAL FINAL JUDGMENT ON REMAND FOR THAT PORTION OF

5    THE ORIGINAL JUDGMENT THAT THE APPEALS COURT HAS AFFIRMED.

6    KING INSTRUMENT CORP. VERSUS OTARI, O-T-A-R-I, CORP.,

7    814 F.2D 1560 AT 1563, FEDERAL CIRCUIT, 1987.

8    THE FEDERAL CIRCUIT, AS AN APPELLATE COURT, HAS THE

9    AUTHORITY UNDER 28 U.S.C. SECTION 2106 TO REMAND AND, QUOTE,

10    "DIRECT THE ENTRY OF SUCH APPROPRIATE JUDGMENT AS MAY BE JUST

11    UNDER THE CIRCUMSTANCES," END QUOTE.

12    AS THE FEDERAL CIRCUIT CONCLUDED IN KING INSTRUMENT,

13    28 U.S.C. SECTION 2106 PERMITS THE FEDERAL CIRCUIT TO DIRECT

14    THE ENTRY OF FINAL JUDGMENT AS TO ONLY A PORTION OF THE DAMAGES

15    UNDER A SINGLE CLAIM WHILE AT THE SAME TIME REMANDING FOR

16    FURTHER PROCEEDINGS ON THE REMAINING PORTION OF THE DAMAGES.

17    814 F.2D AT 1563.

18    THE INSTANT CASE PRESENTS EXACTLY THE SCENARIO

19    CONTEMPLATED BY KING INSTRUMENT.  BECAUSE THE 18 PRODUCTS AT

20    ISSUE HAVE ALREADY BEEN APPEALED AND THE DAMAGES AS TO THESE

21    PRODUCTS HAVE ALREADY BEEN AFFIRMED, RULE 54(B), WHICH ONLY

22    APPLIES BEFORE APPEAL, NO LONGER APPLIES IN THE INSTANT CASE.

23    THE FEDERAL CIRCUIT EXERCISED ITS AUTHORITY UNDER

24    28 U.S.C. SECTION 2106 TO DIRECT THE ENTRY OF FINAL JUDGMENT AS

25    TO THOSE PRODUCTS WHOSE DAMAGES AWARDS THE FEDERAL CIRCUIT

1    AFFIRMED.

2         UNDER THE FEDERAL CIRCUIT'S MANDATE RULE, THIS COURT IS

3    BOUND TO FOLLOW THE FEDERAL CIRCUIT'S DECREE AS LAW OF THE

4    CASE.  SEE CARDIAC PACEMAKERS, INCORPORATED VERSUS ST. JUDE

5    MEDICAL, INC., 576 F.3D 1348 AT 1356, FEDERAL CIRCUIT, 2009.

6         SAMSUNG ADDITIONALLY ARGUES THAT IT WOULD BE UNJUST TO

7    ENTER PARTIAL FINAL JUDGMENT NOW AS TO THE 18 PRODUCTS NOT

8    SUBJECT TO THE RETRIAL BECAUSE THE PTAB HAS ENTERED A FINAL

9    DECISION INVALIDATING APPLE'S '915 PATENT.  13 OF THE 18

10   PRODUCTS NOT SUBJECT TO THE RETRIAL WERE FOUND TO INFRINGE THE

11   '915 PATENT.

12        SAMSUNG SPECIFICALLY ARGUES THAT THE COURT MAY NOT ENTER

13   PARTIAL FINAL JUDGMENT BECAUSE THE PTAB DECISION MEANS THAT

14   APPLE CANNOT SATISFY THE REQUIREMENT OF FEDERAL RULE OF CIVIL

15   PROCEDURE 54(B) THAT THERE BE, QUOTE, "NO JUST REASON FOR

16   DELAY," END QUOTE, PRIOR TO THE ENTRY OF FINAL JUDGMENT.

17        HOWEVER, THE COURT IS NOT ENTERING PARTIAL FINAL JUDGMENT

18   PURSUANT TO RULE 54(B), SO THE REQUIREMENTS OF RULE 54(B) NEED

19   NOT BE SATISFIED.

20        THE ENTRY OF PARTIAL FINAL JUDGMENT AT THIS STAGE OF THE

21   LITIGATION IS PURSUANT TO THE FEDERAL CIRCUIT'S AUTHORITY UNDER

22   28 U.S.C. SECTION 2106, WHICH GIVES THE COURT OF APPELLATE

23   JURISDICTION THE AUTHORITY TO REMAND THE CASE AND DIRECT THE

24   ENTRY OF SUCH APPROPRIATE JUDGMENT, DECREE, OR ORDER, OR

25   REQUIRE SUCH FURTHER PROCEEDINGS TO BE HAD AS MAY BE JUST UNDER

1    THE CIRCUMSTANCES.

2        TO THE EXTENT SAMSUNG BELIEVES THAT DIRECTING THE ENTRY OF

3    PARTIAL FINAL JUDGMENT WAS NOT JUST UNDER THE CIRCUMSTANCES AND

4    THEREFORE IMPROPER UNDER 28 U.S.C. SECTION 2106, SAMSUNG OUGHT

5    TO HAVE RAISED THAT ARGUMENT WITH THE FEDERAL CIRCUIT.

6        SAMSUNG INFORMED THE FEDERAL CIRCUIT OF THE '915

7    RE-EXAMINATION PROCEEDINGS IN SAMSUNG'S OPENING APPELLATE BRIEF

8    FILED ON MAY 23RD, 2015.

9        AFTER THE PTAB ISSUED ITS FINAL DECISION ON DECEMBER 9,

10    2014, SAMSUNG FILED A 28(J) LETTER WITH THE FEDERAL CIRCUIT

11    ASKING THE FEDERAL CIRCUIT TO APPLY COLLATERAL ESTOPPEL BASED

12    ON THE PTAB'S DECISION.  SAMSUNG FILED THAT LETTER ON

13    DECEMBER 16, 2014.

14        THE FEDERAL CIRCUIT ISSUED ITS DECISION UPHOLDING THE

15    VALIDITY OF THE '915 PATENT IN THIS LITIGATION ON MAY 18, 2015,

16    A YEAR AFTER SAMSUNG NOTIFIED THE FEDERAL CIRCUIT OF THE

17    RE-EXAMINATION PROCEEDINGS, FIVE MONTHS AFTER THE PTAB ISSUED

18    ITS FINAL DECISION, AND FIVE MONTHS AFTER SAMSUNG ALERTED THE

19    FEDERAL CIRCUIT TO THE PTAB'S FINAL DECISION.

20        SAMSUNG FILED A PETITION FOR REHEARING EN BANC ON JUNE 17,

21    2015, SIX MONTHS AFTER THE PTAB'S FINAL DECISION, YET SAMSUNG'S

22    PETITION MADE NO MENTION OF THE PTAB DECISION AND MADE NO

23    REQUEST BASED ON THE PTAB DECISION THAT THE FEDERAL CIRCUIT

24    REMOVE ITS INSTRUCTION TO THIS COURT FOR THE IMMEDIATE ENTRY OF

25    FINAL JUDGMENT AS TO THE 18 PRODUCTS NOT SUBJECT TO THE

1    RETRIAL.  SAMSUNG MADE NO MENTION OF COLLATERAL ESTOPPEL IN

2    THAT PETITION FOR REHEARING EN BANC.

3         SAMSUNG THEREFORE HAD THREE OPPORTUNITIES TO ARGUE THAT

4    THE FEDERAL CIRCUIT SHOULD NOT DIRECT ENTRY OF JUDGMENT AS TO

5    THE VALIDITY OF THE '915 PATENT, BUT THE FEDERAL CIRCUIT

6    NONETHELESS DIRECTED THIS COURT TO ENTER PARTIAL FINAL

7    JUDGMENT.

8         THE COURT HAS ALREADY REJECTED SAMSUNG'S ARGUMENT THAT

9    THIS COURT SHOULD APPLY COLLATERAL ESTOPPEL TO THE FINAL

10   DECISION OF THE PTAB.

11        THE FEDERAL CIRCUIT ISSUED THE MANDATE IN THIS CASE ON

12   AUGUST 25, 2015, 15 MONTHS AFTER SAMSUNG ALERTED THE FEDERAL

13   CIRCUIT TO THE '915 RE-EXAMINATION PROCEEDINGS IN SAMSUNG'S

14   OPENING BRIEFS, EIGHT MONTHS AFTER THE PTAB ISSUED ITS FINAL

15   DECISION, AND EIGHT MONTHS AFTER SAMSUNG SUBMITTED A 28(J)

16   LETTER ASKING THE FEDERAL CIRCUIT TO APPLY COLLATERAL ESTOPPEL

17   TO THE PTAB'S DECISION.

18        NEVERTHELESS, THE FEDERAL CIRCUIT DID NOT APPLY COLLATERAL

19   ESTOPPEL AND INSTEAD AFFIRMED THE VALIDITY OF THE '915 PATENT.

20        THIS COURT WILL NOT APPLY COLLATERAL ESTOPPEL WHEN THE

21   FEDERAL CIRCUIT HAS NOT DONE SO.

22        THE COURT DENIES SAMSUNG'S REQUEST FOR AN OPPORTUNITY TO

23   RESPOND TO APPLE'S RESPONSE TO SAMSUNG'S OBJECTIONS TO ENTRY OF

24   PARTIAL FINAL JUDGMENT.

25        THE COURT HAS DONE A THOROUGH SEARCH OF ANY APPELLATE

1    CASES DIRECTING ENTRY OF PARTIAL FINAL JUDGMENT.  THE COURT IS

2    AWARE THAT THE SIXTH CIRCUIT HAS REJECTED THE FEDERAL CIRCUIT'S

3    DECISION IN KING INSTRUMENT.

4         HOWEVER, THE ISSUE IN OUR CASE IS GOVERNED BY FEDERAL

5    CIRCUIT LAW AND KING INSTRUMENT REMAINS THE LAW IN THE FEDERAL

6    CIRCUIT.

7         ADDITIONALLY, THE THIRD, SEVENTH, NINTH, AND ELEVENTH

8    CIRCUITS ALL APPLY THE SAME RULE AS KING INSTRUMENT AND PERMIT

9    APPELLATE COURTS TO DIRECT ENTRY OF PARTIAL FINAL JUDGMENTS

10   UNDER 28 U.S.C. SECTION 2106.

11        EVEN THOUGH SAMSUNG WAS NOT AUTHORIZED TO SUBMIT ANY MORE

12   BRIEFING ON THIS ISSUE, IN ITS SUPPLEMENTAL JOINT CASE

13   MANAGEMENT STATEMENT IN WHICH THE COURT ASKS TWO SIMPLE

14   QUESTIONS, WHETHER YOU'RE INTERESTED IN PARTICIPATING IN

15   BINDING ARBITRATION, AND WHETHER YOU WOULD WANT ANY PARTIAL

16   FINAL JUDGMENT TO BE PAID BY THE BOND, SAMSUNG USED THAT AS AN

17   OPPORTUNITY TO CITE A NEW CASE WHICH WAS NOT CITED IN ITS

18   PREVIOUS BRIEFING.  SAMSUNG CITED UNITHERM FOOD SYSTEMS,

19   INCORPORATED VERSUS SWIFT-ECKRICH, E-C-K-R-I-C-H, INCORPORATED,

20   546 U.S. 394, A SUPREME COURT CASE FROM 2006.

21        NOW, THIS SUPPLEMENTAL CITATION IS IN VIOLATION OF THE

22   COURT'S ORDER THAT NO FURTHER BRIEFING BE ENTERTAINED.

23   NONETHELESS, IT'S INAPPLICABLE AND NOT PERSUASIVE.  UNITHERM

24   HELD THAT THE APPELLATE COURT'S AUTHORITY UNDER 28 U.S.C.

25   SECTION 2106 DID NOT ALLOW THE APPELLATE COURT TO ISSUE A

1    JUDGMENT NOTWITHSTANDING THE VERDICT IF THE PARTY REQUESTING

2    THAT JUDGMENT FAILED TO COMPLY WITH FEDERAL RULE OF CIVIL

3    PROCEDURE 50(B) BY FILING A MOTION FOR JUDGMENT NOTWITHSTANDING

4    THE VERDICT WITH THE DISTRICT COURT.

5         UNITHERM HELD THAT COMPLIANCE WITH RULE 50(B) WAS

6    NECESSARY FOR THE ISSUE OF JUDGMENT NOTWITHSTANDING THE VERDICT

7    TO BE PROPERLY PRESENTED ON APPEAL.

8         UNITHERM DOES NOT APPLY IN THE INSTANT CASE BECAUSE ALL OF

9    THE ISSUES ENCOMPASED BY THE FEDERAL CIRCUIT'S REMAND FOR

10   IMMEDIATE PARTIAL FINAL JUDGMENT -- FOR EXAMPLE, PATENT

11   VALIDITY, INFRINGEMENT, AND DAMAGES FOR THE 18 PRODUCTS -- WERE

12   THE SUBJECT OF A 50(B) MOTION IN THIS CASE AND, THUS, WERE

13   PROPERLY BEFORE THE FEDERAL CIRCUIT ON APPEAL.

14        THE COURT THEREFORE GRANTS APPLE'S REQUEST FOR ENTRY OF

15   PARTIAL FINAL JUDGMENT FOR APPLE ON THE 18 PRODUCTS NOT SUBJECT

16   TO THE RETRIAL.  THE TOTAL DAMAGES AMOUNT FOR THE PARTIAL FINAL

17   JUDGMENT WILL BE $548,176,477.  PRE-JUDGMENT INTEREST AND

18   SUPPLEMENTAL DAMAGES WILL BE HANDLED AT A LATER DATE.

19        NOW, I ASSUME, MR. MCELHINNY, YOU SAW THE FILING THAT

20   SAMSUNG FILED TODAY IN WHICH THEY ARE GOING TO NOW APPEAL THE

21   JUDGMENT THAT I WILL ENTER AND THAT THEY DO NOT INTEND TO PAY

22   THIS JUDGMENT UNTIL THE APPEAL IS RESOLVED BY THE FEDERAL

23   CIRCUIT.

24        WHAT'S YOUR RESPONSE TO THAT?

25             MR. MCELHINNY:  THEIR RESPONSE IS -- AGAIN, IT'S

1    FACTUALLY INCORRECT.  THIS -- ANY NEW APPEAL THAT THEY MIGHT

2    TRY -- FIRST LET ME START AT THE BEGINNING.

3        WE THINK ANY APPEAL WOULD BE FRIVOLOUS.  WE THINK THIS IS

4    NOT A NEW JUDGMENT.  THIS IS DIRECTLY WHAT THE FEDERAL CIRCUIT

5    DESCRIBED BEFORE AS THE ENTRY OF A PRIOR JUDGMENT AFFIRMED ON

6    APPEAL.  WE DON'T THINK THERE'S A SEPARATE APPEAL HERE.

7        IF THERE IS, IT IS NOT COVERED BY THE PRIOR BOND.  IT

8    CAN'T BE.  THE PRIOR BOND EXPRESSLY SAYS IT WAS LIMITED TO THE

9    SPECIFIC APPEAL UNTIL ACTED ON BY THE FEDERAL CIRCUIT.

10       SO IF THEY DO FILE A NOTICE OF APPEAL, WHICH WE THINK

11   WOULD BE PROBLEMATIC AND WE HOPE THEY WILL RECONSIDER THAT, BUT

12   IF THEY DO THAT, THEY WILL HAVE TO GET A NEW BOND IN ORDER TO

13   GET -- IN ORDER TO ATTEMPT TO GET A STAY.

14       IF THEY ATTEMPT TO GET A STAY, A SUPERSEDEAS STAY, YOUR

15   HONOR WILL HAVE TO APPROVE THAT WHOLE PROCEDURE, AGAIN, A NEW

16   BOND AND STAY OF THIS WHOLE APPEAL.

17       WE THINK THAT THAT WOULD BE CONTRARY TO THE MANDATE RULE

18   BECAUSE WE THINK THE INTENT OF THE FEDERAL CIRCUIT WAS TO GET

19   AN ENFORCEABLE JUDGMENT.  IT COULDN'T BE CLEARER.

20       SO IF -- AS SOON AS THIS -- AS SOON AS YOUR HONOR'S

21   JUDGMENT HITS THE DOCKET, WE'RE GOING TO ASK SAMSUNG IF THEY

22   WILL PAY.  IF THEY REFUSE, WE ARE GOING TO FILE A MOTION TO

23   ENFORCE THE BOND FROM THE PRIOR APPEAL.

24       AND WHAT I WAS GOING TO ASK YOUR HONOR ON THAT IS WE HAVE

25   ONE OF THOSE MOTIONS ALREADY PENDING.  WE HAVE FILED A MOTION

1    TO ENFORCE THE BOND AS TO THE COSTS AWARD, WHICH WAS AFFIRMED

2    ON APPEAL, AND THAT IS ON YOUR CALENDAR FOR DECEMBER 10TH.

3            AND WHAT I WOULD LIKE IS PERMISSION, IF THEY DON'T PAY AND

4    IF WE HAVE TO FILE ANOTHER MOTION TO ENFORCE THE BOND, THAT

5    YOUR HONOR LET US SET THAT FOR THE SAME DATE BECAUSE IT WILL BE

6    THE SAME ISSUES.

7            THE COURT:  SO LET ME ASK A QUESTION.  WHAT HAPPENS

8    WITH THE BILLION DOLLAR BOND THAT'S CURRENTLY AT THE CLERK'S

9    OFFICE?

10           MR. MCELHINNY:  THAT -- THAT BOND, BY ITS TERMS --

11           THE COURT:  UM-HUM.

12           MR. MCELHINNY:  -- COVERED THE ORIGINAL APPEAL UNTIL

13   ANY ORDER, AFFIRMANCE ORDER FROM THE FEDERAL CIRCUIT IS PAID.

14   SO IT COVERS THE ORIGINAL APPEAL.  IT IS THERE TO PAY

15   JUDGMENTS.

16           WE BELIEVE THAT WE HAVE WON AS TO THE COSTS AWARD.

17           WE BELIEVE, AS SOON AS YOUR HONOR'S ORDER IS FILED, WE'LL

18   HAVE ANOTHER ONE, AND THAT THAT BOND IS AVAILABLE TO COLLECT ON

19   THAT.

20           SAMSUNG TOLD YOU THAT THEY THINK THERE IS A WAY THEY CAN

21   AVOID THAT AND GET ANOTHER STAY OF ENFORCEMENT.  THAT ISSUE IS

22   GOING TO HAVE TO BE DECIDED FIRST I THINK BY YOU AND THEN

23   ULTIMATELY BY THE FEDERAL CIRCUIT.

24           BUT WE ARE MOVING -- THE PROCEDURE -- THERE IS A SPECIFIC

25   FEDERAL RULE, 62.1, IF I HAVE IT RECALLED --

```
 1              THE COURT:  RIGHT.

 2              MR. MCELHINNY:  -- TO ENFORCE THE BOND.  WE HAVE --

 3    AND THAT'S A MOTION BY APPLE AGAINST THE BONDING COMPANIES, THE

 4    SURETIES.

 5              WE HAVE FILED SUCH A MOTION ALREADY IN CONNECTION WITH THE

 6    COSTS, WHICH THEY ARE REFUSING TO PAY, AND THAT HAS BEEN SET ON

 7    YOUR HONOR'S CALENDAR FOR DECEMBER 10TH.

 8              THE COURT:  AND I'VE READ THE TWO OPENING BRIEFS.

 9              MR. MCELHINNY:  SO THAT I THINK -- IF SAMSUNG REFUSES

10    TO PAY, I THINK DECEMBER 10TH IS WHEN THIS COMES TO A HEAD, AND

11    IF YOUR HONOR AGREES WITH US, THE BONDING COMPANIES WRITE US A

12    CHECK AND SAMSUNG DOESN'T.

13              THE COURT:  OKAY.  WELL, I GUESS I'M UNCLEAR.  YOU'RE

14    SAYING -- WHY WOULDN'T THE ORIGINAL $1 BILLION DOLLAR BOND

15    COVER -- WHY WOULD THEY HAVE TO HAVE A NEW BOND?

16              MR. MCELHINNY:  BECAUSE THEIR POSITION IS THEY'RE

17    GOING TO FILE -- YOU'VE JUST ENTERED A NEW JUDGMENT AND THAT

18    THEY GET TO FILE A NEW APPEAL FROM THAT JUDGMENT.

19              AND IF THEY DO THAT, THAT -- THE -- THESE BONDS ARE

20    SPECIFIC.  THEY SAY THE JUDGMENT ENTERED ON SUCH AND SUCH A

21    DATE AND THE APPEAL SENT TO THE FEDERAL CIRCUIT.

22              SO THEY HAVE TO EITHER GET NEW BONDS OR THEY HAVE TO GET A

23    RIDER OR SOMETHING, SOME SORT OF AMENDMENT TO THE CURRENT BOND,

24    THAT WILL COVER THIS NEW PROCEEDING THAT THEY SAY THEY'RE GOING

25    TO FILE.
```

```
1          THE COURT:  AND I ASSUME THE NEW BOND WOULD BE IN THE
2     SAME AMOUNT --
3          MR. MCELHINNY:  UM --
4          THE COURT:  -- AND WOULDN'T JUST BE IN THE AMOUNT OF
5     THIS PARTIAL FINAL JUDGMENT.
6          MR. MCELHINNY:  I HAVE -- YOUR HONOR, THEY ARE SO FAR
7     BEYOND WHAT, WHAT ACCEPTABLE LEGAL PROCEDURE IS THAT I HAVE NO
8     IDEA WHAT THEY'RE GOING TO DO.
9          THE COURT:  IS THERE ANY KIND OF CONTEMPT PROCEDURE
10    IF THERE'S NO PAYMENT ACCORDING TO THE JUDGMENT?
11         MR. MCELHINNY:  WE DON'T NEED A CONTEMPT PROCEDURE,
12    YOUR HONOR.  ALL WE NEED -- AS SOON AS YOUR ORDER ISSUES, IT'S
13    AN ORDER TO THE BOND COMPANIES, THAT'S WHAT THEY DO.  IF YOUR
14    HONOR GRANTS OUR MOTION, THE BOND COMPANY WILL WRITE US A
15    CHECK.  THAT'S WHAT THEY AGREED TO DO WITH THE BOND.  THAT'S
16    WHAT THEY DO.
17         AND UNDER THIS RULE, YOUR HONOR HAS JURISDICTION OVER
18    THEM.  THE CLERK NOTIFIES THEM.  THEY EITHER COME OR DON'T COME
19    TO THE HEARING.
20         BUT ONCE YOUR HONOR -- IF YOUR HONOR GRANTS OUR 62.1
21    MOTION, WE GET PAID.
22         THE COURT:  MS. MAROULIS, YOU'RE STANDING UP.  WHAT
23    WOULD YOU LIKE TO STATE?
24         MS. MAROULIS:  YES, YOUR HONOR, JUST VERY BRIEFLY.
25         SAMSUNG HAS A RIGHT TO APPEAL THIS JUDGMENT AND ORDER, AND
```

1    IT'S OUR POSITION THAT THE OLD BOND REMAINS IN EFFECT.  BUT IF

2    IT WOULD HELP THE COURT, WE CAN TRY TO GET A RIDER VERY

3    QUICKLY, AND WE CAN MEET AND CONFER WITH APPLE AS TO WHETHER WE

4    WOULD TAKE THE SAME BOND AND HAVE A RIDER OR POST A NEW BOND.

5         BUT THAT DOES NOT AFFECT OUR RIGHT TO APPEAL.

6         AND WE'VE SET FORTH WHAT WE'RE WILLING TO DO EXPLICITLY

7    FOR THE COURT'S BENEFIT IN THE SHORT SUBMISSION.

8         SO THAT IS THE PROCEEDING FROM NOW ON.  WE'LL FILE A

9    NOTICE, WE'LL EITHER TALK TO APPLE ABOUT WHETHER THEY WILL

10   ACCEPT THE OLD BOND, WHICH FAR EXCEEDS THE AMOUNT OF THE

11   JUDGMENT THE COURT'S ENTERING NOW.

12        BUT IF IT WOULD HELP PROCEED WITH THE MATTERS, WE CAN ALSO

13   DO A RIDER AMENDING THE BOND.

14            THE COURT:  WELL, THIS DOESN'T HAVE TO BE DECIDED

15   TODAY.  IS THAT CORRECT?

16            MS. MAROULIS:  NO, YOUR HONOR.

17            MR. MCELHINNY:  IT DOESN'T.  I'M JUST TRYING TO TEE

18   IT UP FOR DECEMBER 10TH SO WE HAVE ALL THESE ISSUES IN ONE

19   PARTICULAR HEARING.

20            THE COURT:  ALL RIGHT.

21        WHAT ELSE DO WE HAVE ON THE 10TH?  LET ME JUST MAKE SURE

22   WE CAN HANDLE THAT.

23        (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

24   CLERK.)

25            THE COURT:  WELL, WHEN ARE YOU GOING TO HAVE THIS

1    FULLY BRIEFED AND THEN WE CAN DECIDE WHETHER WE WANT TO DECIDE

2    IT EARLY OR AROUND THE 10TH.

3         OR YOU'LL JUST FILE IT AND YOU'LL GO BY THE CIVIL LOCAL

4    RULE BRIEFING SCHEDULE OF TWO WEEKS AFTER IS THE OPPOSITION,

5    ONE WEEK AFTER IS THE REPLY.

6         MR. MCELHINNY:  THAT WOULD BE -- WE WOULD BE THRILLED

7    WITH THAT, YOUR HONOR.

8         THE COURT:  OKAY.  ALL RIGHT.  WELL, WHY DON'T YOU --

9    THIS IS PRETTY COMPLICATED AND I WOULD APPRECIATE WHATEVER

10   INFORMATION YOU CAN PROVIDE ABOUT THE PROCEDURE AND WHAT

11   HAPPENS.

12        NOW, IF APPLE THEN SEEKS TO BE PAID BY THE BOND COMPANIES,

13   IS SAMSUNG THEN GOING TO TRY TO SEEK TO ENJOIN THAT OR

14   SOMETHING?  OR WHAT?

15        MS. MAROULIS:  YOUR HONOR, THIS IS A LITTLE BIT

16   BEYOND WHAT WE'VE CONTEMPLATED, BECAUSE ONCE WE FILE THE NOTICE

17   OF APPEAL AND POST A BOND, THE JUDGMENT IS STAYED.

18        SO I NEED TO UNDERSTAND WHAT THE PROCEDURE MR. MCELHINNY

19   IS REFERENCING, AND MAYBE WE CAN GET BACK TO THE COURT WITH,

20   LIKE, A JOINT STATEMENT OF PURELY THE PROCEDURAL ISSUES NEXT

21   WEEK BECAUSE HE'S CONTEMPLATING SOME MOTION THAT HE HASN'T

22   BROUGHT AND HASN'T TOLD ME ABOUT.  SO I NEED TO BE ABLE TO

23   RESPOND TO THAT INTELLIGENTLY.

24        MR. MCELHINNY:  FOUR YEARS AGO, I STOOD IN FRONT OF

25   YOUR HONOR AND I SAID WE WERE DEALING WITH A COMPANY THAT DOES

1   NOT FOLLOW THE LAW AND DOES NOT HAVE RESPECT, EVEN FOR THE

2   ORDERS OF THIS COURT.

3        WE ARE NOW IN THE END GAME AND WE EXPECT TO SEE A FLURRY

4   OF MOTIONS, AND UNTIL SOMEBODY, YOU KNOW, PUTS A STAKE IN THEIR

5   HEART, THEY'RE GOING TO BE -- THEY'RE GOING TO BE STRUGGLING

6   UNTIL THE COURTS PROVE THAT THEY CAN COMPEL THEM TO FOLLOW

7   THEIR ORDERS.  THAT'S -- THEY'RE MAKING THAT STRATEGY AS CLEAR

8   AS THEY POSSIBLY CAN.

9        MS. MAROULIS:  YOUR HONOR, THAT'S AN ATTACK ON

10  SAMSUNG.

11       BUT THE POINT IS THAT WE HAVE RIGHTS UNDER THE RULES OF

12  CIVIL PROCEDURE, AND WE EXPLAINED TO BOTH APPLE AND THE COURT

13  WHAT THOSE ARE AND WE WILL FILE A NOTICE AND PROCEED FROM

14  THERE.

15       WHAT I'D LIKE TO DO IS TO ASSIST THE COURT IN FIGURING OUT

16  A PROCEDURE, SO I WOULD RECOMMEND THAT MAYBE THE PARTIES FILE A

17  JOINT STATEMENT NEXT WEEK SUGGESTING EITHER MOTION PRACTICE OR

18  A STIPULATED PROCESS THAT WE'VE ORDERED IN THE BOND IF THAT

19  WOULD WORK FOR THE COURT.

20       MR. MCELHINNY:  AS SOON AS YOUR HONOR FILES -- GIVEN

21  THE STATEMENTS, AS SOON AS YOUR HONOR FILES THE JUDGMENT, WE

22  ARE GOING TO FILE A MOTION TO ENFORCE.  IT WILL BE PARALLEL,

23  ALTHOUGH IT WILL BE ON THE NORMAL BRIEFING SCHEDULE.  THAT'S

24  OUR PROCEDURE.  THAT'S SET OUT.

25       THE COURT:  ALL RIGHT.  I DON'T THINK YOU CAN APPEAL

1    IT UNTIL AT LEAST THERE'S AN ORDER ON THE MOTION TO ENFORCE THE

2    JUDGMENT.

3              MS. MAROULIS:  YOUR HONOR, IF --

4              THE COURT:  WELL, WHAT'S YOUR BASIS TO APPEAL IT IF

5    THERE'S STILL A MOTION PENDING AS TO ENFORCEMENT OF THE

6    JUDGMENT?

7              MS. MAROULIS:  NO, YOUR HONOR.  WE WILL NOT BE

8    APPEALING YET THE MOTION TO ENFORCE.

9         I WAS REFERRING TO THE JUDGMENT AND THE ORDER THE COURT

10   JUST READ ABOUT THE ENTRY OF JUDGMENT.  THAT'S WHAT'S BEING

11   APPEALED SHORTLY.

12             THE COURT:  AND SAMSUNG IS SAYING THAT WOULD THEN

13   STAY YOUR MOTION?  IS THAT YOUR POSITION?

14             MS. MAROULIS:  IT WOULD STAY THE -- ONCE THE BOND IS

15   POSTED, IT WOULD STAY THE EXECUTION OF JUDGMENT.

16             MR. MCELHINNY:  BUT --

17             MS. MAROULIS:  THIS THE FIRST I'VE HEARD OF THIS

18   MOTION, SO I DON'T KNOW WHAT IT'S GOING TO SAY.

19             MR. MCELHINNY:  WHAT SAMSUNG IS --

20             MS. MAROULIS:  SO IT'S HARD TO RESPOND TO IT

21   IMMEDIATELY.

22             MR. MCELHINNY:  WHAT SAMSUNG IS TELLING YOU IS THIS

23   IS GROUNDHOG DAY.

24        AS SOON AS YOU ENTER THIS NEW JUDGMENT, IT'S AS IF THERE

25   HAD NEVER BEEN A JUDGMENT IN THIS CASE BEFORE, THAT THEY CAN

## ADD104

1    COME IN AND FILE A SUPERSEDEAS BOND AND, UNDER THE FEDERAL

2    RULES, THAT NEW SUPERSEDEAS BOND, OR THE ROLLOVER OR WHATEVER,

3    WILL AUTOMATICALLY STAY ENFORCEMENT.  THAT'S THEIR POSITION,

4    THAT, IN FACT, YOU CAN NEVER ENFORCE A JUDGMENT BECAUSE THEY

5    CAN FILE A NEW APPEAL AND A NEW BOND AND IT'LL GO ON.

6        IF YOU LOOK CAREFULLY AT THE WORDING THEY GAVE YOU TODAY,

7    THEY SAID EVEN AFTER THE NEXT APPEAL, THEY WILL PAY ONCE THE

8    JUDGMENT BECOMES EXECUTABLE.

9        SO AT LEAST WHAT THEIR THEORY IS IS PRETTY CLEAR, WHICH IS

10   THIS IS A BLEAK HOUSE AND THE PATENT -- WHEN SOMEBODY MENTIONED

11   THAT THIS WAS THE PATENT TRIAL OF THE CENTURY, SAMSUNG THOUGHT

12   IT WOULD TAKE 100 YEARS.  THAT'S THE PLAN.

13       AND WE THINK WE HAVE VERY GOOD ARGUMENTS THAT THAT -- THAT

14   THAT STRATEGY DOESN'T WORK, THAT YOUR HONOR DOESN'T HAVE TO

15   APPROVE THIS NEW BOND, AND THAT THE FEDERAL CIRCUIT INTENDED

16   FOR THIS JUDGMENT TO BE ENFORCEABLE.

17       AND IF YOUR HONOR DECIDES THAT AND ORDERS THE BONDING

18   COMPANIES TO PAY, THEN THE STRATEGY IS DONE UNLESS THEY CAN GET

19   A STAY SOMEWHERE ELSE.

20       MS. MAROULIS:  YOUR HONOR, WE DISAGREE.

21       APPLE IS TRYING TO DEPRIVE SAMSUNG OF ITS APPELLATE

22   RIGHTS.  BUT THEIR MOTION IS NOT YET BEEN FILED, SO I CANNOT

23   RESPOND.

24       THE COURT:  SO WHAT ARE YOU GOING TO RELY ON IN YOUR

25   APPEAL?  SIXTH CIRCUIT LAW THAT DOESN'T APPLY WHEN FEDERAL

**ADD105**

1    CIRCUIT LAW GOVERNS?

2              MS. MAROULIS:  YOUR HONOR, I HESITATE TO --

3              THE COURT:  I WAS NOT PERSUADED BY ANYTHING YOU

4    FILED, AND I THINK THE FEDERAL CIRCUIT LAW IS CLEAR.

5         BUT IF YOU WANT TO FILE A FRIVOLOUS APPEAL, I GUESS THAT

6    IS YOUR RIGHT.

7              MS. MAROULIS:  YOUR HONOR, MAY I ADDRESS WHY THE

8    KING INSTRUMENTS CASE DOES NOT APPLY HERE?

9              THE COURT:  NO.  I WAS COMPLETELY UNPERSUADED BY YOUR

10   BRIEFS ON BOTH ISSUES, BOTH THE MOTION FOR JUDGMENT ON THE

11   INVALIDITY OF THE '915 AND THE STAY, AND ALSO OPPOSITION TO

12   ENTRY OF PARTIAL FINAL JUDGMENT.

13        ALL RIGHT.  LET'S GO AHEAD THEN AND SCHEDULE THE TRIAL.

14        I'D LIKE TO HAVE A FURTHER CASE MANAGEMENT CONFERENCE ON

15   DECEMBER 10 OF 2015 AT 1:30.  THAT WILL BE CONCURRENT WITH THE

16   HEARING ON THE TWO COST MOTIONS.

17        YOUR UPDATED EXPERT REPORT DEADLINE OF NOVEMBER 6TH IS

18   FINE.  I WILL ORDER SAMSUNG'S UPDATED EXPERT REPORT ON THE SAME

19   DAY.

20        THE CLOSE OF EXPERT DEPOSITIONS WILL BE DECEMBER 11TH AS

21   THE PARTIES PROPOSED; THE DEADLINE FOR SAMSUNG'S FINANCIAL

22   PRODUCTION FOR ANY SUPPLEMENTAL DAMAGES OR PRE-JUDGMENT

23   INTEREST IS SEPTEMBER 30TH OF 2015, BUT I WILL DELAY ANY

24   BRIEFING OR HEARING UNTIL LATER.  BUT IF THERE'S ANY DISCOVERY

25   NECESSARY ON THAT ISSUE, I WANT YOU TO GET IT NOW, OKAY, SO WE

1   CAN HANDLE IT RIGHT AWAY, MAYBE RIGHT AFTER ANY JMOL ORDERS.

2         OKAY.  THE MOTION TO STRIKE EXPERT REPORT WILL BE

3   DECEMBER 18, 2015; OPPOSITION BRIEF WILL BE JANUARY 14, 2016;

4   REPLY BRIEF WILL BE JANUARY 21 OF 2016.  I'M ADOPTING THE

5   PARTIES' BRIEFING SCHEDULE.

6         I HAVE ANTHEM MDL COMING IN ON FEBRUARY 4TH, SO I THINK IT

7   WOULD BE TOUGH TO DO THIS ON THE SAME DAY, SO I'D LIKE TO SET

8   THE HEARING FOR FEBRUARY 11.  ARE YOU AVAILABLE THAT DAY?

9               MS. MAROULIS:  YES, YOUR HONOR.

10              MR. MCELHINNY:  YES, YOUR HONOR.

11              THE COURT:  OKAY.  APPLE, TOO?

12              MR. MCELHINNY:  YES, YOUR HONOR.

13              THE COURT:  OKAY.  SO YOUR JOINT IDENTIFICATION OF

14  TRIAL WITNESSES JANUARY 22ND, THAT'S FINE; I WAS GOING TO

15  PROPOSE, SINCE I'M MOVING THE MOTION TO STRIKE HEARING BY ONE

16  WEEK, I'D LIKE TO MOVE THE PRETRIAL CONFERENCE BY ONE WEEK.

17  ARE YOU AVAILABLE ON MARCH 3RD?

18              MS. MAROULIS:  YES, YOUR HONOR.

19              MR. MCELHINNY:  YES, YOUR HONOR.

20              THE COURT:  OKAY.  AND SO I'D LIKE TO GIVE YOU AN

21  EXTRA WEEK ON THE JOINT PRETRIAL STATEMENT SO YOU CAN

22  INCORPORATE ANY RULING ON THE MOTIONS TO STRIKE, SO RATHER THAN

23  THAT BEING DUE ON FEBRUARY 11TH AS THE PARTIES PROPOSED, SINCE

24  THAT'S THE HEARING DATE ON THE MOTION TO STRIKE, I'M GOING TO

25  GIVE YOU AN ADDITIONAL WEEK, SO YOUR JOINT PRETRIAL STATEMENT

1    IS DUE FEBRUARY 18, 2016.

2         NOW, AS FAR AS THE PRETRIAL EXCHANGES, I THINK WE SHOULD

3    JUST FOLLOW WHAT WE HAVE DONE IN THE PAST OF EXCHANGE THE

4    EXHIBITS AND THE WITNESSES TWO DAYS BEFORE, FILING YOUR

5    OBJECTIONS AND RESPONSES THE MORNING THE DAY BEFORE, AND THEN

6    I'LL RULE ON THEM THE NIGHT BEFORE SO YOU HAVE THE RULINGS

7    BEFORE THE WITNESS COMES ON OR THE EXHIBITS OR DEMONSTRATIVES

8    ARE USED.

9         I'M GOING TO LIMIT OPENING SLIDES TO 50.

10        THE ROLLING LIST OF SEVEN SHOULD ALWAYS JUST BE THE NIGHT

11   BEFORE YOU'RE GOING TO CALL THE WITNESSES.  DO WE NEED TO SET A

12   DATE ON THAT?  I DIDN'T THINK WE NEED TO.  JUST USE THE SAME

13   PRACTICE AS YOU HAVE IN THE LAST THREE TRIALS.

14        NOW, THE DATE FOR EXCHANGING OPENING STATEMENT

15   DEMONSTRATIVES, WE CAN EITHER JUST SET THAT AT THE PRETRIAL

16   CONFERENCE OR WE CAN DISCUSS IT NOW.  IT DOESN'T MATTER.  I'M

17   FINE WITH WAITING AS WELL.

18        MR. MCELHINNY:  WE'RE FINE WITH WAITING UNTIL THE

19    PRETRIAL CONFERENCE.

20        THE COURT:  OKAY.  ALL RIGHT.

21        NOW, WHAT ABOUT INITIAL WITNESS DISCLOSURE, OBJECTIONS,

22   SUBSEQUENT WITNESS DISCLOSURES AND OBJECTIONS?  SHOULDN'T THAT

23   JUST BE THE PRACTICE WE'VE BEEN DOING THE LAST THREE TRIALS?

24        MR. MCELHINNY:  YES, YOUR HONOR.

25        THE COURT:  YEAH.  I DON'T SEE ANY NEED TO DEVIATE

1    FROM WHAT WE'VE BEEN DOING, SO THAT'S THE SAME AS BEFORE.

2    THOSE ARE SAME AS BEFORE.

3         TRIAL IS GOING TO START ON MARCH 28TH.

4         AND THE POST-TRIAL BRIEFING WILL BE AS FOLLOWS:  OPENING

5    BRIEFS WILL BE DUE APRIL 21; OPPOSITION BRIEFS, MAY 5; REPLY

6    BRIEFS, MAY 12; AND THE HEARING ON JUNE 2ND, 2016, AT 1:30 P.M.

7         SO OUR TRIAL DATES ARE GOING TO BE MARCH 28, 29, 30, 31,

8    APRIL 1, 4, AND 5.

9         (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

10   CLERK.)

11        THE COURT:  OH, I'M LOOKING AT THE 2016 CALENDAR.

12   THAT'S MY MISTAKE.  LET ME START OVER.

13        MARCH -- OH, YEAH, THAT'S RIGHT.  MARCH 28 IS A MONDAY.

14   SO MARCH 29 IS A TUESDAY.  MARCH 30TH IS A WEDNESDAY.

15   MARCH 31ST IS A THURSDAY.

16        WHAT DID I SAY?

17        (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

18   CLERK.)

19        THE COURT:  TRIAL WILL BE CONTINUOUS DAYS.

20        MS. MAROULIS:  YOUR HONOR, MAY I ADDRESS THE COURT

21   VERY BRIEFLY?

22        MR. PRICE HAS A PREEXISTING FAMILY OBLIGATION ON

23   MARCH 20TH THROUGH 28TH.  IS THERE ANY WAY TO POSTPONE THIS AT

24   LEAST A WEEK SO HE CAN RETURN FROM HIS PLANS?

25        THE COURT:  UNFORTUNATELY, WE CAN'T DO THAT BECAUSE

1    OTHERWISE THERE WILL NOT BE SUFFICIENT TIME FOR THE JMOL

2    BRIEFING AND THE RULING.  SO I'LL APOLOGIZE TO HIS FAMILY, BUT

3    I -- THERE'S JUST NOT ENOUGH TIME TO GET THIS BRIEFING DONE AND

4    HAVE THE HEARING BY JUNE 2ND.

5         SO IT'S MARCH 28, 29, 30, 31, APRIL 1, 4, AND 5.  I

6    BELIEVE THAT'S ONE, TWO, THREE, FOUR, FIVE, SIX, SEVEN DAYS.

7         WE MAY NOT EVEN GO SEVEN DAYS.  I JUST SCHEDULED IN THREE

8    DAYS OF DELIBERATION JUST IN CASE BECAUSE THAT'S HOW LONG I

9    BELIEVE GENERALLY THE LAST THREE TRIALS HAVE DELIBERATED, ABOUT

10   THREE DAYS.

11        OKAY.  WHAT ELSE DO WE NEED TO DO TODAY?  ANYTHING ELSE WE

12   NEED TO DO TODAY?

13            MR. MCELHINNY:  YOUR HONOR, MAY I JUST REVISIT THIS

14   QUESTION ABOUT SUPPLEMENTAL DAMAGES --

15            THE COURT:  YES.

16            MR. MCELHINNY:  -- JUST FOR A MOMENT?

17            THE COURT:  OKAY.

18            MR. MCELHINNY:  THERE IS A -- THE DISPUTE IS SIMPLY

19   STATED BETWEEN US AND SAMSUNG, WHICH IS WE BELIEVE THAT ALL OF

20   THESE ISSUES THAT SAMSUNG WANTS TO RAISE NOW WERE EITHER

21   DECIDED IN THE EARLIER TRIAL OR DECIDED BY YOUR HONOR'S

22   METHODOLOGY ORDER WHICH THEY APPEALED.

23        IF WE ARE CORRECT, THE SUPPLEMENTAL DAMAGES ISSUE SIMPLY

24   BECOMES A MOTION PRACTICE.

25        IF SAMSUNG IS CORRECT IN THAT THEY CAN NOW RAISE FOR THE

1    FIRST TIME NON-INFRINGEMENT DEFENSES THAT THEY DIDN'T RAISE AT

2    THE FIRST TRIAL, THEN WHAT PROCEEDS FROM THAT IS REGULAR

3    DISCOVERY, EXPERT REPORTS, AND SORT OF A LAID OUT AND THEN

4    EVENTUALLY A BENCH TRIAL BEFORE YOUR HONOR.

5        IF WE --

6            THE COURT:  CAN I ASK YOU A QUESTION?

7            MR. MCELHINNY:  YES, MA'AM.

8            THE COURT:  SO THE SUPPLEMENTAL DAMAGES BEGIN ON

9    AUGUST 25TH OF 2012, THE DAY AFTER THE VERDICT?

10           MR. MCELHINNY:  YES, YOUR HONOR.

11           THE COURT:  HOW LATE DO THEY GO?  UNTIL WHENEVER THE

12   PRODUCTS ARE END OF LIFE AND ARE NO LONGER BEING SOLD?

13           MR. MCELHINNY:  SEPTEMBER 2013, YOUR HONOR.

14           THE COURT:  AND WHY THAT DATE?

15           MR. OLSON:  THEY STOPPED SELLING.

16           MR. MCELHINNY:  THEY STOPPED SELLING.

17           THE COURT:  OKAY.

18           MR. MCELHINNY:  SO WHAT I WOULD LIKE -- IF WE COULD

19   GET ON YOUR CALENDAR -- IF YOUR HONOR COULD --

20           THE COURT:  CAN I ASK YOU A QUESTION?

21           MR. MCELHINNY:  YES.

22           THE COURT:  WHY WOULDN'T I HAVE TO DETERMINE WHETHER

23   ANY CHANGES TO THE PRODUCTS IN THAT WINDOW FROM AUGUST 25,

24   2012, TO SEPTEMBER 20TH OF 2013, WERE, IN FACT, IMPLEMENTED AND

25   WHETHER THEY INFRINGE OR NOT?  DON'T I HAVE TO MAKE THAT

1    ASSESSMENT?

2              MR. MCELHINNY:  THERE ARE TWO ANSWERS TO THAT.  ONE

3    IS THAT THE CHANGES TO THE PRODUCTS THAT AT LEAST WE KNOW ABOUT

4    WERE MADE --

5              THE COURT:  YEAH.

6              MR. MCELHINNY:  -- DURING THE DISCOVERY TIME OF THE

7    PRIOR TRIAL.  THOSE PRODUCTS WERE ON SALE, THEY WERE INCLUDED

8    IN THE ORIGINAL TRIAL, THEY WERE INCLUDED IN THE ORIGINAL

9    VERDICT, AND SAMSUNG DID NOT RAISE ANY OF THESE DEFENSES AT

10   THAT TIME.

11        SO WE BELIEVE THAT THE JURY DETERMINED THAT THE PRODUCTS

12   THAT THEY'RE NOW TALKING ABOUT AS NON-INFRINGING WERE, IN FACT,

13   INFRINGING AND THAT THESE PRODUCTS ARE WRAPPED UP IN THE

14   ORIGINAL VERDICT.

15             THE COURT:  AND WHY -- I'M SORRY TO INTERRUPT YOU.

16   WHY DIDN'T THEY RAISE THEM?  WERE THEY PRECLUDED BECAUSE THEY

17   WERE DISCLOSED UNTIMELY?

18             MR. MCELHINNY:  THE ANSWER TO THAT, I BELIEVE --

19             THE COURT:  YES.

20             MR. MCELHINNY:  -- DIFFERS BY VARIOUS -- WE DON'T

21   HAVE A COMPLETE LIST OF WHAT'S THEIR NEW NON-INFRINGEMENT.

22             THE COURT:  YES.

23             MR. MCELHINNY:  BUT ONE OF THEM IS THEY SAY WHITE

24   PHONES CAN'T INFRINGE ONE OF OUR DESIGN PATENTS.  THEY WERE NOT

25   PRECLUDED IN ANY WAY, SHAPE, OR FORM.  I MEAN, THERE WERE NO

1    PRECLUSION ORDERS, THERE WAS NOTHING.  THEY SIMPLY DID NOT

2    RAISE THAT DEFENSE.

3         AND WHITE PHONES ARE AMONGST THE PHONES THAT WERE FOUND TO

4    BE INFRINGING BY THE JURY.  WE DON'T THINK WE SHOULD HAVE TO

5    RELITIGATE THAT ISSUE.

6         THERE WERE -- THERE WAS ONE SOFTWARE DESIGN THAT THEY WERE

7    EXPRESSLY PRECLUDED.  SO THE ANSWER VARIES ON A DIFFERENT

8    BASIS.

9              THE COURT:  UM-HUM.

10             MR. MCELHINNY:  SO THAT'S ONE ANSWER IS WE THINK THIS

11   WAS -- WE THINK THIS WAS DETERMINED AND THAT THEY DON'T HAVE A

12   RIGHT TO REOPEN IT FOR SUPPLEMENTAL DAMAGES.

13        SECONDLY, WE THINK YOUR HONOR SET OUT, IN YOUR METHODOLOGY

14   ORDER, EXACTLY WHAT YOU INTENDED TO DO, THAT YOU SET OUT THE

15   METHODOLOGY AND SAID WE HAVE TO TAKE THE NUMBER THAT YOUR HONOR

16   SET AND WE'RE GOING TO MULTIPLY IT AGAINST THE NUMBER OF

17   PRODUCTS.

18             THE COURT:  OH, I WOULDN'T ALLOW THEM TO CHANGE THE

19   CALCULATION.  I ALREADY -- I AGREE WITH YOU THAT THE MARCH 1,

20   2013, ORDER SET OUT HOW I WOULD CALCULATE IT.

21        THE ONLY QUESTION IS WHICH SALES DO WE COUNT?  AND THEN I

22   THINK I HAVE TO MAKE THE DESIGN AROUND DETERMINATION.

23             MR. MCELHINNY:  BUT OUR POSITION IS THAT --

24             THE COURT:  YES.

25             MR. MCELHINNY:  -- IF THEY HAD A PROBLEM WITH WHAT

1    YOUR HONOR HAD SET OUT IN THE ORDER --

2            THE COURT:  YEAH.

3            MR. MCELHINNY:  -- THEY DID APPEAL THAT ORDER TO THE

4    FEDERAL CIRCUIT.  THEY DIDN'T RAISE THIS ISSUE IN FRONT OF THE

5    FEDERAL CIRCUIT.

6            THE COURT:  WHICH ONE?  THE DESIGN AROUND?

7            MR. MCELHINNY:  THE QUESTION ABOUT WHETHER OR NOT --

8    YES, WHETHER OR NOT DESIGN AROUNDS WOULD BE CONSIDERED UNDER

9    THE METHODOLOGY THAT YOUR HONOR HAD SET OUT IN YOUR ORDER.

10        SO -- BUT FOR NOW, I'M JUST -- THOSE ARE THE ISSUES.

11           THE COURT:  WELL, OKAY.  THIS IS WHAT I WOULD BE

12   WILLING TO DO.

13           MR. MCELHINNY:  CAN I --

14           THE COURT:  I DON'T KNOW IF THIS IS --

15           MR. MCELHINNY:  I HAVEN'T MADE MY POINT.

16           THE COURT:  -- TO FEEL THEM OUT.  WHAT IF I HAD --

17   OKAY.  I'LL LET YOU MAKE IT, BUT LET ME MAKE MINE FIRST.

18           MR. MCELHINNY:  ALL RIGHT.

19           THE COURT:  OKAY.  WHAT IF YOU MET AND CONFERRED AND

20   HAD SAMSUNG IDENTIFY, FOR ALL 18 PRODUCTS, WHAT THEY THINK IS

21   THE DESIGN AROUND, WHEN THAT DESIGN AROUND WAS FIRST

22   IMPLEMENTED; AND THEN YOU CAN COME BACK AND SAY, WELL, YOU

23   WAIVED IT BECAUSE YOU NEVER RAISED IT AT TRIAL, DONE.

24        AND YOU CAN GO THROUGH ALL 18 PRODUCTS AND SET THAT OUT,

25   WHAT IS THE DESIGN AROUND, WHEN WAS IT IMPLEMENTED, WHEN WAS IT

1    DESIGNED, WAS IT RAISED AT TRIAL OR NOT, AND DID THE JURY

2    CONSIDER IT OR NOT?  DID THE JURY DISREGARD IT?

3            MR. MCELHINNY:  THIS IS EXACTLY WHAT I WANT TO RAISE

4    BECAUSE --

5            THE COURT:  UM-HUM.

6            MR. MCELHINNY:  -- IF WE CAN PRESENT THAT -- IF YOUR

7    HONOR JUST GAVE US -- IF YOUR HONOR IS GOING TO GO WITH

8    SAMSUNG'S POSITION IS ALL I'M -- THIS IS WHAT I'M TRYING TO GET

9    TO.  IF YOUR HONOR IS GOING TO GET -- THEN THERE'S GOING TO

10   HAVE TO BE DISCOVERY, THERE'S GOING TO HAVE TO BE EXPERTS AND

11   REPORTS, AND RATHER THAN POSTPONING THAT WHOLE PROCESS UNTIL

12   AFTER, IF THAT'S THE WAY THIS IS GOING TO GO, WE SHOULD

13   START -- WE CAN BE DOING THAT DISCOVERY PROCESS NOW.

14           THE COURT:  OH, THAT'S FINE.

15           MR. MCELHINNY:  WELL, THAT'S THE -- BUT WE JUST NEED

16   TO KNOW --

17           THE COURT:  THAT'S FINE IF YOU WANT TO DO THE --

18   THAT'S WHY I SAID THAT SAMSUNG HAS TO PRODUCE THEIR FINANCIAL

19   DOCUMENTS BY SEPTEMBER 30TH.  I DID WANT THE SUPPLEMENTAL

20   DAMAGES AND PRE-JUDGMENT INTEREST DISCOVERY TO GO FORWARD, EVEN

21   IF I DON'T RULE ON IT UNTIL AFTER JMOL.

22           MR. MCELHINNY:  GOT IT.  THAT'S WHAT I NEEDED TO

23   KNOW.

24           THE COURT:  OKAY.  SO THE DISCOVERY SHOULD GO FORWARD

25   ON THOSE TWO QUESTIONS, PRE-JUDGMENT INTEREST AND SUPPLEMENTAL

1    DAMAGES.

2         (DISCUSSION OFF THE RECORD BETWEEN PLAINTIFF'S COUNSEL.)

3             THE COURT:  WHAT'S THAT?

4             MR. MCELHINNY:  WHAT WE NEED IS AN EARLY DISCLOSURE

5    OF WHAT THEIR NEW DEFENSES ARE.

6             THE COURT:  ALL RIGHT.  WHAT ABOUT SEPTEMBER 30TH?

7             MR. MCELHINNY:  THAT'S FINE.

8             THE COURT:  OKAY.  SEPTEMBER 30TH, YOU ARE GOING TO

9    DISCLOSE ALL THE DESIGN AROUNDS FOR ALL 18 PRODUCTS.

10        AND WHAT SPECIFICALLY DO YOU WANT TO KNOW ABOUT THOSE?

11   LAY IT OUT AND I'LL PUT IT IN THE ORDER.

12            MR. MCELHINNY:  WE WANT TO KNOW THE BASIS UPON WHICH

13   SAMSUNG IS CLAIMING THAT THESE PRODUCTS DO NOT INFRINGE; AND

14   FOR EACH OF THESE VARIANTS, WE WOULD LIKE TO KNOW THE FIRST DAY

15   ONE OF THOSE VARIANTS WENT ON SALE IN THE UNITED STATES.

16        (DISCUSSION OFF THE RECORD BETWEEN PLAINTIFF'S COUNSEL.)

17            MR. MCELHINNY:  AND WHEN IT'S SOFTWARE, THE FIRST DAY

18   THAT THE SOFTWARE WAS AVAILABLE TO BE USED IN THE PHONE.

19            THE COURT:  FIRST DAY SOFTWARE AVAILABLE FOR?

20            MR. MCELHINNY:  DOWNLOADING INTO THE PHONE.

21            THE COURT:  IN THE U.S.?

22            MR. MCELHINNY:  YES, YOUR HONOR.

23        AND IF IT WOULD HELP YOUR HONOR, AN EXPLANATION OF WHY

24   THIS WASN'T RAISED AS A DEFENSE IN THE FIRST CASE.

25            THE COURT:  YES.  WHETHER IT WAS RAISED AT TRIAL, AND

1    IF IT WAS RAISED AT TRIAL, I WOULD LIKE THE EXHIBIT NUMBER AND

2    I WOULD LIKE THE TRIAL TRANSCRIPT CITATION.  OKAY?

3              MR. MCELHINNY:  AND IF NOT, WHY NOT, I GUESS.

4              THE COURT:  WELL, THAT'S NEXT.

5              MR. MCELHINNY:  OKAY.  SORRY.

6              THE COURT:  I'M JUST DOING THIS NOW.  TRIAL

7    TRANSCRIPT CITATION; AND THEN TWO IS, WHY NOT?

8              MR. ANDERSON:  YOUR HONOR, IF I MAY?

9         WE'RE HAPPY TO DISCLOSE ALL THAT INFORMATION.

10        THEY ALREADY HAVE IT.  I DON'T KNOW IF MR. MCELHINNY

11   FORGETS, BUT IN OCTOBER --

12             THE COURT:  WELL, IT WOULD BE GOOD FOR IT JUST TO BE

13   IN ONE PLACE, JUST ONE DOCUMENT.

14             MR. ANDERSON:  THEY HAVE IT.

15             THE COURT:  ONE DOCUMENT TO LAY ALL THIS OUT, FOR ALL

16   18 PRODUCTS, WHAT IS THE DESIGN AROUND; WHY ARE YOU SAYING THAT

17   IT DOESN'T INFRINGE; WHEN IS THE FIRST DAY OF SALE OF THAT

18   NON -- WHAT YOU'RE ALLEGING NON-INFRINGING VERSION IN THE U.S.;

19   WHEN IS THE FIRST DAY OF SOFTWARE AVAILABILITY FOR DOWNLOADING

20   IN THE U.S.; WHETHER IT WAS RAISED AT TRIAL, AND IF SO, GIVE ME

21   THE EXHIBIT NUMBERS AND TRIAL TRANSCRIPT CITATIONS; AND IF IT

22   WAS NOT RAISED AT TRIAL, WHY NOT?

23        AND IF YOU HAVE IT ALL AT YOUR FINGERTIPS, THEN I WOULD

24   EVEN MOVE UP THE DATE FROM SEPTEMBER 30TH.  DO YOU WANT TO DO

25   IT NEXT WEEK?

**ADD117**

1    MR. ANDERSON:  I AM AFRAID I DON'T HAVE ALL OF THAT

2    AT MY FINGERTIPS.

3         AND I ASSUME THEY ALSO WANT THE SALES UNITS.

4         THE COURT:  IS THAT CORRECT, MR. MCELHINNY, DO YOU

5    WANT THE SALES UNITS?

6         MR. MCELHINNY:  YES, PLEASE, YOUR HONOR.

7         THE COURT:  OKAY.  WHAT ELSE?  ANYTHING ELSE?  I

8    THINK THIS EXCHANGE WOULD BE HELPFUL.

9         MR. ANDERSON:  I AGREE, YOUR HONOR, AND WE'RE HAPPY

10   TO DO IT.

11        I JUST WANT TO MAKE CLEAR ABOUT WHERE THE BURDEN LIES

12   HERE.  WE'RE HAPPY TO TELL THEM THE INFORMATION YOU RECITED.

13   THEY KNOW IT BECAUSE THIS CAME UP IN THE PERMANENT INJUNCTION

14   BRIEFING IN OCTOBER OF 2012, AND IT CAME UP THERE BECAUSE THE

15   PRECLUSION ORDER THAT PREVENTED SAMSUNG FROM PRESENTING ITS

16   DESIGN AROUNDS AT TRIAL SAID THAT ORDER WAS EXPLICITLY NOT

17   APPLICABLE TO POST-TRIAL PROCEEDINGS.

18        SO WHEN WE GOT TO THE PERMANENT INJUNCTION PROCEEDINGS, WE

19   SHOWED APPLE THE CHANGES WE MADE TO THE PRODUCTS TO AVOID THESE

20   PATENTS.

21        IT'S THE SAME CHANGES.  THERE'S NOW FIVE PRODUCTS AT

22   ISSUE.  SO THEY'VE SEEN THE CHANGES.

23        AND IT'S -- THIS NOTION THAT SOMEHOW WE PUT THE DESIGN

24   AROUNDS IN TOO EARLY AND, THEREFORE, HAVE TO PAY SUPPLEMENTAL

25   DAMAGES BASED ON THAT CAN'T BE RIGHT AND I WANT TO MAKE SURE WE

1    HAVE AN OPPORTUNITY TO BRIEF THAT FOR THE COURT.

2            THE COURT:  WELL, THE PRECLUSION ORDERS WERE AFFIRMED

3    BY THE FEDERAL CIRCUIT AND YOU DIDN'T RAISE THIS SUPPLEMENTAL

4    DAMAGES ISSUE ON APPEAL.

5        SO IT -- I THINK IT SEEMS UNFAIR THAT YOU ONLY RAISED A

6    FEW ISSUES ON APPEAL, BUT NOW YOU'RE TRYING TO RELITIGATE ALL

7    OF THEM DOWN HERE IN DISTRICT COURT.

8            MR. ANDERSON:  YOUR HONOR, WE --

9            THE COURT:  AND I DON'T THINK THAT'S FAIR.  YOU DID

10   NOT RAISE THIS DESIGN AROUND ISSUE WITH REGARD TO SUPPLEMENTAL

11   DAMAGES ON APPEAL.

12           MR. ANDERSON:  MAY I EXPLAIN?

13           THE COURT:  SO --

14           MR. ANDERSON:  THERE WEREN'T ANY SUPPLEMENTAL DAMAGES

15   AWARDED.  THERE WAS NO AWARD TO APPEAL.  YOU INDICATED HOW YOU

16   WOULD CALCULATE AND YOU DIDN'T -- AS FAR AS I KNOW, THE

17   COURT --

18           THE COURT:  BUT YOU SHOULD HAVE -- IF YOU OBJECTED TO

19   THIS CALCULATION METHOD BECAUSE IT WOULD INCLUDE NON-INFRINGING

20   SALES, THEN YOU SHOULD HAVE RAISED THAT AND SAID THIS

21   CALCULATION METHOD WAS LEGALLY ERRONEOUS BECAUSE IT IS

22   OVERINCLUSIVE ON NON-INFRINGING SALES.

23           MR. ANDERSON:  I BELIEVE YOUR ORDERS DO NOT SAY THAT

24   IT WILL BE APPLIED TO NON-INFRINGING SALES.  I DON'T BELIEVE

25   YOUR -- I DON'T BELIEVE YOUR HONOR HAS RULED THAT APPLE IS

1    ENTITLED TO SUPPLEMENTAL DAMAGES ON POST-VERDICT SALES THAT IT

2    CONCEDES DON'T INFRINGE THE PATENTS, SO I DON'T BELIEVE THAT

3    THERE WAS A RULING TO APPEAL ON THAT ISSUE.

4         MR. MCELHINNY:  THE RECORD WILL REFLECT, YOUR HONOR,

5    THAT YOUR ORDER WAS EXPRESSLY APPEALED.

6         IF I COULD ADD ONE MORE THING ON MY LIST, WHICH IS A

7    PHYSICAL, A PHYSICAL SAMPLE OF EACH MODIFIED PHONE.

8         THE COURT:  THAT'S FINE.

9         MR. MCELHINNY:  AND THEN WE DON'T NEED TO DECIDE THIS

10   NOW, BUT WHAT I WOULD REALLY LIKE IS SOME -- ONCE WE HAVE THIS

11   AND WE'VE MET AND CONFERRED, A CHANCE TO PRESENT TO YOUR HONOR

12   JUST THE GLOBAL ISSUE OF HOW YOU'RE GOING TO DO THIS, BECAUSE

13   IF YOUR HONOR AGREES WITH US, THEN WE DON'T HAVE TO DO MONTHS

14   OF DISCOVERY.  THAT'S THE -- THAT WOULD BE THE ADVANTAGE TO US.

15        MR. ANDERSON:  YOUR HONOR, IT WON'T BE MONTHS OF

16   DISCOVERY.  IN FACT, THE DISCOVERY WAS ALREADY DONE IN THE

17   PERMANENT INJUNCTION CONTEXT, SO IT CERTAINLY WON'T BE MONTHS.

18        BUT WE'RE HAPPY -- WE'RE HAPPY TO DISCLOSE WHAT WE THINK

19   IS THE RELEVANT INFORMATION AND CONFER WITH COUNSEL.

20        MOST OF THE PATENTS, THERE'S NO DISPUTE ABOUT THE DESIGN

21   AROUND.

22        THE COURT:  WHY DON'T YOU FILE THIS DOCUMENT ON

23   SEPTEMBER 30TH?  DON'T JUST SERVE IT ON APPLE, BUT WHY DON'T

24   YOU ALSO FILE IT?

25        MR. ANDERSON:  MAY I --

```
 1              THE COURT:  YOU CAN REDACT THE SALES NUMBERS.

 2              MR. ANDERSON:  OKAY.  I APPRECIATE THAT.

 3              THE COURT:  OKAY.

 4          (PAUSE IN PROCEEDINGS.)

 5              THE COURT:  OH, MR. ANDERSON, CAN YOU FILE A NOTICE

 6      OF APPEARANCE?

 7              MR. ANDERSON:  YES.

 8              THE COURT:  OKAY.

 9              MR. ANDERSON:  I APOLOGIZE FOR THAT, YOUR HONOR.

10      I'LL TAKE CARE OF THAT TODAY.

11              THE COURT:  YEAH, IF YOU WOULD.  WE'LL INCLUDE THAT

12      IN THE ORDER, THAT YOU SHOULD FILE A NOTICE OF APPEARANCE.

13          AND ANYONE ELSE SHOULD NOT BE E-FILING THROUGH

14      MS. MAROULIS'S ACCOUNT.  THEY NEED TO REGISTER ON ECF IN THEIR

15      OWN NAME.  OKAY?

16          SO I'D LIKE YOU TO FILE A NOTICE OF APPEARANCE AND TO

17      REGISTER ON ECF IN YOUR OWN NAME.  OKAY?

18              MR. ANDERSON:  YES.  I'M REGISTERED, I JUST NEED TO

19      FILE IN THIS CASE.

20              THE COURT:  THAT'S FINE.  YEAH.  YOU'RE RECEIVING ECF

21      NOTIFICATIONS THROUGH MS. MAROULIS'S ACCOUNT.

22              MR. ANDERSON:  YES, BUT I'M ALSO --

23              THE COURT:  SO REGISTER FOR THIS CASE, PLEASE.

24              MR. ANDERSON:  YES.

25              THE COURT:  WHEN DID YOU SAY YOU WERE GOING TO DO
```

```
1      THAT?

2             MR. ANDERSON:  I'LL DO THAT TODAY.

3             THE COURT:  OKAY.  THANK YOU.

4      WHAT'S YOUR PROPOSAL, MR. MCELHINNY?  MY CONCERN IS I

5  THINK THAT, YOU KNOW, NOTHING IN THIS CASE IS EVER SIMPLE, AS

6  YOU KNOW.  SO I THINK WADING THROUGH 18 PRODUCTS IS GOING TO BE

7  AN INCREDIBLE EFFORT AND I HAVE LIMITED RESOURCES TO DEVOTE TO

8  THIS CASE.

9      SO I THOUGHT THE PRIORITY WOULD BE TO DO THE DAMAGES

10 RETRIAL ON THE FIVE PRODUCTS FIRST AND TO DEVOTE THE RESOURCES

11 TO THAT FIRST, BUT IF YOU WANT ME TO DO SUPPLEMENTAL DAMAGES

12 INSTEAD, IN LIEU OF, I --

13            MR. MCELHINNY:  I COULDN'T ASK FOR -- I COULDN'T ASK

14 FOR ANYTHING, YOUR HONOR.  I MEAN, YOUR HONOR IS GIVING US WHAT

15 WE HOPED FOR.

16            THE COURT:  OKAY.

17            MR. MCELHINNY:  THE ONLY POINT I'M TRYING TO MAKE IS

18 THAT THIS GLOBAL ISSUE -- AND IF YOUR HONOR -- THIS IS FOR

19 YOUR -- I THINK IT'S FOR YOU.  IF THIS GLOBAL ISSUE GETS

20 RESOLVED AS WE THINK IT SHOULD BE, AS WE THINK IT WAS --

21            THE COURT:  UM-HUM.

22            MR. MCELHINNY:  -- THEN THERE IS NO DISCOVERY AND

23 THEN THERE'S JUST SIMPLY A MOTION PRACTICE THAT GETS FILED.

24     IF SAMSUNG IS CORRECT, THEN IT BECOMES A BENCH TRIAL WITH

25 ALL THIS STUFF.
```

1             AND RATHER THAN PUT THE QUESTION OF THE PROCEDURE OFF

2     UNTIL NEXT MAY AND THEN START THEN, I'M JUST TRYING TO FIGURE

3     OUT IF THERE'S SOME WAY THAT WE CAN TEE IT UP --

4             THE COURT:  BUT WHAT IS -- I'M SORRY TO INTERRUPT

5     YOU.  WHAT IS THE ISSUE?  WHETHER DESIGN AROUNDS NEED TO BE

6     ACCOUNTED FOR IN THE SALES THAT ARE INCLUDED IN SUPPLEMENTAL

7     DAMAGES?  IS THAT THE QUESTION?

8             MR. MCELHINNY:  THE --

9             THE COURT:  WHAT'S THE QUESTION?

10            MR. MCELHINNY:  OUR VIEW --

11            THE COURT:  YEAH.

12            MR. MCELHINNY:  -- IS THAT ALL OF THESE ISSUES THAT

13    THEY'RE NOW TRYING TO RAISE WERE EITHER RESOLVED BY THE

14    ORIGINAL TRIAL OR RESOLVED BY YOUR HONOR'S ORDER --

15            THE COURT:  OKAY.

16            MR. MCELHINNY:  -- AND THAT ALL THAT IS LEFT TO DO IS

17    TO MULTIPLY THE ROYALTY NUMBER TIMES THE PRODUCT SALES NUMBERS.

18    THAT'S OUR VIEW OF WHAT REMAINS TO BE DONE.

19            THE COURT:  SO YOU'RE SAYING THE DESIGN AROUNDS WERE

20    ALREADY ACCOUNTED FOR?

21            MR. MCELHINNY:  EITHER AT THE TRIAL ITSELF --

22            THE COURT:  OKAY.

23            MR. MCELHINNY:  -- OR IN YOUR HONOR'S METHODOLOGY

24    ORDER, AFFIRMED BY THE FEDERAL CIRCUIT, NOT APPEALED.

25    APPEALED, BUT NOT ARGUED.

1        THE COURT:  OKAY.  SO YOU'RE SAYING THAT ISSUE COULD

2    BE DECIDED WITHOUT SLOGGING THROUGH 18 PRODUCT DESIGN AROUNDS?

3        MR. MCELHINNY:  THAT'S WHAT -- THAT'S EXACTLY WHAT

4    I'M TRYING TO SAY.

5        MR. ANDERSON:  YOUR HONOR, OBVIOUSLY IT'S MORE

6    EFFICIENT TO DO THIS ALL AT ONCE.

7        BUT FOR THE COURT'S CLARIFICATION, WE'RE TALKING ABOUT

8    FIVE PRODUCTS NOW, NOT 18.  MOST OF THE SALES STOPPED BEFORE

9    THE VERDICT.

10        MR. MCELHINNY:  IT'S ONLY FIVE PRODUCTS.

11        THE COURT:  IT'S FIVE?

12        MR. MCELHINNY:  YES.

13        MR. ANDERSON:  WE HAVE NO DISPUTE ABOUT HOW MANY

14    PRODUCTS ARE AT ISSUE FOR SUPPLEMENTAL DAMAGES.

15        THE COURT:  OH.

16        MR. ANDERSON:  AND IT'S NOT A SLOG, YOUR HONOR.

17    REMEMBER, WE'RE TALKING ABOUT, IS THE -- IS A PHONE BLACK OR

18    WHITE?  I MEAN, I DON'T KNOW HOW MUCH DISCOVERY --

19        THE COURT:  WELL, BUT THEN THERE'S SOFTWARE ON

20    SOME -- I MEAN, THAT --

21        MR. ANDERSON:  THERE IS SOFTWARE.

22        THE COURT:  THERE'S SIX PATENTS HERE, SO --

23        MR. ANDERSON:  IT WAS ALL DISCLOSED IN THE PERMANENT

24    INJUNCTION BRIEFING IN OCTOBER 2012 AND THEY'RE AWARE OF IT.

25        SO I THINK YOUR HONOR IS RIGHT THAT, FOR EFFICIENCY

**ADD124**

1    REASONS, IT SHOULD BE ADDRESSED LATER, AND WE'RE HAPPY TO DO --

2           THE COURT:  WELL, I'M FINE WITH THE CALCULATION --

3    I'M SORRY TO INTERRUPT YOU.  I'M FINE WITH DOING THE

4    CALCULATION LATER.

5       BUT I GUESS THERE'S THIS ONE QUESTION OF, IS THIS EVEN

6    RESOLVED OR NOT?  I GUESS THAT'S THE QUESTION.

7           MR. MCELHINNY:  RIGHT.  AND THAT TURNS ON WHETHER OR

8    NOT WE NEED DISCOVERY AND NEW EXPERTS AND PRETRIAL CONFERENCES

9    AND THINGS LIKE THAT.

10          THE COURT:  STACY.

11      (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

12   CLERK.)

13          MR. MCELHINNY:  MAY I MAKE A PROPOSAL, YOUR HONOR?

14          THE COURT:  WHAT'S THAT?

15          MR. MCELHINNY:  AFTER WE GET THEIR DISCOVERY, WHY

16   DON'T WE MEET AND CONFER AND THEN WE WILL JUST SUBMIT TO YOUR

17   HONOR A JOINT STATUS REPORT.

18      ONCE YOU HAVE THAT JOINT STATUS REPORT, YOU CAN DECIDE

19   WHETHER YOU WANT TO HAVE -- ISSUE AN ORDER, WHETHER YOU WANT TO

20   SET A HEARING, WHETHER YOU WANT BRIEFING, OR WHETHER YOU JUST

21   WANT TO LEAVE THE WHOLE THING AS IT IS RIGHT NOW.

22      BUT WE'LL JUST SET OUT CLEARLY FOR YOU WHAT WE'RE

23   DISCUSSING NOW AND YOU CAN DECIDE IF YOU WANT TO DO SOMETHING

24   ABOUT IT OR NOT.

25          MR. ANDERSON:  YOUR HONOR, I THINK THIS IS JUST

1    ANOTHER -- THIS IS AN ATTEMPT TO AVOID THE MOTION THEY HAVE TO

2    FILE.  I MEAN, AT LEAST IN THEIR CASE MANAGEMENT STATEMENT,

3    THEY ACKNOWLEDGE THEY HAD TO FILE A MOTION TO GET SUPPLEMENTAL

4    DAMAGES.

5         WE'RE HAPPY TO DISCLOSE THE INFORMATION AND WE'RE HAPPY TO

6    CONFER.

7         BUT WE WANT TO -- WE DON'T WANT TO GET IN ANOTHER

8    SITUATION WHERE APPLE IS SOMEHOW ACTING LIKE IT'S SAMSUNG'S

9    BURDEN TO SHOW NON-INFRINGEMENT OF WHITE PHONES BY -- FOR THE

10   D'677 PATENT.

11        WE NEED TO SEE WHAT THEY'RE ALLEGING THEY WANT DAMAGES ON.

12   SO WE'RE HAPPY TO GIVE THEM THE DISCOVERY --

13        THE COURT:  WELL, I THINK -- I UNDERSTOOD

14   MR. MCELHINNY SAYING YOU'RE GOING TO FILE A STATEMENT AND THEN

15   I CAN DECIDE WHETHER WE WANT TO MOVE FORWARD AND HAVE A MOTION.

16        MR. ANDERSON:  I JUST --

17        THE COURT:  I DON'T THINK THIS IS IN LIEU OF A

18   MOTION.

19        MR. MCELHINNY:  IT'S NOT.

20        THE COURT:  IT'S JUST A QUESTION OF DO I EVEN WANT TO

21   TOUCH THIS NOW OR WAIT UNTIL AFTER POST-TRIAL MOTIONS AFTER THE

22   RETRIAL.

23        MR. ANDERSON:  I'M HAPPY TO FILE A STATUS UPDATE.  I

24   JUST DON'T WANT IT TO BE SORT OF ONE OF THESE DISGUISED MOTIONS

25   WHERE THEY LAY OUT REQUESTS FOR RELIEF IN A STATUS UPDATE.

1          THE COURT:  GIVE ME ONE SECOND, PLEASE.

2          (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

3     CLERK.)

4          THE COURT:  ALL RIGHT.  SO ON SEPTEMBER 30TH,

5     SAMSUNG'S GOING TO FILE ITS DISCLOSURE OF DESIGN AROUNDS FOR

6     THE FIVE PRODUCTS; FIRST DAY OF SALE IN THE U.S.; FIRST DAY OF

7     SOFTWARE AVAILABILITY IN THE U.S.; WHETHER IT WAS RAISED AT

8     TRIAL, AND IF SO, THE EXHIBIT NUMBER, TRIAL TRANSCRIPT

9     CITATION.  IF NOT, WHY NOT?

10      SALE UNITS AND PHYSICAL -- AND PROVIDE -- AND SERVE --

11    EXCUSE ME -- SERVE PHYSICAL SAMPLES ON APPLE.  NO NEED TO SERVE

12    PHYSICAL SAMPLES ON THE COURT.

13          MR. ANDERSON:  I ASSUME APPLE WILL BE FINE IF WE MADE

14    PHYSICAL SAMPLES AVAILABLE FOR THEM.  DO WE REALLY WANT THE

15    PARTIES TO BE DEALING WITH DIFFERENT PHYSICAL SAMPLES?

16          MS. KREVANS:  I'M SORRY.  IF YOU'RE SAYING WE CAN

17    ONLY INSPECT AT YOUR OFFICE, NO, WE NEED ONE THAT WE CAN WORK

18    WITH.

19          MR. ANDERSON:  YOU WANT US TO PRODUCE IT?

20          MS. KREVANS:  YES, WE DO.

21          THE COURT:  OKAY.  SO THEN WHEN IS APPLE GOING TO

22    FILE A RESPONSE, AND WHAT IS YOUR RESPONSE GOING TO BE, THAT,

23    YES, IT DOES INFRINGE, OR IT'S PRECLUDED BECAUSE IT SHOULD HAVE

24    BEEN RAISED AT TRIAL AND WAS NOT?

25          MR. MCELHINNY:  IF THEY GIVE THAT TO US ON THE 30TH

1    AND THEY MAKE THEMSELVES AVAILABLE, WE WILL MEET AND CONFER

2    WITH THEM IN THAT IMMEDIATELY FOLLOWING WEEK.

3              THE COURT:  OKAY.

4              MR. MCELHINNY:  AND THEN MY PROPOSAL IS THAT WHATEVER

5    SEVEN DAYS AFTER THE 30TH IS, WE FILE A JOINT STATEMENT WITH

6    YOUR HONOR DESCRIBING OUR POSITIONS ON WHAT HAS HAPPENED AND

7    WHAT WE THINK THE MOST EFFICIENT WAY OF MOVING FORWARD IS.

8              THE COURT:  SO ON OCTOBER 7TH?

9              MR. MCELHINNY:  THAT WOULD BE FINE, ASSUMING THAT

10   THEY'RE AVAILABLE FOR A MEET AND CONFER.

11             MR. ANDERSON:  THAT'S FINE.

12        YOUR HONOR, I'D REQUEST THAT BY THAT TIME APPLE ALSO

13   INCLUDE A DEFINITIVE STATEMENT OF WHETHER IT ALLEGES THE

14   CHANGES THAT SAMSUNG HAS DISCLOSED INFRINGE THE PATENTS OR NOT.

15             MR. MCELHINNY:  THAT'S -- THAT IS WHY I'M -- WE NEED

16   TO GET THE DISCLOSURE.

17             MR. ANDERSON:  YES, THIS IS AFTER WE DISCLOSE TO

18   THEM.  I WANT TO STATE -- I WANT A STATEMENT FROM APPLE IF

19   THEY'RE GOING TO ARGUE THAT A WHITE PHONE INFRINGES THE

20   D'677 -- AND I WANT THE STATEMENT, IF YOU'RE GOING TO ALLEGE

21   THAT THE SOFTWARE DESIGN AROUND OF THE D'305 INFRINGES THE

22   D'305, I WANT YOU TO PUT THAT IN WRITING.

23             MR. MCELHINNY:  THIS IS -- THIS IS MY POINT, WHICH IS

24   IF THIS IS REOPENED FOR NEW NON-INFRINGEMENT, THEN WE HAVE TO

25   PIN DOWN WHAT IT IS, WE HAVE TO TALK TO EXPERTS, WE HAVE TO

1    FIGURE OUT WHAT OUR POSITION IS ON THIS.

2        THAT'S -- AND WE END UP WITH A NEW NON-INFRINGEMENT TRIAL.

3    THAT'S WHERE THEY WANT TO GO WITH THIS, AND IF THAT'S WHERE WE

4    GO, THAT'S WHERE WE'LL GO.

5        BUT I CAN'T DO THAT IN THREE DAYS AFTER THE FIRST TIME I

6    SEE WHAT THEIR PHONES LOOK LIKE.

7            THE COURT:  WELL, I JUST WANT TO KNOW -- WHAT WOULD

8    BE MORE IMPORTANT, I GUESS, IS TO DECIDE THIS PRELIMINARY

9    ISSUE.  WHAT IS YOUR POSITION?  THAT ANY DESIGN AROUND THAT WAS

10   NOT RAISED AT TRIAL HAS EFFECTIVELY BEEN WAIVED FOR PURPOSES OF

11   SUPPLEMENTAL DAMAGES?  IS THAT THE ARGUMENT?

12           MR. MCELHINNY:  ABSOLUTELY.  ANY DESIGN AROUND THAT

13   WAS ON SALE IN THE UNITED STATES PRIOR TO THE JURY VERDICT --

14           THE COURT:  YES.

15           MR. MCELHINNY:  -- THAT THAT IS -- THAT HAS BEEN

16   RESOLVED BY THE JURY WHEN THEY FOUND THAT THOSE PRODUCTS

17   INFRINGED AND NO DEFENSE WAS RAISED.

18           THE COURT:  UM-HUM.

19           MR. MCELHINNY:  SO LET'S TAKE WHITE PHONE, BLACK

20   PHONE.

21           THE COURT:  YEAH.

22           MR. MCELHINNY:  IF WHITE PHONES WERE ON SALE, IF THEY

23   WERE PUT IN AS THE PRODUCT NUMBERS, IF THE JURY ASSESSED

24   DAMAGES ON WHITE PHONES, THAT ISSUE IS OVER.

25           THE COURT:  OKAY.  BECAUSE THAT, I THINK, IS THE KEY

1   ISSUE THAT WOULD BE HELPFUL TO DECIDE EARLIER RATHER THAN

2   LATER.

3          MR. MCELHINNY:  THAT'S THE --

4          THE COURT:  IS THERE ANY OTHER ARGUMENT YOU HAVE

5   OTHER THAN THE WAIVER?

6          MR. MCELHINNY:  THE OTHER ARGUMENT THAT I HAVE --

7          THE COURT:  YEAH.

8          MR. MCELHINNY:  -- IS THE WAY WE INTERPRET YOUR

9   HONOR'S METHODOLOGY ORDER WAS THAT YOU DETERMINED THE NUMBER

10  AND YOU SAID YOU WERE GOING TO MULTIPLY THAT TIMES PRODUCT,

11  INFRINGING PRODUCT SALES; THAT SAMSUNG APPEALED THAT ORDER, BUT

12  DIDN'T CHALLENGE THAT METHODOLOGY; AND THAT TO TRY TO CHANGE

13  THAT METHODOLOGY NOW IS ALSO PRECLUDED.

14      SO WE HAVE BOTH A SUBSTANCE AND A METHODOLOGY ORDER.

15         MR. ANDERSON:  YOUR HONOR, I'VE ALREADY ADDRESSED THE

16  APPEAL POINT AND WHY IT'S INCORRECT.

17      I HOPE YOUR HONOR CAN SEE --

18         THE COURT:  WELL, I WOULD LIKE -- I WOULD LIKE

19  BRIEFING ON THAT, BECAUSE I'M NOT -- I'M NOT SURE YOU HAVEN'T

20  WAIVED IT.

21         MR. ANDERSON:  WE CAN'T HAVE WAIVED IT.

22         THE COURT:  IF IT EXISTED BEFORE AND YOU CHOSE NOT TO

23  RAISE IT DURING TRIAL --

24         MR. ANDERSON:  WE WERE PRECLUDED FROM PRESENTING THE

25  JURY OUR DESIGN AROUNDS, YOUR HONOR.

```
1              THE COURT:  BECAUSE OF UNTIMELY DISCLOSURE?

2              MR. MCELHINNY:  NO.

3              MS. MAROULIS:  YOUR HONOR, THERE WAS AN ORDER BY

4    JUDGE GREWAL THAT WAS EFFECTIVELY A SANCTION FOR LATE

5    DISCLOSURE OF ONE OF THE SOURCE CODES FOR THE DESIGN AROUND,

6    BUT IT APPLIES TO OTHER DESIGN AROUNDS AS WELL.

7              AND IT WAS MORE THAN JUST SOURCE CODE.  IT WAS ANYTHING

8    THAT COULD HAVE BEEN DONE BY EXPERTS OR FACT WITNESSES.

9              MR. MCELHINNY:  THIS IS WHY --

10             MS. MAROULIS:  SO WE WERE FACING PRECLUSION, AND WE

11   ACTUALLY OBTAINED A CLARIFICATION FROM JUDGE GREWAL THAT THE

12   PRECLUSION WOULD NOT APPLY TO POST-TRIAL PROCEEDINGS, WHICH IS

13   WHY WE WERE ABLE TO RAISE IT IN THE INJUNCTION BRIEFING

14   CONTEXT, AND IT'S THE EXACT SAME INFORMATION THAT WE WILL BE

15   RELYING ON RIGHT NOW.

16             MR. MCELHINNY:  THIS IS WHY I WOULD LIKE TO PRESENT

17   THIS TO YOUR HONOR IN WRITING, BECAUSE THERE WAS NO PRECLUSION

18   ORDER ON THE WHITE PHONE, BLACK PHONE ISSUE.  IT SIMPLY WAS

19   NEVER RAISED.  THIS IS AN ARGUMENT THAT THEY MADE UP AFTER THE

20   TRIAL.

21             AND THEN TO THE EXTENT COUNSEL JUST SAID THAT, SHE'LL

22   CORRECT HERSELF, I KNOW, BECAUSE THERE IS NO PRECLUSION ORDER

23   ON THE WHITE PHONE, BLACK PHONE.  IF THEY THOUGHT THAT WAS A

24   DEFENSE, THEY SHOULD HAVE RAISED IT.  THE JURY RULED ON THAT

25   ISSUE.
```

1      THERE IS A PRECLUSION ORDER THAT GOES TO ONE SOFTWARE

2   MODIFICATION, AND WHAT JUDGE GREWAL SAID ABOUT THAT IS THEY ARE

3   PRECLUDED AT TRIAL.  WHETHER OR NOT THEY ARE PRECLUDED IN

4   POST-TRIAL PROCEEDINGS IS A QUESTION FOR ANOTHER DAY.

5      AND OUR ARGUMENT TO YOUR HONOR IS, FINE, BUT UNDER THE

6   GROUNDHOG RULES WHERE IT'S THE SAME EVIDENCE, THE SAME RULES,

7   THE SAME SANCTION, WE WERE PRECLUDED BECAUSE WE DIDN'T GET

8   DISCOVERY, WE STILL HAVEN'T HAD DISCOVERY, THAT IT MAKES SENSE

9   TO CONTINUE THAT PRECLUSION ON WHAT IS ESSENTIALLY A RETRIAL OF

10  DAMAGES.

11     THAT'S WHY WE WANT THE COMPLETE LIST.  BUT FOR DIFFERENT

12  DESIGN AROUNDS, THERE ARE SLIGHTLY DIFFERENT ARGUMENTS --

13          THE COURT:  UM-HUM.

14          MR. MCELHINNY:  -- STILL ALL CAPTURED BY THE

15  METHODOLOGY ARGUMENT, WHICH IS SEPARATE FROM DAMAGES.

16          THE COURT:  I GUESS I DON'T UNDERSTAND.  IF YOU'RE

17  PRECLUDED AT TRIAL FROM BRINGING IT, SO THERE'S A DAMAGES

18  VERDICT, AND NOW YOU'RE SAYING, NO, BUT THE VERDICT SHOULD NOW

19  BE CHANGED AND THE DAMAGE AWARD SHOULD BE CHANGED AND WE SHOULD

20  HAVE DIFFERENT EVIDENCE THAN WHAT WE WERE ALLOWED TO BRING

21  DURING THE TRIAL, THAT DOESN'T SEEM TO MAKE SENSE TO ME.

22     IF YOU WERE PRECLUDED, YOU WERE PRECLUDED, AND THE FEDERAL

23  CIRCUIT'S ORDER AFFIRMED ALL THE PRECLUSIONS.

24     THEN I DON'T UNDERSTAND NOW WHY, FOR SUPPLEMENTAL DAMAGES,

25  YOU'RE SUDDENLY ALLOWED TO BRING IN DEFENSES THAT YOU WERE

1    PRECLUDED FROM BRINGING FOR UNTIMELY DISCLOSURE DURING THE

2    TRIAL.

3            MR. ANDERSON:  BECAUSE, YOUR HONOR, WE'RE NOT

4    CONTESTING THE DAMAGES UP UNTIL --

5            THE COURT:  ARE YOU SAYING THERE WAS A JUDGE GREWAL

6    ORDER PRECLUDING THE WHITE PHONE --

7            MR. ANDERSON:  WE'RE SAYING --

8            THE COURT:  -- COLOR?  ARE YOU?

9            MR. ANDERSON:  YES.

10           THE COURT:  AND GIVE ME THE -- WHAT'S THE DATE OF

11   THAT ORDER AND WE'LL TAKE A LOOK AT IT.

12           MS. MAROULIS:  YOUR HONOR, I'M TRYING TO PULL UP THE

13   ORDER SO WE CAN LOOK AT IT TOGETHER, SO IF WE CAN HAVE A

14   MINUTE.

15           THE COURT:  ALL RIGHT.  WELL, THIS IS WHAT I WOULD

16   LIKE:  IN YOUR DISCLOSURE ON SEPTEMBER 30TH, I WANT YOU TO

17   IDENTIFY ALL OF THE ORDERS THAT YOU BELIEVE SUPPORT YOUR

18   CONTENTION THAT YOU'RE NOT WAIVING -- YOU HAVEN'T WAIVED YOUR

19   RIGHT TO RAISE THESE.  SO I WANT YOU TO IDENTIFY THE SPECIFIC

20   EXCLUSION ORDERS OF JUDGE GREWAL, OR ME, ANYONE.  OKAY?  I WANT

21   YOU TO IDENTIFY THE SPECIFIC EXCLUSION ORDERS THAT PREVENTED

22   YOU FROM RAISING THIS ISSUE AT TRIAL.  FOR EVERY SPECIFIC

23   DESIGN AROUND, I NEED THAT INFORMATION.  OKAY?  I WANT IT

24   IDENTIFIED BY ECF NUMBER AND QUOTE THE LANGUAGE.

25           MR. ANDERSON:  YOUR HONOR --

```
 1              THE COURT:  UM-HUM.

 2              MR. ANDERSON:  MAY I ADD TO THAT, YOUR HONOR?  ONE OF

 3     THE -- ANOTHER PROBLEM WITH WHAT MR. MCELHINNY SAYS IS THAT A

 4     LOT OF WHAT WE'RE -- THE CHANGES WE'RE ARGUING ABOUT WAS JUST

 5     SIMPLY NEVER ACCUSED BY APPLE.

 6         SO THE FIRMWARE CHANGES FOR THE GRAPHIC USER INTERFACE FOR

 7     THE D'305, THOSE ACTUALLY WERE IN SOME PHONES AT THE START OF

 8     THE CASE AND APPLE NEVER ALLEGED THAT THEY INFRINGED.

 9         SO --

10              THE COURT:  WELL, YOU CAN PUT THAT IN YOUR SEPTEMBER

11     30TH STATEMENT.

12              MR. ANDERSON:  YES, YOUR HONOR.

13              THE COURT:  JUST GO AHEAD AND LAY OUT, LAY OUT WHAT

14     IT IS.

15         (PAUSE IN PROCEEDINGS.)

16              MS. MAROULIS:  YOUR HONOR WAS ASKING FOR THE

17     JUDGE GREWAL ORDER, SO WE PULLED UP THE DOCKET NUMBER, AND

18     IT'S --

19              THE COURT:  RIGHT.  BUT I WOULD WANT TO READ THE

20     WHOLE THING MYSELF.

21              MS. MAROULIS:  ABSOLUTELY, YOUR HONOR.

22              THE COURT:  WHY DON'T YOU SAVE IT FOR YOUR

23     SEPTEMBER 30TH FILING?  AND I APPRECIATE YOU FINDING IT NOW.

24              MS. MAROULIS:  SURE, YOUR HONOR.

25              THE COURT:  I'M WONDERING IF IT'S WORTH GETTING A
```

**ADD134**

```
 1    JOINT STATEMENT OF FIVE PAGES PER SIDE JUST ON THE ISSUE OF

 2    WAIVER AND WHETHER THE METHODOLOGY WAS CHALLENGED ON APPEAL.

 3    DOES THAT MAKE SENSE?

 4              MR. MCELHINNY:  I THINK THAT MAKES -- I THINK THAT'S

 5    THE MOST ECONOMICAL WAY TO PROCEED, YOUR HONOR.

 6              THE COURT:  WHEN COULD YOU FILE THAT?  AND I -- I

 7    DON'T KNOW -- I WANT IT TO BE A STATEMENT AND NOT A MOTION SO

 8    IT'S NOT GOING TO CREATE A HAMMER THAT I HAVE TO DECIDE AT THIS

 9    TIME.  IF IT LOOKS LIKE IT'S GOING TO BE A WHOLE MINI TRIAL,

10    THEN I DON'T WANT TO DO IT RIGHT NOW.

11              MR. ANDERSON:  I WOULD JUST ASK THAT IT NOT BE

12    SEPTEMBER 30TH BECAUSE WE HAVE A LOT OF WORK TO DO

13    SEPTEMBER 30TH.

14              THE COURT:  NO.  IT WOULD BE AFTER.

15              MR. MCELHINNY:  THE 9TH OF OCTOBER I WOULD BELIEVE.

16              THE COURT:  DOES THAT GIVE YOU ENOUGH TIME,

17    MR. ANDERSON?  THE 9TH OF OCTOBER?

18              MR. ANDERSON:  IT DOES, YOUR HONOR.

19              THE COURT:  ALL RIGHT.  SO FILE THAT ON OCTOBER 9TH.

20    IT'S GOING TO BE A TOTAL OF A TEN PAGE DOCUMENT, FIVE EACH, ON

21    THE ISSUE OF WAIVER AND WHETHER THE METHODOLOGY WAS CHALLENGED.

22          AND THEN I'LL DECIDE AT THAT TIME WHETHER I WANT TO SET AN

23    INTERIM CMC OR JUST LEAVE THAT ISSUE FOR LATER.  OKAY?

24          I DON'T WANT TO ASK WHAT ELSE, BUT I FEEL COMPELLED TO ASK

25    IF THERE'S ANYTHING ELSE.
```

1            MR. MCELHINNY:  NOTHING FURTHER FROM APPLE, YOUR

2     HONOR.

3            THE COURT:  OKAY.  MS. MAROULIS?

4            MS. MAROULIS:  NOTHING FURTHER.

5            THE COURT:  OR MR. ANDERSON, ANYTHING ELSE?

6            MR. ANDERSON:  NO.

7            THE COURT:  ALL RIGHT.  THANK YOU ALL VERY MUCH.  I

8     APPRECIATE YOUR PATIENCE TODAY.

9            MR. MCELHINNY:  THANK YOU, YOUR HONOR.

10            MS. MAROULIS:  THANK YOU, YOUR HONOR.

11         (THE PROCEEDINGS WERE CONCLUDED AT 3:50 P.M.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**ADD136**

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18         DATED:  SEPTEMBER 18, 2015

19

20

21

22

23

24

25

**ADD137**